UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
------------------------------------------------------------------X
725 EATERY CORP., etc., *et ano.,*                    :

                    Plaintiffs,     :

         - against -                    :          Civil Action No.
                                   02 CV 4431 (WHP)
THE CITY OF NEW YORK, et al.,                    :

                    Defendants.  :
------------------------------------------------------------------X
59 MURRAY ENTERPRISES INC., etc., *et al.,*          :

                    Plaintiffs,     :

         - against -                    :          Civil Action No.
                                   02 CV 4432 (WHP)
THE CITY OF NEW YORK, et al.,                    :

                    Defendants.  :
------------------------------------------------------------------X
CLUB AT 60TH STREET, INC., etc., *et al.,*              :

                    Plaintiffs,     :

         - against -                    :          Civil Action No.
                                   02 CV 8333 (WHP)
THE CITY OF NEW YORK,                    :

                    Defendant.  :
------------------------------------------------------------------X
336 LLC., etc., *et al.,*                          :

                    Plaintiffs,     :

         - against -                    :          Civil Action No.
                                   18 CV 3732 (WHP)
THE CITY OF NEW YORK,                    :

                    Defendant.  :
------------------------------------------------------------------X

## NOTICE OF FILING OF PLAINTIFFS' JOINT APPENDIX VOLUME 14 IN SUPPORT OF PLAINTIFFS' MOTION FOR PRELIMINARY INJUNCTION

**PLEASE TAKE NOTICE,** that Plaintiffs hereby file the within Volume 14 of

Plaintiffs' Joint Appendix in the above-captioned actions.

Dated:          New York, New York
                November 21, 2018

*Respectfully,*

**DANIEL A. SILVER**                    **JOHN H. WESTON**
**SILVER & SILVER**                     **G. RANDALL GARROU**
One Liberty Square                      **WESTON, GARROU & MOONEY**
New Britain, Connecticut 06050-0698     12121 Wilshire Boulevard, Suite 525
(860) 225-3518                          Los Angeles, CA 90025-1176
                                        (310) 442-0072

     - and-                             - and -

**JENNIFER KINSLEY**                    **ALAN M. ABRAMSON**
Kinsley Law Office                      **ABRAMSON & MORAK**
Post Office Box 19478                   35 Worth Street
Cincinnati, Ohio 45219                  New York, New York 10013
(513) 708-2595                          (212) 226-7098

*Attorneys for Plaintiffs*              *Attorneys for*
*725 Eatery Corp., etc., et ano.*       *Club At 60th Street, Inc., etc., et al.*

By:    s/Daniel A. Silver
Daniel A. Silver                        By:    s/John Weston
                                               John Weston

**EDWARD S. RUDOFSKY**
**ZANE and RUDOFSKY**                   **ERICA DUBNO**
601 West 26th Street, # 1315            Fahringer & Dubno
New York, New York  10001               767 Third Avenue, Suite 3600
(212) 245-2222                          New York, New York
                                        (212) 319-5351

*Attorneys for Plaintiffs*
*59 Murray Enterprises, Inc., etc.*     *Attorneys for Plaintiffs*
*et al.*                                *336 LLC, etc., et al.*

By:    s/Edward S. Rudofsky            By:    s/Erica T. Dubno
       Edward S. Rudofsky                     Erica T. Dubno

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
---------------------------------------------------------------X
725 EATERY CORP., etc., *et ano.,*                    :

                          Plaintiffs,     :

              - against -                      :          Civil Action No.
                                          02 CV 4431 (WHP)
THE CITY OF NEW YORK, et al.,                        :

                          Defendants.   :
---------------------------------------------------------------X
59 MURRAY ENTERPRISES INC., etc., *et al.,*      :

                          Plaintiffs,     :

              - against -                      :          Civil Action No.
                                          02 CV 4432 (WHP)
THE CITY OF NEW YORK, et al.,                        :

                          Defendants.   :
---------------------------------------------------------------X
CLUB AT 60TH STREET, INC., etc., *et al.,*        :

                          Plaintiffs,     :

                - against -                      :          Civil Action No.
                                          02 CV 8333 (WHP)
THE CITY OF NEW YORK,                                :

                          Defendant.   :
---------------------------------------------------------------X

336 LLC., etc., *et al.,*                            :

                          Plaintiffs,     :

                - against -                      :          Civil Action No.
                                          18 CV 3732 (WHP)
THE CITY OF NEW YORK,                                :

                          Defendant.   :
---------------------------------------------------------------X

### PLAINTIFFS' JOINT APPENDIX
### (VOL. 14 of 17; pp. 1575--1683)

Per the Court's Order of November 7, 2018, Plaintiffs in each of the four above-entitled actions hereby submit their unitary Joint Appendix consisting exclusively of evidentiary documents upon which some or all of the Plaintiffs may choose to rely. The inclusion of documents in this Joint Appendix does not automatically signify an endorsement or promotion of any of these documents by any individual Plaintiff or group of Plaintiffs. That will depend on specific adoption of any of these documents by any Plaintiffs or Group of Plaintiffs in documents they may file with the Court.

The reference below to the "Club Plaintiffs" refers to all the Plaintiffs in Action Nos. 02 CV 4431, 02 CV 4432 and 02 CV 8333. The reference below to the "Bookstore Plaintiffs" refers to all the Plaintiffs in Action No. 18 CV 3732.

### TABLE OF CONTENTS

| Tab No. | Description of Document | Joint Appendix Starting Page # |
|---------|------------------------|-------------------------------|
|         | **DOCUMENTS SUBMITTED BY CLUB PLAINTIFFS** |             |
|         | **VOLUME 1 (pp. 0001--0030)** |             |
|         | **CLUB PLAINTIFFS' EXPERT DECLARATIONS** |             |
| A       | **Declaration of Michael Berzak Regarding Adult Business Sites in Support of Plaintiffs' Motion for** | **0001** |

| | | |
|---|---|---|
| | Preliminary Injunction | |
| | *Exhibit 1*: Sequential Maps of Adult Business Sites in Manhattan, Prepared by Berzak Associates | 0019 |
| | **VOLUME 2**<br>**(pp. 0031--0038)** | |
| | *Exhibit 2*: Sequential Maps of Adult Business Sites in Queens, Prepared by Berzak Associates | 0031 |
| | *Exhibit 3*: Sequential Maps of Adult Business Sites in the Bronx, Prepared by Berzak Associates | 0035 |
| | **VOLUME 3**<br>**(pp. 0039--0046)** | |
| | *Exhibit 4*: Sequential Maps of Adult Business Sites in Brooklyn, Prepared by Berzak Associates | 0039 |
| | *Exhibit 5*: Sequential Maps of Adult Business Sites in Staten Island, Prepared by Berzak Associates | 0043 |
| | **VOLUME 4**<br>**(pp. 0047--0338)** | |
| | *Exhibit 6*: Relevant Portions of AZR § 12-10 (definitions), § 32-01 (commercial zone restrictions on adult uses) and § 42-01 (manufacturing zone restrictions on adult uses) | 0047 |
| | *Exhibit 7*: 1 RCNY § 9000-01 | 0059 |
| | *Exhibit 8*: DOB Operations Policy and Procedure Notice No. 17/95 | 0061 |
| | *Exhibit 9*: DOB Operations Policy and Procedure Notice No. 6/96 | 0065 |
| | *Exhibit 10*: DOB Operations Policy and Procedure Notice No. 7/96 | 0074 |

| | | |
|---|---|---|
| | *Exhibit 11*: DOB Operations Policy and Procedure Notice No. 8/96 | 0077 |
| | *Exhibit 12*: DOB Operations Policy and Procedure Notice No. 4/98 | 0080 |
| | *Exhibit 13*: DOB Operations Policy and Procedure Notice No. 6/98 | 0083 |
| | *Exhibit 14*: DOB Operations Policy and Procedure Notice No. 7/02 | 0087 |
| | *Exhibit 15*: Online DOB handbook published in 2016 entitled "Adult Establishment Applications" | 0091 |
| | *Exhibit 16*: City-generated Map Showing the Gowanus Canal Areas Which are Under Consideration for Zoning Changes Allowing Residential and Mixed Uses | 0103 |
| B | Declaration of Michael Berzak in Support of Permitting Issues Presented in Plaintiffs' Motion for Preliminary Injunction | 0105 |
| | *Exhibit 1*: Curriculum Vitae | 0124 |
| | *Exhibit 2*: NYCAC Title 27 Subchapter 1, Article 10 (Permits) | 0126 |
| | *Exhibit 3*: 1 RCNY § 9000-01 | 0129 |
| | *Exhibit 4*: NYCAC § 27-217 | 0131 |
| | *Exhibit 5*: NYCAC Title 27 Subchapter 1, Article 9 (Approval of Plans) | 0133 |
| | *Exhibit 6*: Relevant Portions of NYCAC Title 27 Subchapter 1, Article 19 (Issuance of Permits) | 0137 |
| | *Exhibit 7*: DOB's Buildings Bulletin 2016-010 | 0140 |
| | *Exhibit 8*: OPPN # 7/02 | 0145 |

| | | |
|---|---|---|
| | *Exhibit 9*: DOB Code Note (Adult Establishment Applications) | 0149 |
| C | Declaration of Hugh Kelly in Support of Plaintiffs' Motion for Preliminary Injunction | 0161 |
| D | Affidavit of Lance Freeman in Support of Plaintiffs' Motion for Preliminary Injunction | 0212 |
| | **CLUB CLIENTS' DECLARATIONS** | |
| E | Declaration of David M. Talla in Support of Plaintiffs' Motion for Preliminary Injunction | 0227 |
| F | Declaration of Keith Warech in Support of Plaintiffs' Motion for Preliminary Injunction | 0248 |
| G | Declaration of Anthony Capeci in Support of Plaintiffs' Motion for Preliminary Injunction | 0262 |
| H | Declaration of Barry Lipsitz in Support of Plaintiffs' Motion for Preliminary Injunction | 0265 |
| I | Declaration of Anthony D'Amico in Support of Plaintiffs' Motion for Preliminary Injunction | 0283 |
| J | Declaration of Maurice Kavanagh in Support of Plaintiffs' Motion for Preliminary Injunction | 0297 |
| | **OTHER ITEMS** | |
| K | Declaration of Edward Rudofsky in Support of Plaintiffs' Motion for Preliminary Injunction Regarding Legislative History and Related Matters | 0312 |
| L | Declaration of Edward S. Rudofsky in Support of Plaintiffs' Motion for Preliminary Injunction Regarding the Status of Veil NYC and Headquarters n/k/a Rosewood Theater | 0335 |
| | **VOLUME 5**<br>**(pp. 0339--0519)** | |

| M | Club Plaintiffs' Request To Take Judicial Notice | 0339 |
|---|---|---|
| | *Exhibit 1*: NYC Council Resolution 1322-1995 ("1995 Ordinance") | 0348 |
| | *Exhibit 2*: NYC Council Resolution 0208-1998 (regarding signage regulations) | 0364 |
| | *Exhibit 3*: NYC Council Resolution 2096-2001 ("2001 Amendments") | 0378 |
| | *Exhibit 4*: Relevant portions of NYC Council Resolution 586-2004 (amending, *inter alia*, AZR §§ 32-01 & 42-01 regarding adult businesses) | 0384 |
| | *Exhibit 5*: Relevant portions of NYC Council Resolution 499-2010 (amending, *inter alia*, AZR §§ 32-01 & 42-01 regarding adult businesses) | 0391 |
| | *Exhibit 6*: NYC AZR § 31-17 | 0394 |
| | *Exhibit 7*: NYC AZR § 31-18 | 0397 |
| | *Exhibit 8*: NYC AZR § 32-01 (multiple versions) | 0400 |
| | *Exhibit 9*: NYC AZR § 32-69 (multiple versions) | 0404 |
| | *Exhibit 10*: NYC AZR § 42-01 (multiple versions) | 0408 |
| | *Exhibit 11*: NYC AZR § 52-11 | 0412 |
| | *Exhibit 12*: NYC AZR § 52-61 | 0415 |
| | *Exhibit 13*: NYC AZR § 52-734 | 0419 |
| | *Exhibit 14*: NYC AZR § 52-77 | 0423 |
| | *Exhibit 15*: NYC AZR § 72-41 | 0427 |
| | *Exhibit 16*: NYC Administrative Code, Title 27, Chapter 1, Article 9 ("Approval of Plans") | 0431 |

| | | |
|---|---|---|
| | *Exhibit 17*: NYC Administrative Code, Title 27, Chapter 1, Article 10 ("Permits") | 0438 |
| | *Exhibit 18*: NYC Administrative Code, Title 27, Chapter 1, Article 19 ("Issuance of Permits") (relevant sections) | 0444 |
| | *Exhibit 19*: NYC Administrative Code, Title 27, Chapter 1, Article 22, § 27-217 ("Certificates of Occupancy / Change of Occupancy of Use") | 0457 |
| | *Exhibit 20*: NYC Dept. of Buildings Administrative Materials: Directive 14 of 1975 (authorizing self-certification of applications for building permits by licensed architects and engineers) | 0462 |
| | *Exhibit 21*: NYC Dept. of Buildings Administrative Materials: Policy and Procedure Notice OPPN 17/95 (prohibiting self-certification of adult uses by architects and engineers) | 0466 |
| | *Exhibit 22*: NYC Dept. of Buildings Administrative Materials: Policy and Procedure Notice OPPN 6/96 (reaffirming prohibition on self-certification of adult uses by architects and engineers) | 0483 |
| | *Exhibit 23*: NYC Dept. of Buildings Administrative Materials: Policy and Procedure Notice OPPN 7/96 (defining "place of worship" and "church") | 0492 |
| | *Exhibit 24*: NYC Dept. of Buildings Administrative Materials: Policy and Procedure Notice OPPN 8/96 (describing methodology for measuring separation between adult uses and other adult uses or sensitive receptors) | 0495 |
| | *Exhibit 25*: NYC Dept. of Buildings Administrative Materials: Policy and Procedure Notice OPPN 4/98 (definition of "substantial portion") | 0501 |
| | *Exhibit 26*: NYC Dept. of Buildings Administrative Materials: Policy and Procedure Notice OPPN 6/98 (explanation of "substantial portion" in context of multiple uses) | 0505 |

| | | |
|---|---|---|
| | *Exhibit 27*: NYC Dept. of Buildings Administrative Materials: Policy and Procedure Notice OPPN 5/02 (clarifying procedures for self-certification by architects and engineers) | 0509 |
| | *Exhibit 28*: NYC Dept. of Buildings Administrative Materials: OPPN 7/02 (clarifying procedures for seeking adult use "priority" permit) | 0516 |
| | **VOLUME 6**<br>**(pp. 0520--0629)** | |
| | *Exhibit 29*: NYC Dept. of Buildings Administrative Materials: Policy and Procedure Notice OPPN 1/04 (clarifying procedures for self-certification by architects and engineers) | 0520 |
| | *Exhibit 30*: NYC Dept. of Buildings Administrative Materials: Bulletin 2016-010 (most recent document clarifying procedures for self-certification by architects and engineers) | 0532 |
| | *Exhibit 31*: NYC Dept. of Buildings Administrative Materials: Code Note on Adult Establishment Applications (handbook from DOB website) | 0537 |
| | *Exhibit 32*: NYC Dept. of Buildings Administrative Materials: Rule Title 1, Rules of City of New York § 9000-01 (establishing priority of locations under adult zoning scheme) | 0549 |
| | *Exhibit 33*: Legislative History of 2001 Amendments, 3/21/01 DCP Application No. N 010508 ZRY (to amend the AZR definition of adult establishment) | 0551 |
| | *Exhibit 34*: Legislative History of 2001 Amendments, CEQR Negative Declaration No. 01DCP045Y of 3/23/01, and Environmental Assessment Statement No. 01DCP045Y filed 3/23/01 | 0563 |

| | | |
|---|---|---|
| | **VOLUME 7**<br>**(pp. 0630--0707)** | |
| | *Exhibit 35*: Legislative History of 2001 Amendments, Transcript of New York City Planning Commission Public Hearing held 5/23/01 | 0630 |
| | **VOLUME 8**<br>**(pp. 0708--0889)** | |
| | *Exhibit 36*: Legislative History of 2001 Amendments, 8/8/01 New York City Planning Commission Report | 0708 |
| | *Exhibit 37*: Legislative History of 2001 Amendments, Transcript of New York City Planning Commission Public Hearing held 8/8/01 | 0835 |
| | *Exhibit 38*: Legislative History of 2001 Amendments, Transcript of 10/1/01 Hearing of Zoning and Franchises Subcommittee of New York City Council | 0848 |
| | **VOLUME 9**<br>**(pp. 0890--1068)** | |
| | *Exhibit 39*: Legislative History of 2001 Amendments, Correspondence between Edward S. Rudofsky and New York City Council (10/9/01), and David Karnovsky and New York City Council (10/24/01) | 0890 |
| | *Exhibit 40*: Legislative History of 2001 Amendments, Transcript of 10/25/01 Meeting of Zoning and Franchises Subcommittee of New York City Council | 0899 |
| | *Exhibit 41*: Legislative History of 2001 Amendments, Transcript of 10/25/01 Meeting of Land Use Committee of New York City Council | 0911 |
| | *Exhibit 42*: Legislative History of 2001 Amendments, Transcript of 10/31/01 Meeting of the New York City Council | 0919 |

| | | |
|---|---|---|
| | *Exhibit 43*: Excerpt of Record On Appeal, Ten's Cabaret, Inc. v. City of New York, Supreme Court, New York County, Index No. 121197/2002 ("State Action"), Affidavit of David Karnovsky, Counsel to the New York City Department of City Planning, sworn to 10/23/02, filed in State Action on 10/25/02 (without internal Exhibits) | 1032 |
| | **VOLUME 10<br>(pp. 1069--1296)** | |
| | *Exhibit 44*: Excerpts of Record On Appeal, Ten's Cabaret, Inc. v. City of New York, Supreme Court, New York County, Index No. 121197/2002 ("State Action"), Relevant pages from Transcripts of evidentiary hearing in State Action in Supreme Court, New York County, on 2/23/09 through 3/2/09 | 1069 |
| | **VOLUME 11<br>(pp. 1297--1381)** | |
| | *Exhibit 45*: New York City Department of City Planning ("DCP") Materials, NYC DCP "Manufacturing Districts: M3" webpage (https://www.1.nyc.gov/site/planning/zoning/districts-tools/m3.page) | 1297 |
| | *Exhibit 46*: New York City Department of City Planning ("DCP") Materials, NYC Department of City Planning "Manufacturing Districts: 1/1/02 to 1/1/12" webpage (https://www.1.nyc.gov/site/planning/zoning/districts-tools/mfg-districts-2002-2012.page) | 1300 |
| | *Exhibit 47*: Studies, Moss and Quing, "The Dynamic Population of Manhattan", Rudin Center for Transportation Policy and Management of the New York University Wagner School of Public Service (2012) (https://wagner.nyu.edu/files/faculty/publications/dynamic_pop_manhattan.pdf) | 1304 |

| | | |
|---|---|---|
| | *Exhibit 48:* **Linz and Paul, "Measuring the Secondary Effects of 60/40 Businesses in New York City: A Study of Calls for Service to the Police", including Figures and Tables (2005) Exhibits 6 and 6A admitted into evidence at evidentiary hearing held on February 23 through March 2, 2009 in <u>Ten's Cabaret, Inc. v City of New York</u>, Supreme Court, New York County, Index No. 121197/2002** | **1330** |
| | **VOLUME 12 <br> <u>(pp. 1382--1467)</u>** | |
| | *Exhibit 49:* **Studies, Freeman, "Examining The Relationship Between Businesses That Comply With the '60/40' Zoning Regulations and Surrounding Property Values in New York City" (2008) (Exhibit 8 admitted in evidence at evidentiary hearing held on 2/23/09 through 3/2/09 in <u>Ten's Cabaret, Inc. v. City of New York</u>, Supreme Court, New York County, Index No. 121197/2002** | **1382** |
| | *Exhibit 50:* **Studies, Focus Probe, Inc., "Perceived Differences Between Adult Entertainment Clubs With 'Subdued Facades' vs. 'Loud Facades', with photographs (Exhibits 12, 12A, 12B and 12C admitted in evidence at evidentiary hearing held on 2/23/09 through 3/2/09 in <u>Ten's Cabaret, Inc. v. City of New York</u>, Supreme Court, New York County, Index No. 121197/2002)** | **1418** |
| | *Exhibit 51:* **New York Court of Appeals Brief, Excerpt from Respondents' Brief of City of New York, et al., in <u>Stringfellow's of New York, Inc. v. City of New York</u>, New York County Index Nos. 113049/96 103568/96 and 103569/96, filed in New York Court of Appeals, dated 12/11/97** | **1443** |

| | | |
|---|---|---|
| | *Exhibit 52:* **Excerpts from September 3, 1996 deposition testimony of Marilyn Mammamo, Director of Zoning & Urban Design of the NYC Department of City Planning, in <u>Hickerson v. The City of New York</u>, New York County Index No. 103569/96** | **1448** |
| | *Exhibit 53:* **Undocketed Correspondence With Court, Litigation Management Agreement dated 9/25/17 (Exhibit B to 3/2/18 letter from Plaintiffs to Hon. William Pauley) in all current club cases** | **1459** |
| | <u>**DOCUMENTS SUBMITTED BY BOOKSTORE PLAINTIFFS**</u> | |
| | **VOLUME 13 (pp. 1468--1574)** | |
| **N** | **Declaration of Dr. Elliott Sclar in Support of Plaintiffs' Motion for Preliminary Injunction** | **1468** |
| | *Exhibit 1:* **Dr. Sclar's Curriculum Vitae** | **1515** |
| | *Exhibit 2:* **Maps Prepared by the Department of City Planning in Support of the 1995 Resolution Showing Permissible Areas for Adult Establishments** | **1539** |
| | *Exhibit 3:* **Maps Prepared by the Department of City Planning Showing Zoning Changes between 1995 and 2001 in Support of the 2001 Resolution** | **1545** |
| | *Exhibit 4:* **Reports issued by the Department of City Planning and Information in the Press Confirming the Effectiveness of Mayor Bloomberg's Administration in Rezoning New York City** | **1561** |

|  |  | **VOLUME 14** **(pp. 1575--1683)** |  |
|---|---|---|---|
|  |  | ***Exhibit 5***: Report Prepared by the Department of City Planning Detailing the Reduction in Manufacturing Districts between 2002 and January 2012 | 1575 |
|  |  | ***Exhibit 6***: Map Depicting Zoning Changes in New York City between January 2002 and September 2018 | 1594 |
|  |  | ***Exhibit 7***: Table 1: List of Adopted Rezonings that Impacted Manufacturing Use | 1596 |
|  |  | ***Exhibit 8***: Table 2: List of Certified Rezonings that Impact Manufacturing Use | 1603 |
|  |  | ***Exhibit 9***: Map of Anticipated Mandatory Inclusion Housing ("MIH") Rezonings | 1605 |
|  |  | ***Exhibit 10***: Department of City Planning Report on City Planning History | 1607 |
|  |  | ***Exhibit 11***: MTA Staten Island Railway ("SIR") System Map | 1612 |
|  |  | ***Exhibit 12***: Map Showing the Staten Island Railway Route Superimposed on the Map of Permissible Areas on Staten Island Prepared by the Department of City Planning in Support of the 1995 Resolution | 1614 |
| **O** |  | Declaration of Daniel J. Zazzali in Support of Plaintiffs' Motion for Preliminary Injunction | 1616 |
| **P** |  | Declaration of Daniel Knecht in Support of Plaintiffs' Motion for Preliminary Injunction | 1643 |

| | | |
|---|---|---|
| | *Exhibit 1*: Map of Public Transportation between the Plaintiffs' Bookstore at 336 Eighth Avenue, in Manhattan, and the Only Permissible Adult Bookstore with booths, on Staten Island | 1659 |
| Q | Declaration of Yitzik Shachaf in Support of Plaintiffs' Motion for Preliminary Injunction | 1662 |
| R | Declaration of Erica T. Dubno in Support of Plaintiffs' Motion for Preliminary Injunction | 1670 |
| | **VOLUME 15**<br>**(pp. 1684--1755)** | |
| S | Bookstore Plaintiffs' Request to Take Judicial Notice | 1684 |
| | *Exhibit 54*: Z.R. § 42-11 | 1691 |
| | *Exhibit 55*: Z.R. § 42-13 | 1694 |
| | *Exhibit 56*: New York City Charter § 85 "Borough Board" | 1698 |
| | *Exhibit 57*: DCP "Use Groups" webpage | 1702 |
| | *Exhibit 58*: DCP "Manufacturing Districts: Overview" webpage | 1707 |
| | *Exhibit 59*: DCP City Planning History webpage | 1710 |
| | *Exhibit 60*: DCP "Community-Based Planning" webpage | 1715 |
| | *Exhibit 61*: DCP "Special Purpose Districts: Citywide" webpage | 1722 |
| | *Exhibit 62*: DCP "Special Purpose Districts" webpage | 1730 |

| | | |
|---|---|---|
| | *Exhibit 63*: DCP Press Release, November 15, 2011, containing "Mayor Michael Bloomberg's Remarks at Zoning the City Conference, as Delivered by Deputy Mayor Robert K. Steel | 1732 |
| | *Exhibit 64*: DCP's Portion of the Mayor's Management Report, dated September 2012 | 1736 |
| | *Exhibit 65*: Excerpts from NYC's Risk Landscape: A Guide to Hazard Mitigation, Coastal Erosion Chapter 4.2, developed by the NYC Emergency Management in Partnership with the DCP and Close Collaboration with the NYC Mayor's Office of Recovery and Resiliency | 1741 |
| | **VOLUME 16**<br>**(pp. 1756--1852)** | |
| | *Exhibit 66*: Excerpts from the NYC Building Department's "Place of Assembly" guide | 1756 |
| | *Exhibit 67*: Excerpts from the NYC Fire Department's "Theater Inspections, Maintenance and Recordkeeping" Rules | 1759 |
| | *Exhibit 68*: MTA Staten Island Railway ("SIR") System Map | 1765 |
| | *Exhibit 69*: MTA Notice regarding Bridges and Tunnels Tolls | 1767 |
| | *Exhibit 70*: Zoning and the Comprehensive Plan, James A. Coon Local Government Technical Series, Revised 2015 | 1772 |
| | *Exhibit 71*: NYS Public Health Law § 3000-d | 1791 |
| | *Exhibit 72*: Charles V. Bagli, "Going Out With a Building Boom, Mayor Pushes Billions in Projects", N.Y. Times, Dec. 15, 2013 | 1795 |

| | | |
|---|---|---|
| | ***Exhibit 73***: Ford Fessenden, "The Bloomberg Years: Reshaping New York", N.Y. Times, Aug. 18, 2013 (interactive feature) | **1801** |
| | ***Exhibit 74***: "Mayor Bloomberg's NYC Mayoralty Comes To An End", dailyfreeman.com, Dec. 31, 2013 | **1803** |
| | ***Exhibit 75***: James Dao, "The 1993 Elections: Staten Island; Secession is Approved; Next Move is Albany's", N.Y. Times, Nov. 3, 1993 | **1806** |
| | ***Exhibit 76***: Maps (Reduced Size Versions) Generated by the DCP of Manhattan, Brooklyn, Bronx, Queens, and Staten Island indicating "Areas Where Adult Uses Would Continue to be Allowed Under the Proposal and Encumbered Property Within those Areas" filed in State Judicial Proceedings in Connection with the 1995 Resolution: <u>Amsterdam Video, Inc. v. City of New York</u>, Supreme Court, New York County, Index No. 103568/96, and <u>Hickerson v. City of New York</u>, Supreme Court, New York County, Supreme Court, New York County, Index No. 103569/96 | **1810** |
| | ***Exhibit 77***: Excerpts from September 3, 1996 deposition testimony of Marilyn Mammano, Director of Zoning & Urban Design of the NYC Department of City Planning, in <u>Hickerson v. The City of New York</u>, New York County Index No. 103569/96 | **1816** |
| | ***Exhibit 78***: Maps generated by the DCP depicting the reduction in permissible areas for adult businesses based on Zoning Changes between 1995 and 2001, filed in <u>For the People Theatres</u> on October 17, 2002, as Exhibit S to the Affidavit of David Karnovsky | **1838** |

| | | |
|---|---|---|
| | **VOLUME 17**<br>**(pp. 1854--1881)** | |
| | *Exhibit 79*: Excerpts from Affidavit of David Karnovsky filed in <u>For The People Theatres of N.Y., Inc., et al. v. The City of New York, et al.</u>, New York County Supreme Court Index No. 121080/02 | **1854** |
| | *Exhibit 80*:  Excerpts from the DCP's Adult Entertainment Study, November 1994 | **1864** |
| | *Exhibit 81*: 8/2/17 Stipulation and Agreement between Bookstore Plaintiffs and The City of New York | **1875** |

Dated:      New York, New York
              November 21, 2018

*Respectfully,*

**DANIEL A. SILVER**
**SILVER & SILVER**
One Liberty Square
New Britain, Connecticut 06050-0698
(860) 225-3518

- and -

**JENNIFER KINSLEY**
Kinsley Law Office
Post Office Box 19478
Cincinnati, Ohio 45219
(513) 708-2595

*Attorneys for Plaintiffs*
*725 Eatery Corp., etc., et ano.*

By:  ___s/Daniel A. Silver_____
          Daniel A. Silver

**EDWARD S. RUDOFSKY**
**ZANE and RUDOFSKY**
601 West 26th Street, # 1315
New York, New York  10001
(212) 245-2222

*Attorneys for Plaintiffs*
*59 Murray Enterprises, Inc., etc.*
*et al.*

By:   s/Edward S. Rudofsky_____
         Edward S. Rudofsky

**JOHN H. WESTON**
**G. RANDALL GARROU**
**WESTON, GARROU & MOONEY**
12121 Wilshire Boulevard, Suite 525
Los Angeles, CA 90025-1176
(310) 442-0072

- and -

**ALAN M. ABRAMSON**
**ABRAMSON & MORAK**
35 Worth Street
New York, NY 10013
(212) 226-7098

*Attorneys for*
*Club At 60th Street, Inc., etc., et al.*

By:   s/John Weston_____
         John Weston

**FAHRINGER & DUBNO**
767 Third Avenue, Suite 3600
New York, New York 10017
(212) 319-5351

*Attorneys for Plaintiff's*
*336 LLC, etc., et al.*

By:   s/Erica T. Dubno_____
         Erica T. Dubno

20

# SCLAR DECLARATION

# EXHIBIT 5

 Department of City Planning · 311 | Search all NYC.gov websites


**PLANNING**

Español ▶ Text-Size

**About**   **Zoning**   **Applicants**   **Plans/Studies**   **Communities**   **Data/Maps**

About Zoning · Zoning Text · Zoning Maps · **Districts & Tools**

**Residence Districts**

**Commercial Districts**

**Manufacturing Districts**

**Special Purpose Districts**

**Zoning Tools**

 Share

## Manufacturing Districts: January 1, 2002 to January 1, 2012

The maps and table that follow detail changes in the extent of manufacturing-zoned land in the City since January 1, 2002.  The period covered by this analysis represents a time of extensive changes in the city's zoning map. Members of the public, researchers and elected officials have expressed great interest in the aggregate effect of these rezonings on the city's manufacturing zones. The maps and table provide details on the geography of the rezonings, date of adoption, and a hyperlink to the City Planning Commission reports. These materials provide extensive information on each rezoning. A table summarizing the changes to manufacturing districts citywide and by borough is also provided.

**Manufacturing districts** are mapped throughout NYC, allowing a wide array of *community facility*, *commercial* and *manufacturing uses* to locate as-of-right and by special permit of either the City Planning Commission or the Board of Standards and Appeals. New residences, and community facility uses that include sleeping accommodations are generally precluded.

Most manufacturing districts that existed on January 1, 2002 were mapped at the time of the 1961 Zoning Resolution. The drafters of the 1961 Zoning Resolution used 1950s employment data to base many of their decisions on the size and scale of the city's Manufacturing Districts. In 1955, the industrial sectors provided 1.8 million jobs, with 971,000 of those jobs in manufacturing. Since then, as a result of significant changes in the employment structure of New York City's economy, the number of industrial and manufacturing jobs has fallen continuously. By 2001, less than a third of 1955 industrial jobs remained in NYC and the manufacturing sector made up less than 20 percent

of its 1955 levels. By 2011, the industrial and manufacturing sectors shrank to less than 25% and 10%, respectively, of 1955 levels.

Between 2002 and January 2012, the City Planning Commission and City Council approved rezonings of manufacturing districts to reflect local characteristics better and to guide new investment. The modifications to manufacturing districts are diverse, in cases permitting new residential neighborhoods to grow in post-industrial areas, or a different industrial typology to be developed to support more modern business facilities. These modifications are also widely dispersed, encompassing every borough. By rezoning underutilized stretches of former industrial areas, the City in some cases recognized new housing and businesses that were already being created, or provided new opportunities based on future development potential.

The manufacturing rezonings in this 10-year period reduced the total acreage of these districts by 5.2 percent or slightly more than 1,100 acres citywide. Over 20,000 acres remain manufacturing districts today. The most substantial reduction occurred in Brooklyn where approximately 360 acres of lot area zoned for manufacturing have been rezoned, representing a decline of roughly 8.2 percent. Manhattan, however, had the greatest share of its manufacturing districts rezoned. Approximately 26% of lot area zoned for manufacturing, or 265 acres, were mapped to another district. The changes in lot area are calculated for each borough and explained in the summary table below.

## Changes to Manufacturing Zones from January 1, 2002 to January 1, 2012: by Acres of Land

| | NYC | Manhattan | Bronx | Brooklyn | Queens | Queens, excluding airports | Staten Island |
|---|---|---|---|---|---|---|---|
| Lot area zoned for manufacturing in 2002 | 21,653 | 1,002 | 2,397 | 4,411 | 9,667 | 4,779 | 4,175 |
| M districts | 21,059 | 883 | 2,386 | 4,197 | 9,418 | 4,530 | 4,175 |
| MU districts | 594 | 119 | 11 | 215 | 249 | 249 | - |
| Lot area zoned for manufacturing in 2012 | 20,450 | 758 | 2,293 | 4,144 | 9,490 | 4,602 | 3,765 |
| M districts | 19,607 | 638 | 2,176 | 3,816 | 9,212 | 4,323 | 3,765 |
| MU districts | 843 | 120 | 117 | 328 | 278 | 278 | - |
| Change in lot area zoned for manufacturing, 2002-2012* | (816) | (232) | (88) | (236) | (175) | (175) | (86) |
| Increase in M area due to rezonings | 38 | 3 | 17 | 6 | 13 | 13 | - |
| New M | 14 | 3 | - | 2 | 9 | 9 | - |
| New MU | 24 | - | 17 | 4 | 4 | 4 | - |
| Decrease in M area due to rezonings | 855 | 235 | 104 | 242 | 187 | 187 | 86 |
| M to C | 390 | 166 | 56 | 45 | 78 | 78 | 45 |
| M to R | 379 | 31 | 49 | 149 | 109 | 109 | 41 |
| MU to C | 37 | 37 | - | - | - | - | - |
| MU to R | 49 | - | - | 48 | 0.3 | 0.3 | - |
| Modification of M zones | 1,089 | 39 | 266 | 270 | 515 | 515 | - |
| M to M | 651 | 32 | 177 | 68 | 375 | 375 | - |
| M to MU | 324 | 7 | 89 | 157 | 71 | 71 | - |
| MU to MU | 110 | - | - | 45 | 65 | 65 | - |
| MU to M | 4 | - | - | - | 4 | 4 | - |
| Change in lot area from other actions, 2002-2012* | (335) | (33) | (26) | (124) | (39) | (39) | (113) |
| M to new park, public open space or preserved natural area | 213 | 10 | 26 | 46 | 17 | 17 | 113 |
| MU to new park, public open space or preserved natural area | 0.4 | - | - | - | 0.4 | 0.4 | - |
| GPP | 122 | 23 | - | 78 | 21 | 21 | - |

| | NYC Acres (#) | Manhattan loss Acres (#) | Bronx loss Acres (#) | Brooklyn loss Acres (#) | Queens loss Acres (#) | Queens loss, excluding airports Total Acres (#) | Staten Island loss Acres (#) |
|---|---|---|---|---|---|---|---|
| Decline in manufacturing districts by boro, 2002-2012** | (1,152) | (265) | (114) | (360) | (214) | (214) | (199) |

*Slight discrepancy in area differences is attributable to rounding errors and changes in boundary geography over the time period.

**Combined net loss in Manufacturing districts by rezonings, establishments of parks and GPPs.

Mixed Use (MU) includes Special Mixed Use Districts, all other Special Districts in which M1 Districts are paired with a Residence District, M1-D Districts, and select Manufacturing Districts within Special Districts, which permit new residences.

GPP areas include land under the jurisdiction of General Project Plans approved by the Empire State Development Corporation or its subsidiaries.

## Maps

The changes in manufacturing districts are shown in the map below. To view more detailed borough maps of these changes and timelines explaining the rezonings in chronological order, click on a borough in the map below.



Areas rezoned from
manufacturing or
mixed use to:

Commercial
Residential
Mixed Use
Manufacturing
Parkland

N

2012 NYC/DCP

Bronx  Brooklyn  Manhattan  Queens  Staten Island  Citywide
Timeline

## Industrial Business Zones

The Industrial Business Zones (IBZs) were created in early 2006 in areas of
the Bronx, Brooklyn and Queens.  The IBZ program evolved from the City's
earlier policies focused on In-Place Industrial Parks (IPIP), which provided
business support services to industrial and manufacturing businesses located

within the IPIP and addressed issues related to inrastructure and the business environment. Like the IPIPs, policies applying to the IBZs continue to offer targeted support services for industrial firms and attend to area-wide improvements. The designation also provides relocation tax credits to qualifying businesses that locate within an IBZ to direct investment to New York City's strongest industrial areas. To create more certainty on land use policy, IBZ designation also carries a commitment by the Bloomberg Administration not to support a rezoning permitting new residences. Only manufacturing districts may be designated as IBZs. Currently, the IBZ Boundary Commission is reviewing proposed modified and new boundaries. To learn more about the IBZ program, the current IBZ boundaries, and to review the proposed boundaries, please visit the **NYC Economic Development Corporation's website**.

 Items accompanied by this symbol require the **free Adobe Acrobat Reader**.

Brief explanations of terms in ***blue italics*** can be viewed by clicking on the term.

**Directory of City Agencies**

**City Employees**

**CityStore**

**NYC Mobile Apps**

**Resident Toolkit**

**Contact NYC Government**

**Notify NYC**

**Stay Connected**

**Maps**

City of New York. 2018 All Rights Reserved,
NYC is a trademark and service mark of the City
of New York
Privacy Policy. Terms of Use.

# Rezonings Affecting Manufacturing Districts: 2002 to 2012
# MANHATTAN



## Legend

| 55 | Rezoning Initiative Boundary, with label corresponding to timeline below |
*A dotted outline indicates a portion of the rezoning initiative area where no M-zones were affected*

*Mixed Use (MU) includes Special Mixed Use Districts, all other Special Districts in which M1 Districts are paired with a Residence District, M1-D Districts, and select Manufacturing District within Special Districts, which permit new residences*

**Unchanged 2002 M-Zones:**

**Other Actions Affecting 2002 M-Zones:**
GPP

New Park, Public Open Space or
Preserved Natural Area:
Type 1
Type 2
Type 3

**Rezonings Affecting 2002 M-Zones:**
M to C
M to Mixed Use (MU)*
M to R
New M or New Mixed Use
Mixed Use to C
Mixed Use to R
Mixed Use to M
M to M or Mixed Use to Mixed Use

GPP areas include land under the jurisdiction of General Project Plans approved by the
Empire State Development Corporation or its subsidiaries.

Note regarding land mapped as park, public open space and preserved natural areas as of 2002:
Any land that, prior to 1/1/2002, was either mapped as park (whether or not acquired by
the City), intended as open space, or under the jurisdiction of NYC Dept. of Parks &
Recreation, National Park Service, NYS Dept. of Environmental Conservation, or NYS
Office of Parks, Recreation & Historic Preservation was not considered land available
for permitted M-Zone uses, and is not shaded on these maps.

Post-2002 New Parks, Public Open Space or Preserved Natural Areas:
Type 1: Parks added to City Map via ULURP action between 2002 and 2012
        but not necessarily acquired by the City.
Type 2: Parcels acquired by or assigned to NYC Dept. of Parks & Recreation
        between 2002 and 2012 but not added to the City Map. These
        exclude parcels intended for DPR operations use.
Type 3: Land owned by or under management by the New York
        City Economic Development Corporation which is
        planned as public open space.

**NYC PLANNING**
DEPARTMENT OF CITY PLANNING CITY OF NEW YORK

## Timeline of Rezonings Affecting Manufacturing Districts in Manhattan, Not Including Other Actions: 2002-2012

| | Acres | ULURP No. |
|---|---|---|
| **7/24/2002** | | |
| #5 CLINTON URA † | 0.6 | 020463ZMM |
| M to R | 0.6 | |
| **1/29/2003** | | |
| #7 GATEWAY II * | 0.3 | 020216ZMM |
| M to C | 0.3 | |
| **6/24/2003** | | |
| #10 EAST HARLEM REZONING | 1.7 | 030234AZMM |
| M to R | 1.7 | |
| **8/19/2003** | | |
| #12 HUDSON SQUARE REZONING | 4.8 | 030237ZMM |
| M to C | 4.8 | |
| **3/10/2004** | | |
| #18 2-10 WEST END AVE * | 1.6 | 030214ZMM |
| M to C | 1.6 | |
| **7/21/2004** | | |
| #23 LAFAYETTE ST REZONING * | 0.3 | 040021ZMM |
| MU to C | 0.3 | |
| **8/12/2004** | | |
| #25 LADIES MILE REZONING | 17.9 | 040331ZMM |
| M to C | 17.9 | |
| **11/10/2004** | | |
| #29 VERIZON W43RD ST REZONING * | 1.0 | 040249ZMM |
| M to C | 1.0 | |
| #30 VERIZON W47TH-W48TH STS * | 2.6 | 040250ZMM |
| M to M | 2.6 | |
| **1/19/2005** | | |
| #32 HUDSON YARDS | 71.9 | 040499AZMM |
| M to C | 60.2 | |
| M to R | 11.6 | |
| **6/23/2005** | | |
| #38 WEST CHELSEA/HIGH LINE | 32.4 | 050162AZMM |
| M to C | 26.7 | |
| MU to C | 5.7 | |
| **10/11/2005** | | |
| #42 FAR WEST VILLAGE | 1.5 | 060006ZMM |
| M to C | 1.5 | |
| **4/26/2006** | | |
| #45 MADISON PARK WEST * | 1.2 | 060210ZMM |
| M to C | 1.2 | |
| **9/13/2006** | | |
| #52 TRIBECA NORTH REZONING * | 3.7 | 040543ZMM |
| MU to C | 3.7 | |
| **2/28/2007** | | |
| #54 W60TH ST PROJECT * | 1.9 | 060104ZMM |
| M to C | 1.9 | |
| **6/15/2007** | | |
| #56 E HARLEM SALT STORAGE FACILITY † | 3.0 | 070235ZMM |
| Not M to M | 3.0 | |
| **12/19/2007** | | |
| #66 SPEC MANHATTANVILLE DIST * | 23.1 | 070495ZMM |
| M to C | 18.0 | |
| M to M | 4.1 | |
| M to R | 1.0 | |
| **1/30/2008** | | |
| #68 TUCK-IT-AWAY * | 0.4 | 060225ZMM |
| M to C | 0.4 | |
| **3/26/2008** | | |
| #71 EAST RIVER REALTY CO. * | 8.7 | 070522ZMM |
| M to C | 1.6 | & 070529ZMM |
| M to C | 7.0 | |
| **4/16/2008** | | |
| #73 REI/RED CROSS REZONING * | 1.5 | 070289ZMM |
| M to R | 1.5 | |
| **4/30/2008** | | |
| #75 125TH ST CORRIDOR † | 1.6 | 080099AZMM |
| M to C | 1.6 | |
| **6/29/2008** | | |
| #78 84 WHITE ST * | 2.1 | 060032ZMM |
| M to C | 2.1 | |
| **7/23/2008** | | |
| #80 HUDSON SQ NORTH * | 1.3 | 070575ZMM |
| M to MU | 1.3 | |
| **10/7/2008** | | |
| #85 E125TH ST DEV † | 3.3 | 080333ZMM |
| M to C | 3.3 | |
| **5/20/2009** | | |
| #92 THE CLINTON PARK * | 2.2 | 080008ZMM |
| M to C | 2.2 | |
| **12/9/2009** | | |
| #101 W129TH ST * | 1.3 | 080039ZMM |
| M to R | 1.3 | |
| **12/21/2009** | | |
| #103 WESTERN RAIL YARDS * | 13.0 | 090433ZMM |
| M to C | 13.0 | |
| **3/3/2010** | | |
| #104 W44TH ST & 11TH AVE † | 1.7 | 100051ZMM |
| M to R | 1.7 | |
| **10/13/2010** | | |
| #111 NORTH TRIBECA REZONING | 27.6 | 100369ZMM |
| MU to C | 27.6 | |
| **4/6/2011** | | |
| #115 CLINTON COMMONS * | 0.4 | 110125ZMM |
| M to R | 0.4 | |
| **6/14/2011** | | |
| #120 WEST CLINTON REZONING | 37.1 | 110177ZMM |
| M to M | 25.4 | |
| M to R | 11.7 | |
| **9/21/2011** | | |
| #124 WEST 28TH STREET * | 5.6 | 100063ZMM |
| M to MU | 5.6 | |

\* Rezoning by private applicant
† Rezoning by city agency excluding DCP

# Rezonings Affecting Manufacturing Districts: 2002 to 2012
# BRONX



**Legend**

| 55 | Rezoning Initiative Boundary, with label corresponding to timeline below |
|---|---|

*A dotted outline indicates a portion of the rezoning initiative area where no M-Zones were affected*

*Mixed Use (MU) includes Special Mixed Use Districts, all other Special Districts in which M1 Districts are paired with a Residence District, M1-D Districts, and select Manufacturing Districts within Special Districts, which permit new residences*

**Unchanged 2002 M-Zones:**

**Rezonings Affecting 2002 M-Zones:**
- M to C
- M to Mixed Use (MU)*
- M to R
- New M or New Mixed Use
- Mixed Use to C
- Mixed Use to R
- Mixed Use to M
- M to M or Mixed Use to Mixed Use

**Other Actions Affecting 2002 M-Zones:**
- GPP

**New Park, Public Open Space or Preserved Natural Area:**
- Type 1
- Type 2
- Type 3

GPP areas include land under the jurisdiction of General Project Plans approved by the Empire State Development Corporation or its subsidiaries.

Note regarding land mapped as park, public open space and preserved natural areas as of 2002:
Any land that, prior to 1/1/2002, was either mapped as park (whether or not acquired by the City), intended as open space, or under the jurisdiction of NYC Dept. of Parks & Recreation, National Park Service, NYS Dept. of Environmental Conservation, or NYS Office of Parks, Recreation & Historic Preservation was not considered land available for permitted M-Zone uses, and is not shaded on these maps.

Post-2002 New Parks, Public Open Space or Preserved Natural Areas:
Type 1: Parks added to City Map via ULURP action between 2002 and 2012 but not necessarily acquired by the City.
Type 2: Parcels acquired by or assigned to NYC Dept. of Parks & Recreation between 2002 and 2012 but not added to the City Map. These exclude parcels intended for DPR operations use.
Type 3: Land owned by or under management by the New York City Economic Development Corporation which is planned as public open space.

**NYC PLANNING**
DEPARTMENT OF CITY PLANNING CITY OF NEW YORK

1584

## Timeline of Rezonings Affecting Manufacturing Districts in the Bronx, Not Including Other Actions: 2002-2012

| | | Acres | ULURP No. |
|---|---|---|---|
| | **8/19/2003** | | |
| #13 | MORRISANIA AREA REZONING | 26.3 | 030333ZMX |
| | M to MU | 25.3 | |
| | Not M to MU | 1.0 | |
| #14 | WASHINGTON PLAZA * | 2.8 | 030213ZMX |
| | M to C | 2.8 | |
| | **9/30/2003** | | |
| #15 | CITY ISLAND REZONING | 1.2 | 030467ZMX |
| | M to C | 1.2 | |
| | M to R | 0.1 | |
| | **3/9/2005** | | |
| #34 | PORT MORRIS/BRUCKNER BLVD | 36.1 | 050120ZMX |
| | M to MU | 35.4 | |
| | Not M to MU | 0.7 | |
| | **10/11/2005** | | |
| #41 | 764 E176TH STREET * | 0.8 | 030370ZMX |
| | M to R | 0.8 | |
| | **2/1/2006** | | |
| #43 | BX TERMINAL MKT GATEWAY CNTR † | 21.7 | 050529ZMX |
| | M to C | 21.7 | |
| | **3/22/2006** | | |
| #44 | WESTCHESTER SQUARE-ZEREGA | 1.7 | 060180ZMX |
| | M to R | 1.7 | |
| | **7/19/2006** | | |
| #48 | PELHAM PKWY/INDIAN VILLAGE | 1.6 | 060335ZMX |
| | M to R | 1.6 | |
| #49 | VAN CORTLANDT CENTER * | 2.2 | 060214ZMX |
| | M to R | 2.2 | |
| | **7/25/2007** | | |
| #60 | WAKEFIELD/EASTCHESTER | 3.9 | 070409ZMX |
| | M to R | 3.9 | |
| | **4/16/2008** | | |
| #74 | ROSCOE C BROWNE JR APTS † | 1.2 | 080233ZMX |
| | M to R | 1.2 | |
| | **4/30/2008** | | |
| #76 | JAMES J. LYONS URP † | 0.1 | 080128ZMX |
| | M to R | 0.1 | |
| | **7/23/2008** | | |
| #81 | HUNTS POINT SPECIAL DIST | 170.1 | 080248ZMX |
| | M to M | 169.9 | |
| | M to R | 0.2 | |
| #82 | ST ANN'S AVE DEV * | 3.2 | 050018ZMX |
| | M to R | 3.2 | |
| | **12/18/2008** | | |
| #89 | VIA VERDE/THE GREEN WAY † | 3.0 | 080517ZMX |
| | M to C | 3.0 | |
| | **6/30/2009** | | |
| #94 | LOWER CONCOURSE | 68.7 | 090303ZMX |
| | M to C | 25.4 | |
| | M to M | 7.1 | |
| | M to MU | 20.3 | |
| | M to R | 10.0 | |
| | Not M to MU | 5.9 | |
| | **10/14/2009** | | |
| #100 | ON THE SOUND ON CITY ISLAND * | 5.5 | 060288ZMX |
| | M to R | 5.5 | |
| | **10/13/2010** | | |
| #110 | 3500 PARK AVENUE * | 0.4 | 080129ZMX |
| | M to R | 0.4 | |
| #112 | THIRD AV-TREMONT AV CORRIDOR | 19.2 | 100407ZMX |
| | M to C | 1.8 | |
| | M to MU | 8.3 | |
| | Not M to MU | 9.2 | |
| | **10/5/2011** | | |
| #125 | CROTONA PARK E/W FARM * | 17.8 | 100310ZMX |
| | M to R | 17.8 | |

\* Rezoning by private applicant
† Rezoning by city agency excluding DCP

# Rezonings Affecting Manufacturing Districts: 2002 to 2012
# QUEENS



## Legend

| 55 | Rezoning Initiative Boundary, with label corresponding to timeline below |

*A dotted outline indicates a portion of the rezoning initiative area where no M-zones were affected*

*Mixed Use (MU) includes Special Mixed Use Districts, all other Special Districts in which M1 Districts are paired with a Residence District, M1-D Districts, and select Manufacturing Districts within Special Districts, which permit new residences*

**Unchanged 2002 M-Zones:**

**Rezonings Affecting 2002 M-Zones:**

- M to C
- M to Mixed Use (MU)*
- M to R
- New M or New Mixed Use
- Mixed Use to C
- Mixed Use to R
- Mixed Use to M
- M to M or Mixed Use to Mixed Use

**Other Actions Affecting 2002 M-Zones:**

- GPP

New Park, Public Open Space or Preserved Natural Area:

- Type 1
- Type 2
- Type 3

GPP areas include land under the jurisdiction of General Project Plans approved by the Empire State Development Corporation or its subsidiaries.

Note regarding land mapped as park, public open space and preserved natural areas as of 2002:
Any land that, prior to 1/1/2002, was either mapped as park (whether or not acquired by the City), intended as open space, or under the jurisdiction of NYC Dept. of Parks & Recreation, National Park Service, NYS Dept. of Environmental Conservation, or NYS Office of Parks, Recreation & Historic Preservation was not considered land available for permitted M-Zone uses, and is not shaded on the map.

Post-2002 New Parks, Public Open Space or Preserved Natural Areas:
Type 1: Parks added to City Map via ULURP action between 2002 and 2012 but not necessarily acquired by the City.
Type 2: Parcels acquired by or assigned to NYC Dept. of Parks and Recreation between 2002 and 2012 but not added to the City Map. These exclude parcels intended for DPR operations use.
Type 3: Land owned by or under management by the New York City Economic Development Corporation which is planned as public open space.

**NYC**PLANNING
DEPARTMENT OF CITY PLANNING CITY OF NEW YORK

## Timeline of Rezonings Affecting Manufacturing Districts in Queens, Not Including Other Actions: 2002-2012

| 3/13/2002 | Acres | ULURP No. |
|---|---|---|
| #3  129TH ST REZONING * | 1.1 | 000188ZMQ |
| Not M to M | 1.1 | |
| **11/19/2003** | | |
| #16  ARVERNE URA † | 3.0 | 030510ZMQ |
| M to R | 3.0 | |
| **8/12/2004** | | |
| #24  HUNTERS POINT SUBDISTRICT | 62.0 | 040273ZMQ |
| M to MU | 56.3 | |
| M to R | 2.2 | |
| Not M to MU | 3.5 | |
| **3/9/2005** | | |
| #33  KEW GARDENS-RICHMOND HILL | 33.6 | 050153ZMQ |
| M to R | 33.6 | |
| **7/27/2005** | | |
| #39  E. FLUSHING REZONING | 3.0 | 050277ZMQ |
| M to R | 3.0 | |
| **9/28/2005** | | |
| #40  COLLEGE POINT REZONING | 7.2 | 050402ZMQ |
| M to M | 0.6 | |
| M to R | 6.7 | |
| **6/29/2006** | | |
| #47  MASPETH-WOODSIDE | 1.4 | 060294ZMQ |
| M to R | 1.4 | |
| **7/19/2006** | | |
| #50  VERNON BLVD REZONING * | 0.9 | 020087ZMQ |
| Not M to M | 0.9 | |
| **8/16/2006** | | |
| #51  SILVERCUP WEST * | 7.4 | 060323ZMQ |
| M to MU | 7.4 | |
| **9/10/2007** | | |
| #61  THE JAMAICA PLAN † | 126.2 | 070314AZMQ |
| M to C | 30.6 | |
| M to M | 79.0 | |
| M to R | 16.4 | |
| Not M to M | 0.2 | |
| **1/9/2008** | | |
| #67  ASTORIA STUDIO APTS * | 1.4 | 050491ZMQ |
| M to C | 1.4 | |
| **7/1/2008** | | |
| #79  COLLEGE POINT-14TH AVE * | 1.7 | 070174ZMQ |
| M to R | 1.7 | |
| **8/14/2008** | | |
| #83  ROCKAWAY NEIGHBORHOODS | 6.9 | 080371ZMQ |
| Not M to M | 6.9 | |
| **10/7/2008** | | |
| #84  DUTCH KILLS † | 75.7 | 080429ZMQ |
| M to MU | 7.0 | |
| MU to M | 3.8 | |
| MU to MU | 65.0 | |
| **11/13/2008** | | |
| #86  HUNTERS POINT SO † | 28.7 | 080362ZMQ |
| GPP | 21.4 | |
| M to R | 7.4 | |
| #87  WILLETS PT DEV PLAN † | 46.3 | 080381ZMQ |
| M to C | 46.3 | |
| **12/9/2008** | | |
| #88  WATERPOINTE * | 11.2 | 080203ZMQ |
| M to R | 11.2 | |

| 7/29/2009 | Acres | ULURP No. |
|---|---|---|
| #96  MIDDLE VILLAGE/GLENDALE/MASPETH | 9.0 | 090382ZMQ |
| M to R | 8.7 | |
| MU to R | 0.3 | |
| **7/29/2010** | | |
| #106  35TH AVE REZONING * | 2.0 | 030223ZMQ |
| M to R | 2.0 | |
| #107  94TH ST-CORONA AVE * | 5.5 | 050522ZMQ |
| M to R | 5.5 | |
| **9/16/2010** | | |
| #109  HOUR CHILDREN * | 3.2 | 100145ZMQ |
| M to R | 3.2 | |
| **5/11/2011** | | |
| #118  SOUTH JAMAICA | 1.2 | 110145ZMQ |
| M to R | 1.2 | |
| **6/29/2011** | | |
| #121  135-01, 135-09 NORTHERN BLVD * | 0.2 | 070210ZMQ |
| M to R | 0.2 | |
| **7/28/2011** | | |
| #122  SUNNYSIDE-WOODSIDE | 1.4 | 110207ZMQ |
| M to R | 1.4 | |

* Rezoning by private applicant
† Rezoning by city agency excluding DCP

# Rezonings Affecting Manufacturing Districts: 2002 to 2012

## BROOKLYN

GPP areas include land under the jurisdiction of General Project Plans approved by the Empire State Development Corporation or its subsidiaries.

Note regarding land mapped as park, public open space and preserved natural areas as of 2002: Any land that, prior to 1/1/2002, was either mapped as park (whether or not acquired by the City), intended as open space, or under the jurisdiction of NYC Dept. of Parks & Recreation, National Park Service, NYS Dept. of Environmental Conservation, or NYS Office of Parks, Recreation & Historic Preservation was not considered land available for permitted M-Zone uses, and is not shaded on these maps.

Post-2002 New Parks, Public Open Space or Preserved Natural Areas:
Type 1: Parks added to City Map via ULURP action between 2002 and 2012 but not necessarily acquired by the City.
Type 2: Parcels acquired by or assigned to NYC Dept. of Parks & Recreation between 2002 and 2012 but not added to the City Map. These exclude parcels intended for DPR operations use.
Type 3: Land owned by or under management by the New York City Economic Development Corporation which is planned as public open space.

## Legend

55  Rezoning Initiative Boundary, with label corresponding to timeline below

A dotted outline indicates a portion of the rezoning initiative area where no M-zones were affected

*Mixed Use (MU) includes Special Mixed Use Districts, all other Special Districts in which M1 Districts are paired with a Residence District, M1-D Districts, and select Manufacturing Districts within Special Districts, which permit new residences

### Unchanged 2002 M-Zones:

### Rezonings Affecting 2002 M-Zones:
- M to C
- M to Mixed Use (MU)*
- M to R
- New M or New Mixed Use
- Mixed Use to C
- Mixed Use to R
- Mixed Use to M
- M to M or Mixed Use to Mixed Use

### Other Actions Affecting 2002 M-Zones:
- GPP

New Park, Public Open Space or Preserved Natural Area:
- Type 1
- Type 2
- Type 3

NYCPLANNING

1588

# Timeline of Rezonings Affecting Manufacturing Districts in Brooklyn, Not Including Other Actions: 2002-2012

| | | Acres | ULURP No. |
|---|---|---|---|
| **1/30/2002** | | | |
| #1 | LIGHT BRIDGES REZONING * | 2.7 | 010725ZMK |
| | M to MU | 2.7 | |
| #2 | RED HOOK STORES † | 8.7 | 020047ZMK |
| | M to M | 8.7 | |
| **3/25/2002** | | | |
| #4 | HARBOR TECH-5 DELEVAN * | 2.4 | 000539ZMK |
| | M to R | 2.4 | |
| **12/18/2002** | | | |
| #6 | DOMSEY & GLANTZ SITES * | 5.4 | 000087ZMK |
| | M to R | 5.4 | |
| **4/30/2003** | | | |
| #9 | PARK SLOPE REZONING | 13.5 | 030194AZMK |
| | M to C | 13.0 | |
| | M to R | 0.5 | |
| **8/19/2003** | | | |
| #11 | BRIDGE PLAZA REZONING | 10.0 | 020263ZMK |
| | M to C | 7.8 | |
| | M to R | 2.2 | |
| **5/5/2004** | | | |
| #19 | GOLD ST REZONING * | 0.5 | 030289ZMK |
| | M to R | 0.5 | |
| **6/21/2004** | | | |
| #20 | AM & G WATERPROOFING * | 1.6 | 040124ZMK |
| | Not M to M | 1.6 | |
| **6/28/2004** | | | |
| #21 | DOWNTOWN BKLYN DEVELOPMENT | 3.3 | 040171ZMK |
| | M to C | 3.3 | |
| **7/21/2004** | | | |
| #22 | FRANKLIN LOFTS * | 0.8 | 030294ZMK |
| | M to R | 0.8 | |
| **9/28/2004** | | | |
| #27 | 226 FRANKLIN & 98 FREEMAN STS * | 1.6 | 010384ZMK |
| | M to MU | 1.6 | |
| **10/13/2004** | | | |
| #28 | IKEA * | 23.9 | 030413ZMK |
| | M to M | 23.9 | |
| **12/15/2004** | | | |
| #31 | WATCHTOWER PROJECT * | 4.1 | 040215ZMK |
| | M to MU | 4.1 | |
| **3/23/2005** | | | |
| #35 | BAY RIDGE REZONING | 1.1 | 050134AZMK |
| | M to R | 1.1 | |
| **5/11/2005** | | | |
| #36 | GREENPOINT-WILLIAMSBURG | 306.6 | 050111AZMK |
| | M to M | 26.1 | |
| | M to MU | 105.1 | |
| | M to R | 77.9 | |
| | MU to MU | 45.2 | |
| | MU to R | 48.2 | |
| | Not M to MU | 4.1 | |
| **6/8/2005** | | | |
| #37 | LOGAN STREET REZONING * | 0.9 | 040389ZMK |
| | M to R | 0.9 | |
| **6/13/2006** | | | |
| #46 | KEDEM WINERY * | 2.1 | 020518ZMK |
| | | 2.1 | |
| **3/28/2007** | | | |
| #55 | CARROLL ST * | 0.1 | 060018ZMK |
| | M to R | 0.1 | |
| **7/25/2007** | | | |
| #57 | AM&G WATERPROOFING II * | 0.3 | 060545ZMK |
| | Not M to M | 0.3 | |
| #58 | DYKER HEIGHTS/FT HAMILTON | 5.8 | 070387ZMK |
| | M to M | 1.3 | |
| | M to R | 4.5 | |
| #59 | FORT GREENE/CLINTON HILL | 7.6 | 070430ZMK |
| | M to R | 7.6 | |

| | | Acres | ULURP No. |
|---|---|---|---|
| **10/17/2007** | | | |
| #62 | BAY RIDGE MIXED USE DEV * | 7.3 | 060353ZMK |
| | M to C | 7.3 | |
| #63 | KINGS MATERIAL * | 0.5 | 040161ZMK |
| | M to R | 0.5 | |
| **10/29/2007** | | | |
| #64 | 45 SUMMIT STREET * | 0.4 | 060477ZMK |
| | M to R | 0.4 | |
| #65 | BEDFORD-STUYVESANT SO | 7.4 | 070447ZMK |
| | M to C | 3.3 | |
| | M to MU | 3.0 | |
| | M to R | 1.1 | |
| **2/27/2008** | | | |
| #69 | DAHILL RD * | 1.4 | 050236ZMK |
| | M to C | 1.4 | |
| **3/12/2008** | | | |
| #70 | WALLABOUT STREET REZONING * | 2.0 | 060377ZMK |
| | M to R | 2.0 | |
| **4/16/2008** | | | |
| #72 | COLUMBIA HICKS PROJ † | 2.4 | 080116ZMK |
| | M to R | 2.4 | |
| **4/30/2008** | | | |
| #77 | WATKINS ST COOPS † | 1.1 | 080141ZMK |
| | M to R | 1.1 | |
| **3/11/2009** | | | |
| #90 | 363-365 BOND STREET * | 3.9 | 090047ZMK |
| | M to MU | 3.9 | |
| **4/22/2009** | | | |
| #91 | 354 CLARKSON AVE † | 2.3 | 070396ZMK |
| | M to R | 2.3 | |
| **6/10/2009** | | | |
| #93 | DOCK STREET DUMBO * | 1.1 | 090181ZMK |
| | M to MU | 1.1 | |
| **7/29/2009** | | | |
| #95 | DUMBO REZONING | 14.4 | 090310ZMK |
| | M to MU | 14.4 | |
| **9/30/2009** | | | |
| #98 | 470 VANDERBILT AVE * | 2.5 | 090441ZMK |
| | M to C | 2.5 | |
| #99 | NAVY GREEN † | 2.5 | 090444ZMK |
| | M to R | 2.5 | |
| **12/21/2009** | | | |
| #102 | BROADWAY TRIANGLE URA † | 16.9 | 0904132MK |
| | M to C | 0.9 | |
| | M to R | 16.0 | |
| **4/14/2010** | | | |
| #105 | ROSE PLAZA ON THE RIVER * | 3.9 | 080339ZMK |
| | M to R | 3.9 | |
| **7/29/2010** | | | |
| #108 | THE NEW DOMINO * | 11.2 | 100185ZMK |
| | M to C | 3.4 | |
| | M to R | 7.8 | |
| **10/27/2010** | | | |
| #113 | CULVER EL | 15.8 | 100345ZMK |
| | M to C | 1.9 | |
| | M to M | 0.5 | |
| | M to MU | 11.1 | |
| | M to R | 2.3 | |
| **3/23/2011** | | | |
| #114 | WYTHE AVE REZONING * | 1.2 | 070245ZMK |
| | M to MU | 1.2 | |
| **4/29/2011** | | | |
| #116 | 20-30 CARROLL STREET REZONING | 0.3 | 110118ZMK |
| | M to R | 0.3 | |
| #117 | CARROLL STREET REZONING * | 0.3 | 090225ZMK |
| | M to R | 0.3 | |

| | | Acres | ULURP No. |
|---|---|---|---|
| **9/21/2011** | | | |
| #123 | BROOKLYN BAY CENTER * | 8.5 | 110047ZMK |
| | M to M | 8.5 | |
| **11/29/2011** | | | |
| #126 | ADMIRALS ROW PLAZA * | 7.4 | 110382ZMK |
| | M to M | 7.4 | |

\* Rezoning by private applicant
† Rezoning by city agency excluding DCP

1589

# Rezonings Affecting Manufacturing Districts: 2002 to 2012
## STATEN ISLAND



## Legend

| 55 | Rezoning Initiative Boundary, with label corresponding to timeline below |

*A dotted outline indicates a portion of the rezoning initiative area where no M-zones were affected*

*Mixed Use (MU) includes Special Mixed Use Districts, all other Special Districts in which M1 Districts are paired with a Residence District, M1-D Districts, and select Manufacturing Districts within Special Districts, which permit new residences*

**Unchanged 2002 M-Zones:**

**Rezonings Affecting 2002 M-Zones:**
- M to C
- M to Mixed Use (MU)*
- M to R
- New M or New Mixed Use
- Mixed Use to C
- Mixed Use to R
- Mixed Use to M
- M to M or Mixed Use to Mixed Use

**Other Actions Affecting 2002 M-Zones:**
- GPP

New Park, Public Open Space or Preserved Natural Area:
- Type 1
- Type 2
- Type 3

GPP areas include land under the jurisdiction of General Project Plans approved by the Empire State Development Corporation or its subsidiaries.

Note regarding land mapped as park, public open space and preserved natural areas as of 2002: Any land that, prior to 1/1/2002, was either mapped as park (whether or not acquired by the City), intended as open space, or under the jurisdiction of NYC Dept. of Parks & Recreation, National Park Service, NYS Dept. of Environmental Conservation, or NYS Office of Parks, Recreation & Historic Preservation was not considered land available for permitted M-Zone uses, and is not shaded on these maps.

Post-2002 New Parks, Public Open Space or Preserved Natural Areas:
Type 1: Parks added to City Map via ULURP action between 2002 and 2012 but not necessarily acquired by the City.
Type 2: Parcels acquired by or assigned to NYC Dept. of Parks & Recreation between 2002 and 2012 but not added to the City Map. These exclude parcels intended for DPR operations use.
Type 3: Land owned by or under management by the New York City Economic Development Corporation which is planned as public open space.

1590

NYCPLANNING
DEPARTMENT OF CITY PLANNING CITY OF NEW YORK

# Timeline of Rezonings Affecting Manufacturing Districts in Staten Island, Not Including Other Actions: 2002-2012

| | | Acres | ULURP NO. |
|---|---|---|---|
| | **3/12/2003** | | |
| #8 | NICHOLAS AVE REZONING * | 12.1 | 020188ZMR |
| | M to R | 12.1 | |
| | **12/3/2003** | | |
| #17 | SIBP/SOUTHEAST MID-ISLAND † | 0.01 | 020636ZMR |
| | M to R | 0.01 | |
| | **8/12/2004** | | |
| #26 | TIDES AT CHARLESTON * | 25.7 | 030449ZMR |
| | M to R | 25.7 | |
| | **10/25/2006** | | |
| #53 | NEW STAPLETON WATERFRONT DEV | 44.8 | 060471ZMR |
| | M to C | 44.8 | |
| | **5/11/2011** | | |
| #119 | UNION AVENUE REZONING * | 3.3 | 100118ZMR |
| | M to R | 3.3 | |

\* Rezoning by private applicant
† Rezoning by city agency excluding DCP

# Timeline of Rezonings Affecting Manufacturing Districts, Not Including Other Actions: 2002-2012

| | | Acres | ULURP No. |
|---|---|---|---|
| | **1/30/2002** | | |
| #1 | LIGHT BRIDGES REZONING * | 2.7 | 010725ZMK |
| | M to MU | 2.7 | |
| #2 | RED HOOK STORES † | 8.7 | 020047ZMK |
| | M to MU | 8.7 | |
| | **3/13/2002** | | |
| #3 | 129TH ST REZONING * | 1.1 | 000188ZMQ |
| | Not M to M | 1.1 | |
| | **3/25/2002** | | |
| #4 | HARBOR TECH-S DELEVAN * | 2.4 | 000539ZMK |
| | M to R | 2.4 | |
| | **7/24/2002** | | |
| #5 | CLINTON URA † | 0.6 | 020463ZMM |
| | M to R | 0.6 | |
| | **12/18/2002** | | |
| #6 | DOMSEY & GLANTZ SITES * | 5.4 | 000087ZMK |
| | M to R | 5.4 | |
| | **1/29/2003** | | |
| #7 | GATEWAY II * | 0.3 | 020216ZMM |
| | M to C | 0.3 | |
| | **3/12/2003** | | |
| #8 | NICHOLAS AVE REZONING * | 12.1 | 020188ZMR |
| | M to M | 12.1 | |
| | **4/30/2003** | | |
| #9 | PARK SLOPE REZONING | 13.5 | 030194AZMK |
| | M to C | 13.0 | |
| | M to R | 0.5 | |
| | **6/24/2003** | | |
| #10 | EAST HARLEM REZONING * | 1.7 | 030234AZMM |
| | M to R | 1.7 | |
| | **8/19/2003** | | |
| #11 | BRIDGE PLAZA REZONING | 10.0 | 020263ZMK |
| | M to C | 7.8 | |
| | M to R | 2.2 | |
| #12 | HUDSON SQUARE REZONING * | 4.8 | 030237ZMM |
| | M to C | 4.8 | |
| #13 | MORRISANIA AREA REZONING | 26.3 | 030333ZMX |
| | M to MU | 25.3 | |
| | Not M to MU | 1.0 | |
| #14 | WASHINGTON PLAZA * | 2.8 | 030213ZMK |
| | M to C | 2.8 | |
| | **9/30/2003** | | |
| #15 | CITY ISLAND REZONING | 1.2 | 030467ZMX |
| | M to C | 1.2 | |
| | M to R | 0.1 | |
| | **11/19/2003** | | |
| #16 | ARVERNE URA † | 3.0 | 030510ZMQ |
| | M to R | 3.0 | |
| | **12/3/2003** | | |
| #17 | SIBP/SOUTHEAST MID-ISLAND † | 0.01 | 020636ZMR |
| | M to R | 0.01 | |
| | **3/10/2004** | | |
| #18 | 2-10 WEST END AVE * | 1.6 | 030214ZMM |
| | M to R | 1.6 | |
| | **5/5/2004** | | |
| #19 | GOLD ST REZONING * | 0.5 | 030289ZMK |
| | M to R | 0.5 | |
| | **6/21/2004** | | |
| #20 | AM & G WATERPROOFING * | 1.6 | 040124ZMK |
| | Not M to M | 1.6 | |
| | **6/28/2004** | | |
| #21 | DOWNTOWN BKLYN DEVELOPMENT | 3.3 | 040171ZMK |
| | M to C | 3.3 | |

| | | Acres | ULURP No. |
|---|---|---|---|
| | **7/21/2004** | | |
| #22 | FRANKLIN LOFTS * | 0.8 | 030294ZMK |
| | M to R | 0.8 | |
| #23 | LAFAYETTE ST REZONING * | 0.3 | 040021ZMM |
| | MU to C | 0.3 | |
| | **8/12/2004** | | |
| #24 | HUNTERS POINT SUBDISTRICT | 62.0 | 040273ZMQ |
| | M to MU | 56.3 | |
| | M to R | 2.2 | |
| | Not M to M | 3.5 | |
| #25 | LADIES MILE REZONING | 17.9 | 040331ZMM |
| | M to C | 17.9 | |
| #26 | TIDES AT CHARLESTON * | 25.7 | 030449ZMR |
| | M to R | 25.7 | |
| | **9/28/2004** | | |
| #27 | 226 FRANKLIN & 98 FREEMAN STS * | 1.6 | 010384ZMK |
| | M to MU | 1.6 | |
| | **10/13/2004** | | |
| #28 | IKEA * | 23.9 | 030413ZMK |
| | M to M | 23.9 | |
| | **11/10/2004** | | |
| #29 | VERIZON W43RD ST REZONING * | 1.0 | 040249ZMM |
| | M to C | 1.0 | |
| #30 | VERIZON W47TH-W48TH STS * | 2.6 | 040250ZMM |
| | M to M | 2.6 | |
| | **12/15/2004** | | |
| #31 | WATCHTOWER PROJECT * | 4.1 | 040215ZMK |
| | M to MU | 4.1 | |
| | **1/19/2005** | | |
| #32 | HUDSON YARDS | 71.9 | 040499AZMM |
| | M to C | 60.2 | |
| | M to R | 11.6 | |
| | **3/9/2005** | | |
| #33 | KEW GARDENS-RICHMOND HILL | 33.6 | 050153ZMQ |
| | M to R | 33.6 | |
| #34 | PORT MORRIS/BRUCKNER BLVD | 36.1 | 050120ZMX |
| | M to MU | 35.4 | |
| | Not M to MU | 0.7 | |
| | **3/23/2005** | | |
| #35 | BAY RIDGE REZONING | 1.1 | 050134AZMK |
| | M to R | 1.1 | |
| | **5/11/2005** | | |
| #36 | GREENPOINT-WILLIAMSBURG | 306.6 | 050111AZMK |
| | M to R | 26.1 | |
| | M to MU | 105.1 | |
| | M to R | 77.9 | |
| | MU to MU | 45.2 | |
| | MU to R | 48.2 | |
| | Not M to MU | 4.1 | |
| | **6/8/2005** | | |
| #37 | LOGAN STREET REZONING * | 0.9 | 040389ZMK |
| | M to R | 0.9 | |
| | **6/23/2005** | | |
| #38 | WEST CHELSEA/HIGH LINE | 32.4 | 050162AZMM |
| | M to C | 26.7 | |
| | MU to C | 5.7 | |
| | **7/27/2005** | | |
| #39 | E. FLUSHING REZONING | 3.0 | 050277ZMQ |
| | M to R | 3.0 | |
| | **9/28/2005** | | |
| #40 | COLLEGE POINT REZONING | 7.2 | 050482ZMQ |
| | M to M | 0.6 | |
| | M to R | 6.7 | |
| | **10/11/2005** | | |
| #41 | 764 E176TH STREET * | 0.8 | 030370ZMX |
| | M to R | 0.8 | |
| #42 | FAR WEST VILLAGE | 1.5 | 060006ZMM |
| | M to C | 1.5 | |

| | | Acres | ULURP No. |
|---|---|---|---|
| | **2/1/2006** | | |
| #43 | BX TERMINAL MKT GATEWAY CNTR † | 21.7 | 050529ZMK |
| | M to C | 21.7 | |
| | **3/22/2006** | | |
| #44 | WESTCHESTER SQUARE-ZEREGA | 1.7 | 060180ZMX |
| | M to R | 1.7 | |
| | **4/26/2006** | | |
| #45 | MADISON PARK WEST * | 1.2 | 060210ZMM |
| | M to C | 1.2 | |
| | **6/13/2006** | | |
| #46 | KEDEM WINERY * | 2.1 | 020518ZMK |
| | M to R | 2.1 | |
| | **6/29/2006** | | |
| #47 | MASPETH-WOODSIDE | 1.4 | 060294ZMQ |
| | M to R | 1.4 | |
| | **7/19/2006** | | |
| #48 | PELHAM PKWY/INDIAN VILLAGE | 1.6 | 060335ZMX |
| | M to R | 1.6 | |
| #49 | VAN CORTLANDT CENTER * | 2.2 | 060214ZMX |
| | M to R | 2.2 | |
| #50 | VERNON BLVD REZONING * | 0.9 | 020087ZMQ |
| | Not M to M | 0.9 | |
| | **8/16/2006** | | |
| #51 | SILVERCUP WEST * | 7.4 | 060323ZMQ |
| | M to MU | 7.4 | |
| | **9/13/2006** | | |
| #52 | TRIBECA NORTH REZONING * | 3.7 | 040543ZMM |
| | MU to C | 3.7 | |
| | **10/25/2006** | | |
| #53 | NEW STAPLETON WATERFRONT DEV | 44.8 | 060471ZMR |
| | M to C | 44.8 | |
| | **2/28/2007** | | |
| #54 | W60TH ST PROJECT * | 1.9 | 060104ZMM |
| | M to C | 1.9 | |
| | **3/28/2007** | | |
| #55 | CARROLL ST * | 0.1 | 060018ZMK |
| | M to R | 0.1 | |
| | **6/15/2007** | | |
| #56 | E HARLEM SALT STORAGE FACILITY † | 3.0 | 070235ZMM |
| | Not M to M | 3.0 | |
| | **7/25/2007** | | |
| #57 | AM&G WATERPROOFING II * | 0.3 | 060545ZMK |
| | Not M to M | 0.3 | |
| #58 | DYKER HEIGHTS/FT HAMILTON | 5.8 | 070387ZMK |
| | M to M | 1.3 | |
| | M to R | 4.5 | |
| #59 | FORT GREENE/CLINTON HILL | 7.6 | 070430ZMK |
| | M to R | 7.6 | |
| #60 | WAKEFIELD/EASTCHESTER | 3.9 | 070409ZMX |
| | M to R | 3.9 | |
| | **9/10/2007** | | |
| #61 | THE JAMAICA PLAN † | 126.2 | 070314AZMQ |
| | M to C | 30.6 | |
| | M to M | -79.0 | |
| | M to R | 16.4 | |
| | Not M to M | 0.2 | |
| | **10/17/2007** | | |
| #62 | BAY RIDGE MIXED USE DEV * | 7.3 | 060353ZMK |
| | M to C | 7.3 | |
| #63 | KINGS MATERIAL * | 0.5 | 040161ZMK |
| | M to R | 0.5 | |

* Rezoning by private applicant
† Rezoning by city agency excluding DCP

| 10/29/2007 | Acres | ULURP No. |
|---|---|---|
| #64 45 SUMMIT STREET * | 0.4 | 060477ZMK |
| M to R | 0.4 | |
| #65 BEDFORD-STUYVESANT SO | 7.4 | 070447ZMK |
| M to C | 3.3 | |
| M to MU | 3.0 | |
| M to R | 1.1 | |
| 12/19/2007 | | |
| #66 SPEC MANHATTANVILLE DIST * | 23.1 | 070495ZMM |
| M to C | 18.0 | |
| M to M | 4.1 | |
| M to R | 1.0 | |
| 1/9/2008 | | |
| #67 ASTORIA STUDIO APTS * | 1.4 | 050491ZMQ |
| M to C | 1.4 | |
| 1/30/2008 | | |
| #68 TUCK-IT-AWAY * | 0.4 | 060225ZMM |
| M to C | 0.4 | |
| 2/27/2008 | | |
| #69 DAHILL RD * | 1.4 | 050236ZMK |
| M to C | 1.4 | |
| 3/12/2008 | | |
| #70 WALLABOUT STREET REZONING * | 2.0 | 060377ZMK |
| M to R | 2.0 | |
| 3/26/2008 | | |
| #71 EAST RIVER REALTY CO. * | 8.7 | 070522ZMM |
| M to C | 1.6 | & 070529ZMM |
| M to C | 7.0 | |
| 4/16/2008 | | |
| #72 COLUMBIA HICKS PROJ † | 2.4 | 080116ZMK |
| M to R | 2.4 | |
| #73 REI/RED CROSS REZONING * | 1.5 | 070289ZMM |
| M to R | 1.5 | |
| #74 ROSCOE C BROWNE JR APTS * | 1.2 | 080233ZMM |
| M to R | 1.2 | |
| 4/30/2008 | | |
| #75 125TH ST CORRIDOR † | 1.6 | 080099AZMM |
| M to C | 1.6 | |
| #76 JAMES J. LYONS URP † | 0.1 | 080128ZMX |
| M to R | 0.1 | |
| #77 WATKINS ST COOPS † | 1.1 | 080141ZMK |
| M to R | 1.1 | |
| 6/29/2008 | | |
| #78 84 WHITE ST * | 2.1 | 060032ZMM |
| M to R | 2.1 | |
| 7/1/2008 | | |
| #79 COLLEGE POINT-14TH AVE * | 1.7 | 070174ZMQ |
| M to R | 1.7 | |
| 7/23/2008 | | |
| #80 HUDSON SQ NORTH * | 1.3 | 070575ZMM |
| M to MU | 1.3 | |
| #81 HUNTS POINT SPECIAL DIST | 170.1 | 080248ZMX |
| M to M | 169.9 | |
| M to R | 0.2 | |
| #82 ST ANN'S AVE DEV * | 3.2 | 050018ZMX |
| M to R | 3.2 | |
| 8/14/2008 | | |
| #83 ROCKAWAY NEIGHBORHOODS | 6.9 | 080371ZMQ |
| Not M to R | 6.9 | |
| 10/7/2008 | | |
| #84 DUTCH KILLS † | 75.7 | 080429ZMQ |
| M to MU | 7.0 | |
| MU to M | 3.8 | |
| MU to MU | 65.0 | |
| #85 E125TH ST DEV † | 3.3 | 080333ZMM |
| M to C | 3.3 | |

| 11/13/2008 | Acres | ULURP No. |
|---|---|---|
| #86 HUNTERS POINT SO † | 28.7 | 080362ZMQ |
| GPP | 21.4 | |
| M to R | 7.4 | |
| #87 WILLETS PT DEV PLAN † | 46.3 | 080381ZMQ |
| M to C | 46.3 | |
| 12/9/2008 | | |
| #88 WATERPOINTE * | 11.2 | 080203ZMQ |
| M to R | 11.2 | |
| 12/18/2008 | | |
| #89 VIA VERDE/THE GREEN WAY † | 3.0 | 080517ZMX |
| M to C | 3.0 | |
| 3/11/2009 | | |
| #90 363-365 BOND STREET * | 3.9 | 090047ZMK |
| M to MU | 3.9 | |
| 4/22/2009 | | |
| #91 354 CLARKSON AVE † | 2.3 | 070396ZMK |
| M to R | 2.3 | |
| 5/20/2009 | | |
| #92 THE CLINTON PARK * | 2.2 | 080008ZMM |
| M to C | 2.2 | |
| 6/10/2009 | | |
| #93 DOCK STREET DUMBO * | 1.1 | 090181ZMK |
| M to M | 1.1 | |
| 6/30/2009 | | |
| #94 LOWER CONCOURSE | 68.7 | 090303ZMX |
| M to C | 25.4 | |
| M to M | 7.1 | |
| M to MU | 20.3 | |
| M to R | 10.0 | |
| Not M to MU | 5.9 | |
| 7/29/2009 | | |
| #95 DUMBO REZONING | 14.4 | 090310ZMK |
| M to R | 14.4 | |
| #96 MIDDLE VILLAGE/GLENDALE/MASPET | 9.0 | 090382ZMQ |
| M to R | 8.7 | |
| MU to R | 0.3 | |
| #97 SPEC COLLEGE PT DIST † | 295.8 | 090319ZMQ |
| M to M | 295.8 | |
| 9/30/2009 | | |
| #98 470 VANDERBILT AVE * | 2.5 | 090441ZMK |
| M to C | 2.5 | |
| #99 NAVY GREEN † | 2.5 | 090444ZMK |
| M to R | 2.5 | |
| 10/14/2009 | | |
| #100 ON THE SOUND ON CITY ISLAND * | 5.5 | 060288ZMX |
| M to R | 5.5 | |
| 12/9/2009 | | |
| #101 W129TH ST * | 1.3 | 080039ZMM |
| M to R | 1.3 | |
| 12/21/2009 | | |
| #102 BROADWAY TRIANGLE URA † | 16.9 | 090413ZMK |
| M to C | 0.9 | |
| M to R | 16.0 | |
| #103 WESTERN RAIL YARDS * | 13.0 | 090433ZMM |
| M to C | 13.0 | |
| 3/3/2010 | | |
| #104 W44TH ST & 11TH AVE † | 1.7 | 100051ZMM |
| M to R | 1.7 | |
| 4/14/2010 | | |
| #105 ROSE PLAZA ON THE RIVER * | 3.9 | 080339ZMK |
| M to R | 3.9 | |

| 7/29/2010 | Acres | ULURP No. |
|---|---|---|
| #106 35TH AVE REZONING * | 2.0 | 030223ZMQ |
| M to R | 2.0 | |
| #107 94TH ST-CORONA AVE * | 5.5 | 050522ZMQ |
| M to R | 5.5 | |
| #108 THE NEW DOMINO * | 11.2 | 100185ZMK |
| M to C | 3.4 | |
| M to R | 7.8 | |
| 9/16/2010 | | |
| #109 HOUR CHILDREN * | 3.2 | 100145ZMQ |
| M to R | 3.2 | |
| 10/13/2010 | | |
| #110 3500 PARK AVENUE * | 0.4 | 080129ZMX |
| M to R | 0.4 | |
| #111 NORTH TRIBECA REZONING | 27.6 | 100369ZMM |
| MU to C | 27.6 | |
| #112 THIRD AV-TREMONT AV CORRIDO | 19.2 | 100407ZMX |
| M to C | 1.8 | |
| M to MU | 8.3 | |
| Not M to MU | 9.2 | |
| 10/27/2010 | | |
| #113 CULVER EL | 15.8 | 100345ZMK |
| M to C | 1.9 | |
| M to M | 0.5 | |
| M to MU | 11.1 | |
| M to R | 2.3 | |
| 3/23/2011 | | |
| #114 WYTHE AVE REZONING * | 1.2 | 070245ZMK |
| M to MU | 1.2 | |
| 4/6/2011 | | |
| #115 CLINTON COMMONS * | 0.4 | 110125ZMM |
| M to R | 0.4 | |
| 4/29/2011 | | |
| #116 20-30 CARROLL STREET REZONING | 0.3 | 110118ZMK |
| M to R | 0.3 | |
| #117 CARROLL STREET REZONING * | 0.3 | 090225ZMK |
| M to R | 0.3 | |
| 5/11/2011 | | |
| #118 SOUTH JAMAICA | 1.2 | 110145ZMQ |
| M to R | 1.2 | |
| #119 UNION AVENUE REZONING * | 3.3 | 100118ZMR |
| M to R | 3.3 | |
| 6/14/2011 | | |
| #120 WEST CLINTON REZONING | 37.1 | 110177ZMM |
| M to M | 25.4 | |
| M to R | 11.7 | |
| 6/29/2011 | | |
| #121 135-01, 135-09 NORTHERN BLVD * | 0.2 | 070210ZMQ |
| M to R | 0.2 | |
| 7/28/2011 | | |
| #122 SUNNYSIDE-WOODSIDE | 1.4 | 110207ZMQ |
| M to R | 1.4 | |
| 9/21/2011 | | |
| #123 BROOKLYN BAY CENTER * | 8.5 | 110047ZMK |
| M to R | 8.5 | |
| #124 WEST 28TH STREET * | 5.6 | 100063ZMM |
| M to MU | 5.6 | |
| 10/5/2011 | | |
| #125 CROTONA PARK E/W FARM * | 17.8 | 100310ZMX |
| M to R | 17.8 | |
| 11/29/2011 | | |
| #126 ADMIRALS ROW PLAZA * | 7.4 | 110382ZMK |
| M to M | 7.4 | |

* Rezoning by private applicant
† Rezoning by city agency excluding DCP

# SCLAR DECLARATION

# EXHIBIT 6



Rezonings, January 2002-September 2018

N

0    2.5    5    7.5    10 km

Data Source: NYC Department of City Planning, 2018

1595

# SCLAR DECLARATION

# EXHIBIT 7

**Table 1: Adopted Rezonings Involving a Conversion from Manufacturing Uses, January 2002-September 2018**

| Date Adopted | ULURP No. | LUCATS ID | Project Name |
|---|---|---|---|
| 1/30/02 | 010725zmk | 10725 | LIGHT BRIDGES REZONING |
| 1/30/02 | 020047zmk | 20047 | RED HOOK STORES |
| 3/25/02 | 000539zmk | 539 | HARBOR TECH-5 DELEVAN |
| 7/24/02 | 020463zmm | 20463 | CLINTON URA |
| 12/18/02 | 000087zmk | 87 | DOMSEY & GLANTZ SITES |
| 1/29/03 | 020216zmm | 20216 | GATEWAY II |
| 3/12/03 | 020188zmr | 20188 | NICHOLAS AVE REZONING |
| 4/30/03 | 030194azmk | 030194a | PARK SLOPE REZONING |
| 6/24/03 | 030234azmm | 030234a | EAST HARLEM REZONING |
| 8/19/03 | 030213zmx | 30213 | WASHINGTON PLAZA |
| 8/19/03 | 030333zmx | 30333 | MORRISANIA AREA REZONING |
| 8/19/03 | 030237zmm | 30237 | HUDSON SQUARE REZONING |
| 8/19/03 | 020263zmk | 20263 | BRIDGE PLAZA REZONING |
| 9/30/03 | 030467zmx | 30467 | CITY ISLAND REZONING |
| 11/19/03 | 030510zmq | 30510 | ARVERNE URA |
| 12/3/03 | 020636zmr | 20636 | SIBP REZONING/SOUTHEAST MID-ISLAND |
| 3/10/04 | 030214zmm | 30214 | 2-10 WEST END AVE |
| 5/5/04 | 030289zmk | 30289 | GOLD ST REZONING |
| 6/28/04 | 040171zmk | 40171 | DOWNTOWN BKLYN DEVELOPMENT |
| 7/21/04 | 040021zmm | 40021 | LAFAYETTE ST REZONING |
| 7/21/04 | 030294zmk | 30294 | FRANKLIN LOFTS |
| 8/12/04 | 040331zmm | 40331 | LADIES MILE REZONING |
| 8/12/04 | 030449zmr | 30449 | TIDES AT CHARLESTON |
| 8/12/04 | 040273zmq | 40273 | HUNTERS POINT SUBDISTRICT REZONING |
| 9/28/04 | 010384zmk | 10384 | 226 FRANKLIN & 98 FREEMAN STS |

| 11/10/04 | 040249zmm | 40249 | VERIZON W43RD ST REZONING |
|---|---|---|---|
| 12/15/04 | 040215zmk | 40215 | WATCHTOWER PROJECT |
| 1/19/05 | 040499azmm | 040499a | HUDSON YARDS |
| 3/9/05 | 050120zmx | 50120 | PORT MORRIS/BRUCKNER BLVD REZONING |
| 3/9/05 | 050153zmq | 50153 | KEW GARDENS-RICHMOND HILL |
| 3/23/05 | 050134azmk | 050134a | BAY RIDGE REZONING |
| 5/11/05 | 050111azmk | 050111a | GREENPOINT-WILLIAMSBURG |
| 6/8/05 | 040389zmk | 40389 | LOGAN STREET REZONING |
| 6/23/05 | 050162azmm | 050162a | WEST CHELSEA/HIGH LINE |
| 7/27/05 | 050277zmq | 50277 | E. FLUSHING REZONING |
| 9/28/05 | 050482zmq | 50482 | COLLEGE POINT REZONING |
| 10/11/05 | 060006zmm | 60006 | FAR WEST VILLAGE |
| 10/11/05 | 030370zmx | 30370 | 764 E176TH STREET |
| 2/1/06 | 050529zmx | 50529 | BX TERMINAL MARKET GATEWAY CENTER |
| 3/22/06 | 060180zmx | 60180 | WESTCHESTER SQUARE-ZEREGA REZONING |
| 4/26/06 | 060210zmm | 60210 | MADISON PARK WEST |
| 6/13/06 | 020518zmk | 20518 | KEDEM WINERY |
| 6/29/06 | 060294zmq | 60294 | MASPETH-WOODSIDE |
| 7/19/06 | 060214zmx | 60214 | VAN CORTLANDT CENTER |
| 7/19/06 | 060335zmx | 60335 | PELHAM PKWY/INDIAN VILLAGE REZONING |
| 8/16/06 | 060323zmq | 60323 | SILVERCUP WEST |
| 9/13/06 | 040543zmm | 40543 | TRIBECA NORTH REZONING |
| 10/25/06 | 060471zmr | 60471 | NEW STAPLETON WATERFRONT DEV |
| 2/28/07 | 060104zmm | 60104 | W60TH ST PROJECT |
| 3/28/07 | 060018zmk | 60018 | CARROLL ST |
| 7/25/07 | 070387zmk | 70387 | DYKER HEIGHTS/FT HAMILTON REZONING |
| 7/25/07 | 070409zmx | 70409 | WAKEFIELD/EASTCHESTER REZONING |
| 7/25/07 | 070430zmk | 70430 | FORT GREENE/CLINTON HILL |
| 9/10/07 | 070314azmq | 070314a | THE JAMAICA PLAN |
| 10/17/07 | 060353zmk | 60353 | BAY RIDGE MIXED USE DEV |
| 10/17/07 | 040161zmk | 40161 | KINGS MATERIAL |

2

1598

| 10/29/07 | 070447zmk | 70447 | BEDFORD-STUYVESANT SO |
|---|---|---|---|
| 10/29/07 | 060477zmk | 60477 | 45 SUMMIT STREET |
| 12/19/07 | 070495zmm | 70495 | SPEC MANHATTANVILLE DIST |
| 1/9/08 | 050491zmq | 50491 | ASTORIA STUDIO APTS |
| 1/30/08 | 060225zmm | 60225 | TUCK-IT-AWAY |
| 2/27/08 | 050236zmk | 50236 | DAHILL RD |
| 3/12/08 | 060377zmk | 60377 | WALLABOUT STREET REZONING |
| 3/26/08 | 070522zmm | 70522 | EAST RIVER REALTY CO. |
| 3/26/08 | 070529zmm | 70529 | EAST RIVER REALTY CO. |
| 4/16/08 | 080116zmk | 80116 | COLUMBIA HICKS PROJ |
| 4/16/08 | 070289zmm | 70289 | REI/RED CROSS REZONING |
| 4/16/08 | 080233zmx | 80233 | ROSCOE C BROWNE JR APTS |
| 4/30/08 | 080128zmx | 80128 | JAMES J. LYONS URP |
| 4/30/08 | 080099azmm | 080099a | 125TH ST CORRIDOR |
| 4/30/08 | 080141zmk | 80141 | WATKINS ST COOPS |
| 6/29/08 | 060032zmm | 60032 | 84 WHITE ST |
| 7/1/08 | 070174zmq | 70174 | COLLEGE POINT-14TH AVE |
| 7/23/08 | 080248zmx | 80248 | HUNTS POINT SPECIAL DIST |
| 7/23/08 | 050018zmx | 50018 | ST ANN'S AVE DEV |
| 7/23/08 | 070575zmm | 70575 | HUDSON SQ NO |
| 10/7/08 | 080429zmq | 80429 | DUTCH KILLS |
| 10/7/08 | 080333zmm | 80333 | E125TH ST DEV |
| 11/13/08 | 080362zmq | 80362 | HUNTERS POINT SO |
| 11/13/08 | 080381zmq | 80381 | WILLETS PT DEV PLAN |
| 12/9/08 | 080203zmq | 80203 | WATERPOINTE |
| 12/18/08 | 080517zmx | 80517 | VIA VERDE/THE GREEN WAY |
| 3/11/09 | 090047zmk | 90047 | 363-365 BOND STREET |
| 4/22/09 | 070396zmk | 70396 | 354 CLARKSON AVE |
| 5/20/09 | 080008zmm | 80008 | THE CLINTON PARK |
| 6/10/09 | 090181zmk | 90181 | DOCK STREET DUMBO |
| 6/30/09 | 090303zmx | 90303 | LOWER CONCOURSE |
| 7/29/09 | 090310zmk | 90310 | DUMBO REZONING |
| 7/29/09 | 090382zmq | 90382 | MIDDLE VILLAGE/GLENDALE/MASPETH |
| 9/30/09 | 090441zmk | 90441 | 470 VANDERBILT AVE |
| 9/30/09 | 090444zmk | 90444 | NAVY GREEN |
| 9/30/09 | 090444zmk | 90444 | NAVY GREEN |

3

1599

| 10/14/09 | 060288zmx | 60288 | ON THE SOUND ON CITY ISLAND |
|---|---|---|---|
| 12/9/09 | 080039zmm | 80039 | W129TH ST |
| 12/21/09 | 090433zmm | 90433 | WESTERN RAIL YARDS |
| 12/21/09 | 090413zmk | 90413 | BROADWAY TRIANGLE URA |
| 3/3/10 | 100051zmm | 100051 | W44TH ST & 11TH AVE |
| 4/14/10 | 080339zmk | 80339 | ROSE PLAZA ON THE RIVER |
| 7/29/10 | 050522zmq | 50522 | 94TH ST-CORONA AVE |
| 7/29/10 | 100185zmk | 100185 | THE NEW DOMINO |
| 7/29/10 | 030223zmq | 30223 | 35TH AVE REZONING |
| 9/16/10 | 100145zmq | 100145 | HOUR CHILDREN |
| 10/13/10 | 100369zmm | 100369 | NORTH TRIBECA REZONING |
| 10/13/10 | 100407zmx | 100407 | THIRD AVE-TREMONT AVE CORRIDORS |
| 10/13/10 | 080129zmx | 80129 | 3500 PARK AVENUE |
| 10/27/10 | 100345zmk | 100345 | CULVER EL |
| 3/23/11 | 070245zmk | 70245 | WYTHE AVE REZONING |
| 4/6/11 | 110125zmm | 110125 | CLINTON COMMONS |
| 4/29/11 | 110118zmk | 110118 | 20-30 CARROLL STREET REZONING |
| 4/29/11 | 090225zmk | 90225 | CARROLL STREET REZONING |
| 5/11/11 | 110145zmq | 110145 | SOUTH JAMAICA |
| 5/11/11 | 100118zmr | 100118 | UNION AVENUE REZONING |
| 6/14/11 | 110177zmm | 110177 | WEST CLINTON REZONING |
| 6/29/11 | 070210zmq | 70210 | 135-01, 135-09 NORTHERN BLVD |
| 7/28/11 | 110207zmq | 110207 | SUNNYSIDE-WOODSIDE |
| 9/21/11 | 100063zmm | 100063 | WEST 28TH STREET |
| 10/5/11 | 100310zmx | 100310 | CROTONA PARK E/W FARM |
| 7/25/12 | 120195zmq | 120195 | WOODHAVEN-RICHMOND HILL |
| 9/12/12 | 110218zmr | 110218 | VETERANS ROAD WEST |
| 9/12/12 | 100041zmk | 100041 | 59 WALTON STREET REZONING |
| 9/12/12 | 110390zmk | 110390 | WALLABOUT STREET |
| 12/10/12 | 100218zmk | 100218 | MCGUINNESS BOULEVARD REZONING |
| 2/6/13 | 120396zmm | 120396 | DURST W 57TH STREET |
| 2/27/13 | 090154zmk | 90154 | MAPLE LANE VIEWS |
| 3/13/13 | 070352zmq | 70352 | AVERY & FOWLER AVES REZONING |
| 5/22/13 | 130064zmx | 130064 | 580 GERARD AVENUE REZONING |

1600

| 9/12/13 | 130120zmy | 130120 | RIVER PLAZA REZONING |
|---------|-----------|--------|----------------------|
| 10/9/13 | 090484zmq | 90484 | HALLETS POINT REZONING |
| 10/9/13 | 130214zmm | 130214 | MSK CUNY |
| 10/30/13 | 130279zmr | 130279 | CHARLESTON MIXED USE DEVELOPMENT |
| 10/30/13 | 130374zmk | 130374 | LIVONIA COMMONS |
| 12/10/13 | 080322zmk | 80322 | RHEINGOLD REZONING |
| 12/10/13 | 140079zmq | 140079 | OZONE PARK REZONING |
| 5/14/14 | 130336zmm | 130336 | TF CORNERSTONE-606 WEST 57TH STREET |
| 6/26/14 | 140181zmm | 140181 | SITE 7 |
| 7/24/14 | 140275zmq | 140275 | 11-55 49TH AVENUE REZONING |
| 8/21/14 | 140111zmq | 140111 | 18-70 WOODWARD AVENUE REZONING |
| 11/25/14 | 140322zmq | 140322 | ASTORIA COVE |
| 12/17/14 | 110122zmr | 110122 | SOLLAZZO PLAZA REZONING |
| 1/19/16 | 160002zmk | 160002 | VAN SINDEREN PLAZA |
| 4/20/16 | 160035zmk | 160035 | EAST NEW YORK COMMUNITY PLAN |
| 9/14/16 | 160267zmx | 160267 | LA CENTRAL |
| 12/15/16 | 160309zmm | 160309 | 550 WASHINGTON ST- SPECIAL HUDSON RIVER PARK DISTRICT |
| 5/10/17 | 160221zmk | 160221 | ROSE CASTLE REZONING |
| 5/24/17 | 170140zmx | 170140 | 600 E 156TH STREET |
| 7/20/17 | 150402zmr | 150402 | 125 EDGEWATER STREET |
| 7/20/17 | 170087zmx | 170087 | WHITLOCK AND 165TH STREET - REZONING |
| 9/7/17 | 170189zmk | 170189 | EBENEZER PLAZA REZONING |
| 9/7/17 | 170243azmq | 170243a | DOWNTOWN FAR ROCKAWAY REZONING |
| 9/27/17 | 170275zmm | 170275 | 126TH STREET BUS DEPOT PROJECT |
| 10/17/17 | 170311zmx | 170311 | LOWER CONCOURSE NORTH REZONING |
| 10/17/17 | 170180azmq | 170180a | 135-01 35TH AVE REZONING |
| 10/31/17 | 150278zmk | 150278 | PFIZER SITES REZONING |
| 11/30/17 | 170358zmm | 170358 | EAST HARLEM NEIGHBORHOOD REZONING |

5

| | | | |
|---|---|---|---|
| 11/30/17 | 170025zmk | 170025 | 723-733 MYRTLE AVENUE REZONING |
| 11/30/17 | 170358zmm | 170358 | EAST HARLEM NEIGHBORHOOD REZONING |
| 12/19/17 | 170445zmx | 170445 | 1776 EASTCHESTER ROAD - MONTEFIORE STAFF HOUSING |
| 1/31/18 | 170356zmk | 170356 | 587 BERGEN STREET REZONING |
| 3/22/18 | 180051azmx | 180051a | JEROME AVENUE REZONING |
| 6/7/18 | 180088zmx | 180088 | WILLOW AVENUE REZONING |
| 6/28/18 | 180127zmm | 180127 | 601 WEST 29TH STREET (BLOCK 675 - DOUGLASTON) |
| 6/28/18 | 180150zmm | 180150 | 606 WEST 30TH STREET (BLOCK 675 - LALEZARIAN) |
| 8/8/18 | 180204azmm | 180204a | INWOOD REZONING |
| 9/12/18 | 170164zmk | 170164 | 205 PARK AVENUE REZONING |
| 9/12/18 | 180148zmk | 180148 | 1601 DE KALB AVENUE REZONING |
| 9/12/18 | 170047zmk | 170047 | 55-63 SUMMIT STREET REZONING |

1602

# SCLAR DECLARATION

# EXHIBIT 8

**Table 2: Certified Rezonings Involving a Conversion from Manufacturing Uses as of September 2018**

| Status | ULURP No. | LUCATS ID | Project Name |
|---|---|---|---|
| Certified | 160251zmx | 160251 | 147 STREET REZONING |
| Certified | 180083zmx | 180083 | 241ST STREET REZONING |
| Certified | 180150zmm | 180150 | 606 WEST 30TH STREET (BLOCK 675 - LALEZARIAN) |
| Certified | 180265zmq | 180265 | 69-02 QUEENS BOULEVARD REZONING & LSGD |
| Certified | 180186zmk | 180186 | 3901 9TH AVENUE REZONING |
| Certified | 180229zmk | 180229 | 895 BEDFORD AVENUE REZONING |

# SCLAR DECLARATION

# EXHIBIT 9

## The Neighborhoods

Click on a neighborhood to get news, documents, opinions and videos about that community.



### Rezoning Status

- 🟡 **Bay Street**
- 🔵 **Bushwick**
- 🔵 **Chinatown**
- 🟢 **Downtown Far Rockaway**
- 🟢 **East Harlem**
- 🟢 **East New York**
- 🔴 **Flushing West**
- 🔵 **Gowanus**
- 🟢 **Inwood**
- 🟢 **Jerome Avenue**
- 🔵 **Long Island City**
- 🔵 **Southern Boulevard**

# SCLAR DECLARATION

# EXHIBIT 10



# City Planning History



View of Lower Manhattan Skyline from Brooklyn, ca. 1961

Since adoption of the country's first Zoning Resolution in 1916, New York City has played a seminal role in the history and development of planning and zoning. This rich history is captured through decades of planning reports, land use maps and historic photographs documenting a changing urban landscape. Many of these documents serve as a critical resource for the Department, for the City and for the planning profession.

## History of the City Planning Commission

New York City has been a pioneer in the development of urban planning in the United States; the nation's first comprehensive zoning resolution was enacted by the city in 1916. But it was not until 20 years later that New Yorkers voted to approve a new City Charter that established the City Planning Commission and gave it the responsibility to prepare plans and to draft and approve amendments to the Zoning Resolution.

Shortly after the turn of the century, the drive to establish a permanent planning agency in New York City was led by two advocates of municipal reform, George McAneny and Edward M. Bassett. McAneny had been elected Manhattan Borough President in 1909; he was president of the City Club and chairman of its Committee on City Planning. Bassett, a lawyer and a former congressman, was appointed to the Public Service Commission in 1907 and played an important part in planning for the city's expanding subway system.

In 1912, at the urging of the Fifth Avenue Association, whose members were concerned about congestion and declining land values, McAneny submitted a report to the Board of Estimate, formally known as the Board of Estimate and Apportionment, calling for more extensive building controls. The board, a quasi-legislative body consisting of the Mayor, Borough Presidents, Comptroller and, what is known today as the City Council President, did not act on it.

One year later, however, the Board of Estimate appointed a Committee on City Planning to make recommendations on possible limitations on the heights of buildings and selected McAneny to be its chairman.

The Committee on City Planning issued its report in 1914 and recommended the creation of a permanent city planning agency. The appendix of the report contained the draft of a bill (passed by the state legislature later that year) which

gave the Board of Estimate the power to regulate heights and uses of buildings.

Another committee, under Bassett's leadership, was appointed to gather data necessary to evolve a coherent plan of land use districting. This committee's report formed the basis for the landmark 1916 Zoning Resolution, which reflected borough and local interests (Bassett and McAneny had carefully crafted the resolution to win their support). The resolution regulated the heights of buildings and divided the city into districts by land use. However, no agency was created to administer the new zoning law. The Chief Engineer of the Board of Estimate advised the Board on zoning amendments.

In 1926, Mayor James J. Walker appointed a Committee on Plan and Survey to study planning in New York and to draft a bill that would create a planning agency. The committee was composed of distinguished New Yorkers including McAneny, Bassett, Herbert Lehman, and Nicholas Murray Butler. In 1928 the committee proposed the creation of a City Planning Commission with jurisdiction over the city's physical development. Bassett drafted an amendment to the City Charter intended to create a City Planning Commission. However, the bill died in the state legislature.

Business associations, the newspapers, the Real Estate Board, the East Side Chamber of Commerce, and influential New Yorkers continued to press for a planning body. Mayor Walker sponsored a bill to create a planning department-with power over zoning-headed by a single commissioner. Local Law No. 16 was signed by Mayor Walker on July 17, 1930, after it had passed the Board of Estimate by a slim majority.

However, the new agency was ineffective as it had no real authority. When the depression dictated budget cuts, the department was abolished on February 1, 1933 for reasons of economy.

When Fiorello H. LaGuardia became mayor in 1934, he promised to establish a new planning agency. A commission to revise the City Charter was formed in 1935, with proposed revisions subject to vote by the electorate, and the mayor had his opportunity.

Public hearings on the proposed new charter began in May, 1936. LaGuardia and Bassett spoke in favor of a planning body. Ironically, George McAneny said that a planning agency should be advisory, with no zoning authority. The planning commission was opposed by some elected officials and others, including the Bronx Board of Trade, the Bronx and Queens Chambers of Commerce, and various Staten Island groups. The planning body was endorsed by the Citizens Union, the Regional Plan Association, the City Club, the Merchants Association, and the League of Women Voters.

The struggle for and against the charter went on into the fall. The planning commission proposal remained intact but faded into the background as other segments of the new charter took center stage in the discussions. In November, New Yorkers voted to adopt the new City Charter by nearly 65% approval.

The establishment of the City Planning Commission provided the structure for comprehensive planning in New York City, replacing a haphazard planning and zoning system that functioned principally through the interaction of interest groups and political forces. For the first time New York had a professional agency with a single purpose: to serve the people of New York by planning for the entire city.

Mayor LaGuardia selected Adolph A. Berle to be the first chairman of the City Planning Commission. He was replaced several months later by Rexford Tugwell, formerly an adviser to President Franklin D. Roosevelt. Among the first group of commissioners was Lawrence Orton of the Regional Plan Association, who served for 31 years, the longest tenure of any commissioner.

As established by the 1936 Charter, the City Planning Commission had seven members, six appointed by the mayor with the chief engineer of the Board of Estimate serving ex-officio as the seventh member. To ensure the political autonomy of the commission, the six appointees—one designated by the mayor as chairman—were to serve eight-year

overlapping terms. In that way, a majority of members could not be appointed during a mayor's single four-year term of office. The chief engineer of the Board of Estimate, a career civil servant, was not subject to appointment for a term.

View the ᗺ Brooklyn Daily Eagle announcing the members of the newly formed City Planning Commission.

The 1936 Charter also provided for the establishment of the Department of City Planning, headed by the chairman of the City Planning Commission and staffed with engineers, architects, experts, and other officers and employees as needed. Both the Commission and the Department began functioning in 1938.

The commission did not reach full strength until 1945 when Mayor LaGuardia appointed the sixth member. The stipulation that the chief engineer serve ex-officio was dropped when the Charter was revised in 1963 to require that all seven members of the commission be appointed by the mayor. The Charter amendment of 1975 added two requirements: that the City Council would approve by advice and consent the six commission members-other than the chairman-appointed for eight-year terms, and that the commission would consist of at least one resident from each borough of the city.

View the ᗺ City Planning Commissioners' terms of office from 1938-1989.

In the wake of the elimination of the Board of Estimate in 1989, a 1989 Charter amendment made effective in 1990 further altered the composition of the Commission by increasing the number of commissioners to thirteen: seven members appointed by the Mayor, including the Chair; one appointed by each Borough President; and one appointed by the Public Advocate. The Chair serves at the pleasure of the Mayor, while the other Commissioners are appointed to staggered five year terms. However, all members shall be chosen for their independence, integrity, and civic commitment, and the appointment of all members, other than the chair, is subject to the advice and consent of the City Council. This is the structure of today's City Planning Commission, which reviews nearly 500 public and private applications a year, and has, since its establishment 75 years ago, reviewed more than 25,000 land use applications.

## NYC Zoning History

### 1916 Zoning Resolution

As early as the 1870's and 1880's, New Yorkers began to protest the loss of light and air as taller residential buildings began to appear in Manhattan. In response, the state legislature enacted a series of height restrictions on residential buildings, culminating in the Tenement House Act of 1901.

By then, New York City had become the financial center of the country and expanding businesses needed office space. With the introduction of steel frame construction techniques and improved elevators, technical restraints that had limited building height vanished. The Manhattan skyline was beginning to assume its distinctive form.

In 1915, when the 42-story Equitable Building was erected in Lower Manhattan, the need for controls on the height and form of all buildings became clear. Rising without setbacks to its full height of 538 feet, the Equitable Building cast a seven-acre shadow over neighboring buildings, affecting their value and setting the stage for the nation's first comprehensive zoning resolution.

Other forces were also at work during the same period. Housing shortages, caused by an influx of new immigrants, created a market for tenements built to maximum bulk and minimum standards. Warehouses and factories began to encroach upon the fashionable stores along Ladies' Mile, edging uncomfortably close to Fifth Avenue. Intrusions like these and the impacts of rapid growth added urgency to the calls of reformers for zoning restrictions separating residential, commercial and manufacturing uses and for new and more effective height and setback controls for all uses.

The concept of enacting a set of laws to govern land use and bulk was revolutionary, but the time had come for the city to regulate its surging physical growth. The groundbreaking Zoning Resolution of 1916, though a relatively simple document, established height and setback controls and designated residential districts that excluded what were seen as incompatible uses. It fostered the iconic tall, slender towers that came to epitomize the city's business districts and established the familiar scale of three- to six-story residential buildings found in much of the city. The new ordinance became a model for urban communities throughout the United States as other growing cities found that New York's problems were not unique.

But, while other cities were adopting the New York model, the model itself refused to stand still. The Zoning Resolution was frequently amended to be responsive to major shifts in population and land use caused by a variety of factors: continuing waves of immigration that helped to swell the city's population from five million in 1916 to over eight million in 2010; new mass transit routes and the growth corridors they created; the emergence of technology and consequent economic and lifestyle changes; the introduction of government housing and development programs; and, perhaps more than anything else, the increase in automobile usage, which revolutionized land use patterns and created traffic and parking problems never imagined in 1916.

🗎 1916 Zoning Resolution including all amendments adopted prior to November 1, 1960 represents the final amended version of the Zoning Resolution prior to the 1961 comprehensive amendment.

🗎 1916 Building Zone Plan

🗎 1916 Zoning Resolution

## 1961 Zoning Resolution

By mid-century, many of the underlying planning principles of the 1916 document no longer stood the test of time. If, for example, the city had been built out at the density envisioned in 1916, it could have contained over 55 million people, far beyond its realistic capacity. New theories were capturing the imaginations of planners. Le Corbusier's "tower-in-the-park" model was influencing urban designers of the time and the concept of incentive zoning - trading additional floor area for public amenities - began to take hold. The last, still vacant areas on the city's edges needed to be developed at densities that recognized the new, automobile-oriented lifestyle. Also, demands to make zoning approvals simpler, swifter and more comprehensible were a constant.

Eventually, it was evident that the original 1916 framework needed to be completely reconsidered. After lengthy study and public debate, the current Zoning Resolution was enacted and took effect in 1961.

The 🗎 1961 Zoning Resolution (30.6 MB) was a product of its time. It coordinated use and bulk regulations, incorporated parking requirements and emphasized the creation of *open space*. It introduced incentive zoning by adding a bonus of extra floor space to encourage developers of office buildings and apartment towers to incorporate plazas into their projects. In the city's business districts, it accommodated a new type of high-rise office building with large, open floors of a consistent size. Elsewhere in the city, the 1961 Zoning Resolution dramatically reduced residential densities, largely at the edges of the city.

Although based upon the leading planning theories of the day, aspects of those zoning policies have revealed certain shortcomings over the years. The emphasis on open space sometimes resulted in buildings that overwhelm their surroundings, and the open spaces created by incentive zoning provisions have not always been useful or attractive. Urban design theories have changed as well. Today, tower-in-the-park developments, set back far from the city street, are often viewed as isolating and contrary to the goal of creating a vibrant urban streetscape.

Time passes, land uses change, and zoning policy accommodates, anticipates and guides those changes. In a certain sense, zoning is never final; it is renewed constantly in response to new ideas—and to new challenges.

# SCLAR DECLARATION

# EXHIBIT 11

▶ Accessibility  ▶ Text-only  ▶ Customer Self-Service  ▶ Employment  ▶ FAQs/Contact Us

| Home | Schedules | Fares & Tolls | Maps | Planned Service Changes | MTA Info | Doing Business With Us | Transparency |
|---|---|---|---|---|---|---|---|

## System Map



### MTA Staten Island Railway (SIR)

Operating 24 hours a day, the Staten Island Railway provides fast rush hour service with morning express trains that run non-stop from New Dorp to Saint George Ferry Terminal and Saint George Ferry Terminal to Great Kills, and evening express trains that run non-stop from Saint George to Great Kills.

During Rush Hour, train frequency is every 15 minutes for both express and local service. During evening and overnight hours, train frequency is every 30 minutes, local service only.

All train times at the Saint George Staten Island Ferry Terminal are coordinated to meet ferry arrivals and departures.

#### Travel Time in Minutes to St. George Ferry Terminal

| | | | |
|---|---|---|---|
| Tompkinsville | 3 | Grant City | 17 |
| Stapleton | 5 | New Dorp | 19 |
| Clifton | 7 | Oakwood Hts | 21 |
| Grasmere | 10 | Bay Terrace | 23 |
| Old Town | 12 | Great Kills | 25 |
| Dongan Hills | 14 | Eltingville | 27 |
| Jefferson Av | 16 | Annadale | 29 |

| | |
|---|---|
| Huguenot | 31 |
| Prince's Bay | 33 |
| Pleasant Plains | 35 |
| Richmond Valley | 37 |
| Arthur Kill | 39 |
| Tottenville | 42 |

Ⓟ Park & Ride
♿ Wheelchair Accessible

SIR accepts MetroCard.

At St. George and Tompkinsville stations your MetroCard or valid bus transfer is required for both entering and exiting the station.

SIR timetable is available at the SIR St. George station and online at www.mta.info.

**For information 24 hours daily, call: 511 or visit mta.info**

▶ Schedule (in PDF format)
▶ Staten Island Railway menu
▶ MTA maps page

▶ Google Translate

# SCLAR DECLARATION

# EXHIBIT 12



Areas where Adult Entertainment Uses would
Continue to be Allowed under the Proposal*
and Encumbered Property within those Areas

Staten Island

Staten Island Subway Route

Data Source: MTA, 2018

# DECLARATION OF

# DANIEL J. ZAZZALI

# IN SUPPORT OF

# PLAINTIFFS' MOTION FOR

# PRELIMINARY INJUNCTION

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
--------------------------------------------------X
336 LLC, d/b/a "The Erotica", et al.,
                              Plaintiffs,

      v.

THE CITY OF NEW YORK, et al.,
                              Defendants.
--------------------------------------------------X

DECLARATION OF
DANIEL J. ZAZZALI

Docket No.
1:18-cv-3732-WHP

I, DANIEL J. ZAZZALI, hereby declare pursuant to 28 U.S.C. § 1746:

1. I submit this declaration in support of the Plaintiffs' motion for a preliminary injunction against enforcement of Text Amendment N 010508 ZRY of the Zoning Resolution of the City of New York (the "2001 Resolution"), which amends the zoning law relating to adult uses. This declaration is based upon personal knowledge.

2. I am President of Showtech Inc. ("Showtech"), located at 40 Entin Road, Clifton, New Jersey 07014. Showtech was established in 1989. Showtech manufactures, installs, and maintains private viewing booths in New York City. Showtech is also involved in the operation of two bookstores -- Playpen, located at 687 Eighth Avenue in Manhattan, and Explore DVD, located at 97-06 Queens Boulevard, in Rego Park, Queens -- which offer some adult information, as well as non-adult information, to the public.

3. In or about 1962, my brother took over a company called Rangertone Research Inc. ("Rangertone"), which had manufactured sound and projection equipment for the motion picture industry since the 1930s. Rangertone was created by Richard Ranger, who was an innovator in the film industry. In 1956, Richard Ranger received an Oscar for Best Technical Achievement from the Academy of Motion Picture Arts and Sciences for his work synchronizing sound and film.

4. I started working for Rangertone in 1974. At that time, we began designing and constructing private viewing booths (also known as "peep shows"), which were initially modeled after coin-operated arcade photobooths. The booths were intended to enable consenting adults to view erotic films in a private setting. The films and expression shown in the booths are protected by the First Amendment to the United States Constitution.

5. In or about 1977, we were involved in the construction of Show World Center, located at 303 West 42nd Street (across from the Port Authority on Eighth Avenue). We installed more than 100 booths at Show World. We also created and installed the very first "peep-alive" booths, which enabled a customer to deposit a quarter and view a live woman dancing on a stage. Show

1618

World was, at one time, the largest adult establishment in New York City. It offered exclusively adult entertainment to the public.

6. We -- first as Rangertone and then as Showtech -- continued building, installing, and maintaining booths.

7. Booths are large, heavy cabinetry with complicated electrical systems and wiring. Most booths are approximately seven and a half feet tall, four feet wide, and six feet deep. They are designed for use by one person and contain a single seat.

8. Each booth has a screen (usually 20 to 40 inches) on which patrons may view a selection of films. Each booth contains a keyboard which patrons can use to select the films they wish to view. There is also a second screen in Showtech booths that shows four different films. The films are changed periodically.

9. Bookstores usually have a control room or area with a computer for each booth. Booths cost between $5,000 to $10,000 each, depending on the number of channels or selections. Although booths previously accepted coins, our booths now only accept dollar bills.

1619

10. Viewing booths provide patrons with an opportunity to select between various film offerings that may not be available anywhere else. The booths also enable customers to preview films that are available for sale at the bookstore.

11. Booths allow consenting adults to view a wide range of sexually explicit material within the privacy and sanctity of a safe space. No one knows what selection a person is viewing. Therefore, booths allow patrons to watch films that some might believe are deviant, aberrant, queer, perverse or unorthodox, within a judgment-free zone.

12. Unlike the Internet, which can be traced to a specific computer or user, booths provide total anonymity. In this digital age, where Internet searches are all cached and online purchase can always be traced, the booths provide an old school means by which a patron can watch erotica without anyone knowing his or her personal predilections, sexual fantasies, and fetishes.

1620

13. The adult-oriented information offered in Showtech booths, and upon information and belief in other booths in New York City, is shown only to willing adults on private property as a form of protected expression. There is no contention that any information provided in the booths is legally obscene. This information enjoys a substantial amount of public interest.

14. In the 1990s, there were more than 60 bookstores in New York City, which offered expression to patrons in private viewing booths. Many of the bookstores -- especially the large ones in the Times Square area -- had at least 30 to 40 booths. I estimate, conservatively, there were more than 1,500 booths in the City.

### The 1995 Adult Zoning Resolution and its Aftermath

15. On October 25, 1995, the City amended the Zoning Resolution to restrict the operation of adult establishments. More than 90 owners and operators of adult businesses challenged the constitutionality of the amendment. See Amsterdam Video, Inc. v. City of New York, Index No. 103568/96 (Sup. Ct. N.Y. Co.).

5

16. In 1998, we were informed that the courts had upheld the adult zoning law and the City planned to enforce it. Stringfellow's of New York, Ltd. v. City of New York, 91 N.Y.2d 382, 671 N.Y.S.2d 406 (1998).

17. Our lawyers then went into federal court because the key term defining an adult establishment -- "substantial portion" -- was vague. See Amsterdam Video, Inc. v. City of New York, Docket No. 96 Civ. 2204 (MGC) (S.D.N.Y.). On July 24, 1998, in response to and out of a concern for our vagueness challenge, the City asserted before Judge Miriam Cedarbaum that any commercial establishment that has less than 40 percent of adult stock-in-trade, or allocated less than 40 percent of its accessible floor area to an adult use, would comply with the 1995 Resolution (the "60/40 Provision").

18. The 60/40 Provision applied to all types of businesses -- including bookstores with booths. Therefore, if a bookstore reduced its adult component to less than 40 percent of its floor space and stock, it could still exhibit a selection of adult films in viewing booths without having to close, relocate or censor that aspect of its expression.

1622

19. In the summer of 1998, bookstores undertook enormous efforts to change the entire configuration, layout, and nature of the establishments. I was actively involved in transforming several bookstores, which formerly were exclusively adult businesses, into non-adult establishments.

20. We engaged the services of licensed and experienced architects to redesign the floor space. Substantial and costly modifications -- totaling hundreds of thousands of dollars -- were affected.

21. Formerly adult businesses removed hundreds of booths to come into compliance with the law. The stores also purchased customized display fixtures and merchandise racks for non-adult stock. Slat board, metal grid, shelving, and glass showcases were affixed to the walls throughout the retail premises. Additionally, window displays were redesigned.

22. Areas that previously contained adult-oriented material were, at substantial cost, completely restocked with non-adult merchandise. The businesses also ordered and installed new exterior and interior signage, to reflect the non-adult nature of the business.

23. Back in the 1990s, many of the establishments had d/b/a names that referenced the importance of the booths to their business. See, e.g., Hollywood Peepshows, 777-779 Eighth Avenue, New York County; Peep O Rama, 121 West 42nd Street, New York County; Peepland, 136 West 42nd Street, New York County; Peepworld, 155 West 33rd Street, New York County; and Peepland, 711 Seventh Avenue, New York County. All these businesses, which were "booth-centric", closed and no longer exist. To the best of my knowledge, there are no longer any peep-alive booths anywhere in New York City.

24. Over the last three decades, the number of bookstores and booths in New York City has drastically declined. I believe this is due to various factors including, but not limited to, (1) enforcement actions brought by the City under the 1995 Resolution; (2) eminent domain proceedings brought for redevelopment of Times Square and other areas; (3) demolition of other buildings for development; (4) rezoning; (5) loss of leases due to gentrification and an increase in real estate values in areas with 60/40 bookstores; and (6) attrition and loss of retail sales due to the Internet.

1624

25. In May of 2017, Richard Basciano, who founded Show World, passed away. Show World, which was once the largest adult business in New York City, is now closed.

26. The 60/40 bookstores of today are quite different from the exclusively adult bookstores that existed back in the 1990s. Bookstores today, for the most part, offer general interest (non-adult) DVDs, and a smaller number of adult DVDs, for sale. To attract female customers, many stores now offer a large selection of other retail merchandise including, but not limited to, boots, lingerie, and novelties. Since 1998, when the 60/40 Provision went into effect, I have noticed new customers, including many female patrons and couples, at 60/40 bookstores.

27. Most 60/40 bookstores also have viewing booths, which are, for the most part, located in the back or basement of the store. In most 60/40 bookstores the booths only occupy approximately 10 to 20 percent of the total floor space accessible to customers.

1625

28. According to the City, in 2000 there were 44 businesses with booths. <u>See</u> 2001 CPC Report at 9. Forty-two were 60/40 bookstores with booths, while two were traditional movie theaters (one in Queens and one in Brooklyn) with large screens and auditorium seating. <u>Id.</u>

29. To the best of my knowledge, today the number of bookstores with booths has declined further from 42 to approximately 25. Now, there are only approximately 280 private booths in all of New York City. This is a reduction of more than 80% of the booths since the City enacted the 1995 Resolution.

### The 2001 Adult Zoning Resolution

30. In 2001, the City amended the definition of "adult establishment" in the Zoning Resolution. The 60/40 Provision was eliminated for eating or drinking establishments, theaters or any use other than a "bookstore."

31. Under the 2001 Resolution, bookstores must still comply with the rigid 60/40 requirements regarding floor space and stock. In addition, there are a number of so-called "sham" factors the Buildings Department will also consider in deciding whether a bookstore is actually an <u>adult</u> bookstore or adult establishment.

1626

32. For instance, under the 2001 Resolution, if a bookstore devotes less than 40 percent of its stock and floor space to adult material, all of its non-adult stock is disregarded and deemed to be a sham if the bookstore has a greater variety of adult DVD titles than non-adult DVD titles. General interest DVDs also do not count as stock if the bookstore excludes minors from the whole store or any non-adult portion of the store. Similarly, all non-adult stock will be disregarded for purposes of a 60/40 analysis if the store has any booths where adult movies are available for viewing by customers.

33. The 1995 Resolution specifically allowed bookstores to have viewing booths. In contrast, under the 2001 Resolution, the City has banned adult booths from all of New York City, except in the extremely limited areas where 100 percent adult establishments can endeavor to locate.

### Bookstores and Free Expression Will Suffer Grave Irreparable Harm if the 2001 Resolution is Enforced

34. Our bookstore, located at 687 Eighth Avenue between West 43rd and West 44th Streets, is one of the very few businesses with viewing booths remaining in the Times Square area. Playpen (also known as Gotham Video Sales & Distribution Inc.) has operated at its current location for the last 15 years.

1627

35. In 2003, around the time we opened Playpen, Justice Louis B. York granted summary judgment and struck down the 2001 Resolution as unconstitutional. For the People Theatres of N.Y., Inc. v. City of New York, 1 Misc.3d 394, 768 N.Y.S.2d 783 (Sup. Ct. N.Y. Co. 2003)(finding the expansive definition of "adult bookstore" was "broader than needed to achieve the City's purpose of ameliorating negative secondary effects").[1]

36. Playpen was specifically designed as a 60/40 bookstore in accordance with the 60/40 Provision. It cost more than $300,000 for us to design, build, and open the bookstore. Most of our floor space is dedicated to retail stock -- both adult and non-adult -- and sales. There are also 27 private viewing booths in the bookstore. It is my understanding that adult establishments are not permitted to be located at the address where Playpen is located.

---

[1] As developed in the Declaration of our attorney, Erica Dubno, Justice York's decision was ultimately overturned on appeal.

1628

37. Our other store, Explore DVD, has operated at its current location since approximately 2006. Explore DVD was designed as a 60/40 bookstore with retail and accessory booths. Explore DVD has approximately 15 booths. It is my understanding that adult establishments are not permitted at the address where Explore DVD is located.

38. Although the booths occupy a relatively small percentage of the total floor space, and are an accessory to our retail use, they are an important part of the businesses. The booths give customers a wide selection of films they cannot see anywhere else. If the 2001 Resolution, which, in essence, has never been enforced against existing businesses, becomes enforceable, then we will not be able to show any adult films in booths. We will be forced to close our booths and prevented from dispensing constitutionally protected expression to the public.

39. In addition, we will sustain significant economic and other damages that would require the business to close. If forced to close, at least seven employees -- many who have worked for the bookstores for 10 to 15 years -- will lose their jobs. The consequences to our business -- and to our customers -- will be devastating and irreparable.

40. We have leases for the stores. If we break the leases because we must close the business before the leases expire, we will suffer substantial penalties. We may also be forced to break other contracts that we have for services.

41. We have many regular customers who come into our stores for the adult and non-adult material. If we are forced to close, we will lose our regular customers and the goodwill we have developed over 12 to 15 years.

42. Without a preliminary injunction, the City could bring enforcement proceedings under the Nuisance Abatement Law while this Court is considering the merits of this civil rights lawsuit. It would not help us to eventually win the case if our expression has been enjoined and we already lost our stores and livelihood.

43. Each of the 25 bookstore with booths in New York City employs people and provides expression to the public. If injunctive relief is not issued, more than 100 will lose their jobs.

1630

44. Even if the bookstores are not forced to close or relocate, which is disputed, irreparable harm exists if we and other bookstore owners are required to alter the nature of our expression to comply with the disputed resolution. Forcing bookstore owners to censor or silence the nature of our expression, will have dire implications for free expression in New York City.

45. In addition to Nuisance Abatement proceedings, if the 2001 Resolution is enforced, bookstore owners face criminal charges. Section 11-61 of the Zoning Resolution provides, in pertinent part, that the owner or operator of any place in violation of a provision of the Zoning Resolution "shall be guilty of a misdemeanor."

46. Section 55.10(2)(b) of New York's Penal Law states that any offense defined outside this chapter which is declared by law to be a misdemeanor "shall be deemed a class A misdemeanor." P.L. § 70.15(1) then authorizes a sentence of imprisonment of up to one year for a class A misdemeanor. Thus, criminal charges -- punishable by a year in jail -- may be filed against bookstore owners perceived to be in violation of the 2001 Resolution. The operator of a bookstore is subject to conviction and imprisonment if there are any adult booths.

1631

47. When the City enforced the 1995 Resolution, it sought orders to show cause to close bookstores under the Nuisance Abatement Law. The City also brought criminal prosecutions against store owners.

48. I am 66 years old and have a family. I would stop showing films in our booths, and, if necessary, close the bookstores, rather than risk being thrown in jail or facing criminal prosecution.

### A Balancing of the Equities Favors Granting Injunctive Relief

49. Our lawful businesses -- and other 60/40 bookstores -- pay taxes. We are good neighbors, employ members of the community, and serve an obvious public demand. The establishments offer both adult and non-adult constitutionally protected expression. Nothing is lost by allowing these businesses to continue to operate as they have for nearly two decades. However, everything would be lost by unsettling the status quo before this Court has had an opportunity to review the merits of the Plaintiffs' claims.

50. In 2017, the bookstores entered a stipulation with the City whereby we agreed to comply with all provisions of the 2001 Resolution against bookstores, except three (the "Stipulation").

1632

51. Under the current stipulated <u>status quo</u>, bookstores must comply with the established 60/40 Provision, requiring them to limit their adult component to less than 40 percent of the customer accessible floor space and stock. In addition, bookstores that fully comply with the 60/40 Provision can still be subjected to sanctions if any one of these factors exist:

    a. An interior configuration and lay-out which requires customers to pass through an area of the store with "adult printed or visual material" in order to access an area of the store with "other printed or visual material" (Z.R. § 12-10[2][d][aa]);

    b. a method of operation which requires customer transactions with respect to "other printed or visual material" to be made in an area of the store which includes "adult printed or visual material" (Z.R. § 12-10[2][d][cc]);

    c. a method of operation under which "other printed or visual material" is offered for sale only and "adult printed or visual material" is offered for sale or rental (Z.R. § 12-10[2][d] [dd]);

    d. a greater number of different titles of "adult printed or visual material" than the number of different titles of "other printed or visual material" (Z.R. § 12-10[2][d][ee]);

    e. a sign that advertises the availability of "adult printed or visual material" which is disproportionate in size relative to a sign that advertises the availability of "other printed or visual material", when compared with the proportions of adult and other printed or visual materials offered for sale or rent in the store, or the proportions of floor area or cellar space accessible to customers containing stock of adult and other printed or visual materials (Z.R. § 12-10[2][d][gg]); and/or

1633

    f.  a window display in which the number of products or area of display of "adult printed or visual material" is disproportionate in size relative to the number of products or area of display of "other printed or visual material", when compared with the proportions of adult and other printed or visual materials offered for sale or rent in the store, or the proportions of floor area or cellar space accessible to customers containing stock of adult and other printed or visual materials (Z.R. § 12-10[2][d][hh]).

52.  Under the Stipulation, the City agreed not to require compliance with the following provisions: (1) the prohibition against one or more individual enclosures where adult movies or live performances are available for viewing by customers (Z.R. § 12-10[2][d][bb]); (2) the prohibition against excluding or restricting minors from the store as a whole or from any section of the store with non-adult material (Z.R. § 12-10[2][d][ff]); and (3) authorizing the Building Commissioner to adopt rules relating to "configuration and layout or method of operation", which the Commissioner believes render the sale or rental of adult material a "substantial purpose" of the business conducted in such store (Z.R. § 12-10[2][d][ii]).

53. Enforcement of these three provisions is of particular concern to bookstore owners. The 2001 Resolution provides that all non-adult stock of a bookstore will be disregarding for purposes of a 60/40 analysis of floor space and stock if the management excludes minors from the whole store or from any section with non-adult material. (Z.R. § 12-10[2][d][ff]).

1634

54. We exclude minors from our stores for several reasons. First, teenagers can be very disruptive and unruly when they come into stores -- especially in groups. Second, many bookstores have had significant problems with unsupervised teenagers shoplifting.

55. Third, under New York's Penal Law it is a felony to "disseminate indecent material to minors." See P.L. § 235.20. As a consequence, out of an abundance of caution 60/40 bookstores traditionally exclude minors from the entire store to avoid any possible allegations under the Penal Law or risk of exposure to children.

56. Fourth, the 2001 Resolution does not require 60/40 bookstores to have a physical separation between adult and non-adult areas. Such a separation requirement was included in an earlier draft of the 2001 Resolution. However, the City Planning Commission specifically removed the provision requiring bookstores to have a "fixed, permanent and complete visual partition between a section of the store with 'adult printed or visual material' and a section of the store with 'other printed or visual material'" (2001 CPC Report at 45-46). If bookstore operators are required to allow children into the store, a child may be able to see adult material from a non-adult area. Excluding minors from the whole store avoids that risk.

1635

57. Finally, a store owner may sell items in the front of the store that may not be appropriate for children even though they are not adult printed or visual material, which is the target of the 2001 Resolution. For example, the Fifty Shades of Grey book and film trilogies -- which are bestsellers in bookstores across the world -- launched tremendous mainstream interest in items relating to adult role playing. There is now high demand for costumes and other fantasy accessories that are not pornographic (and not covered by the Zoning Resolution) but may be inappropriate for children to view.

58. The Stipulation also stays enforcement of that portion of the 2001 Resolution which authorizes the Building Commissioner to adopt rules relating to "configuration and layout or method of operation" of bookstores which the Commissioner believes render the sale or rental of adult material a "substantial purpose" of the business (Z.R. § 12-10[2][d][ii]).

59. This provision is terrifying because it empowers the Building Commissioner -- not the legislature or First Amendment experts -- to determine if a bookstore owner should be subjected to criminal charges and potential closure.

60. Under the 2001 Resolution, our bookstores must comply with the 60/40 Provision regarding the relative amount of floor space and stock. We must also abide by the other factors added to the definition of an adult bookstore in Z.R. § 12-10, regarding the layout and operation of the business.

61. However, even if we were to comply with every provision under the 2001 Resolution, all of our non-adult stock (including thousands of general interest DVDs) may be considered a "sham" and, therefore, not included in a 60/40 analysis, if the Building Commissioner decides that some other aspect of our bookstore's method of operation renders the sale of adult material "a substantial purpose" of the business.

62. I am an experienced businessperson. However, I have no idea how we can comply with that provision of the 2001 Resolution, and we have absolutely no assurance that we will be able to continue to operate our bookstores because we are at the mercy of the Building Commissioner.

63. There is no prejudice to the City by allowing existing bookstores to continue to operate pursuant to the Stipulation.

64. Under the stipulated status quo, the City is also free to enforce all provisions of the 2001 Resolution against any new bookstores that commenced operating after June 6, 2017, when the New York Court of Appeals issued its Remittitur in For the People Theatres v. City of New York, No. 121080/02, APL 2015-00273.

### We are Likely to Prevail on the Merits of this Civil Rights Lawsuit

65. I am advised by my counsel that we are likely to succeed on the merits of our action.

66. The 2001 Resolution limits adult bookstores – and all other competing adult businesses -- to a few remote areas of the City. However, no study has been done during the last 20 years as to whether such areas could support or are suitable for bookstores.

67. It is also my understanding that the City has not prepared new maps showing the current permissible areas for adult businesses. We have no way of knowing where – if anywhere – our bookstores and other businesses with adult material can locate.

68. We, through counsel, reached out to several realtors to identify potential locations where adult bookstores with booths could endeavor to operate. However, no realtor was able to identify such locations for us.

69. Even if we managed to locate property within a properly zoned area -- which we have not been able to do -- it is extremely hard for us, or any other potential business owner, to definitively know whether there are sensitive receptors – such as churches or schools -- within the area.

70. There are houses of worship hidden throughout the City, which may not be ascertainable from a building's façade or signage. For instance, many businesses have daycare centers or schools on the premises that could, conceivably, bar an adult use from locating within a two and a half block (500-foot) radius. There are also numerous Orthodox Jewish minyans tucked into upper floors of office buildings in Manhattan that may disable blocks of otherwise permissible areas.

1639

71. There are many other obstacles to moving or opening adult businesses. For instance, most commercial leases specifically bar "pornographic uses." I believe that such restrictive language is included in the standard lease forms of the Real Estate Board of New York and the Bar Association of the City of New York's Committee on Real Property Law.

72. The City is constantly changing the zoning – especially in the limited areas to where bookstores are relegated. And, there are several areas that are possibly subject to rezoning.

73. I would not invest in property that may be subject to rezoning. Opening a bookstore with booths is an extremely costly proposition. It requires long term leases, obtaining building permits, architectural plans, the installation of sophisticated electronic equipment and wiring, and other substantial steps. Neither I nor any other businessperson I know would undertake such a significant, costly, and arduous task without an assurance the area will remain permissible for adult establishments.

1640

74. Many of our customers come to our bookstores because they are convenient and within walking distance of their homes or offices. We have a number of customers who use wheelchairs or have other disabilities.

75. Many of our customers do not have the time, funds or means to travel to view films in booths.

76. If our stores are forced to close or remove their booths, this will deprive our customers access to a form of expression that they enjoy.

77. I respectfully ask the Court to grant the Plaintiffs' motion for a preliminary injunction and such other and additional relief as is just under all the circumstances of this case.

1641

I declare under penalty of perjury that the foregoing is true and correct.

Dated: November _13_, 2018

Daniel J. Zazzali

# DECLARATION OF

# DANIEL KNECHT

# IN SUPPORT OF

# PLAINTIFFS' MOTION FOR

# PRELIMINARY INJUNCTION

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
-------------------------------------------------X
336 LLC, d/b/a "The Erotica", et al.,
                               Plaintiffs,

         v.

THE CITY OF NEW YORK, et al.,
                            Defendants.
-------------------------------------------------X

           DECLARATION OF
            DANIEL KNECHT

           Docket No.
       1:18-cv-3732-WHP

I, DANIEL KNECHT, hereby declare pursuant to 28 U.S.C. § 1746:

1. I submit this declaration in support of the Plaintiffs' motion for a preliminary injunction against enforcement of Text Amendment N 010508 ZRY of the Zoning Resolution of the City of New York (the "2001 Resolution"), which amends the zoning law relating to adult uses. This declaration is based upon personal knowledge.

2. I am a member of 336 LLC, a Plaintiff in this lawsuit. We operate the bookstore known as The Erotica, at 336 Eighth Avenue, between West 26th Street and West 27th Street, in the Chelsea section of Manhattan (the "Bookstore"). The Bookstore offers some adult information, as well as a larger amount of non-adult information, to the public.

1644

3. In 2012, the New York State Supreme Court declared the 2001 Resolution, which relates to businesses offering adult expression, to be unconstitutional and enjoined its enforcement. The 2001 Resolution, in its entirety, was declared to be unconstitutional between August 30, 2012 and June 6, 2017.

4. During that time -- in 2014 -- we signed a lease for 10 years and two months, which ends on June 30, 2024, for the ground floor commercial space at 336 Eighth Avenue in Manhattan. Our store has operated at its current location for the last four years. The Bookstore is in a C6-2A zoning district. We are across Eighth Avenue from R8 and C4-5 zoning districts. I believe adult establishments are not permitted at the address where the Bookstore is located.

5. We specifically designed and established the Bookstore to comply with the 60/40 Provision, which was the governing law at the time, whereby less than 40 percent of the customer accessible floorspace and stock is dedicated to adult material.

1645

6. We have 10 private viewing booths in the rear of the Bookstore. These booths offer a selection of channels where patrons can view a variety of sexually explicit films on a screen within the enclosed private space.

7. The First Amendment protects the films and expression shown in the booths. There is no contention that any information provided in the booths is legally obscene. This information enjoys a substantial amount of public interest by consenting adults. Although the booths, which are in the back of the Bookstore, occupy less than 40 percent of the total floor space, they are an integral part of our business. They give customers a wide selection of films they cannot see anywhere else.

8. If a preliminary injunction is not issued, and the 2001 Resolution, which has never been enforced against existing businesses, becomes enforceable, then we must immediately cease showing any adult films.

9. We will be forced to close and remove our costly and heavy booths. In addition to the crushing economic cost, this would severely limit our ability to dispense constitutionally protected expression to the public. I have been advised by our attorney that because of the high premium placed upon free speech, its loss "for even minimal periods of time, unquestionably constitutes

1646

irreparable injury." <u>Elrod v. Burns</u>, 427 U.S. 347, 373, 96 S. Ct. 2673, 2690 (1976).

10. In addition, because of the critical role the booths play in the operation of our business, we will sustain significant damages that would require the business to cease operations. If forced to close, at least two employees as well as the store owners will lose our jobs. The consequences to our business -- and to our customers -- will be devastating and irreparable.

11. If we break our lease because we must close the business before the leases expire, we will suffer substantial penalties. Our rent is approximately $16,680 per month for the small space. We may also be forced to break other contracts that we have for services.

12. We have many regular customers who come for the adult and non-adult material. Customers have expressed concerns about what will happen to us and them if we are forced to close the booths. We will lose regular customers and the goodwill we have developed over the last four years.

4

13. Many of our customers come to our Bookstore because it is convenient and within walking distance of their homes or offices. Our business caters, in part, to the artistic community around the Fashion Institute of Technology and the gay community of Chelsea, where we are located. We would not endeavor to relocate our booths and business outside of Manhattan because, among other issues, it is inconsistent with our business plan.

14. Even if we wanted to move out of Manhattan, which we do not, we do not know where we could possibly endeavor to relocate. The City has not generated any maps, or provided any other information, indicating permissible areas for bookstores with adult booths.

15. Opening a bookstore with booths is an extremely costly proposition. It requires long term leases, building permits, architectural plans, the installation of sophisticated electronic equipment and wiring, and other substantial steps. I would not invest in property that may be subject to rezoning. Neither I nor any other businessperson I know would undertake such a significant, costly, and arduous task without an assurance the area will remain permissible for adult establishments.

1648

16. Without a preliminary injunction, the City could bring enforcement proceedings under the Nuisance Abatement Law while this Court is considering the merits of our civil rights lawsuit. It would not help us to eventually win the case if our expression has been enjoined, and we already lost our store and livelihood.

17. In addition to Nuisance Abatement proceedings, bookstores across New York City face criminal charges as part of the City's enforcement campaign. Such a prosecution can subject the operator of a bookstore to a conviction and imprisonment of up to one year if there are adult booths.

18. I would close our booths, and silence our expression, rather than risk being thrown in jail or facing criminal prosecution,

19. I am very familiar with other bookstores with an adult component in New York City. This is, in part, because I am also a principal of VDAN Sales Inc., which distributes marital aids, lingerie, novelties, and other merchandise to bookstores throughout New York.

20. Based on my investigation and personal knowledge, it is my understanding that there are only approximately 25 bookstores in New York City that operate under a 60/40 formula and have adult booths.

21. I know of the following 60/40 14 bookstores with booths in Manhattan:

Blue Door Video
87 First Avenue
New York, New York 10003
Approximately 10 booths

Xcellent DVD
515 Sixth Avenue
New York, New York 10011
Approximately 8 booths

725 Video Outlet Inc. a/k/a Video Video
725 Sixth Avenue
New York, New York 10010
Approximately 12 booths

Chelsea 7 Corp.
155 Eighth Avenue
New York, New York 10011
Approximately 3 booths

Harmony
165 Eighth Avenue
New York, New York 10011
Approximately 10 booths

Rainbow Station 7 Inc.
203 Eighth Avenue
New York, New York 10011
Approximately 10 booths

The Blue Store
206 Eighth Avenue
New York, New York 10011
Approximately 20 booths

1650

336 LLC d/b/a The Erotica
336 Eighth Avenue
New York, New York 10001
Approximately 10 booths

557 Entertainment Inc.
557 Eighth Avenue
New York, New York 10018
Approximately 10 booths

Gotham Video Sales & Distribution Inc. a/k/a Playpen
687 Eighth Avenue
New York, New York 10036
Approximately 27 booths

Vishans Video, Inc. a/k/a Vishara DVD
797 Eighth Avenue
New York, New York 10019
Approximately 24 booths

Jayasara Video Inc.
308 West 36th Street
New York, New York 10018
Approximately 10 booths

Blue Toys Corp.
236 West 40th Street
New York, New York 10018
Approximately 20 booths

Mixed Emotions
216 West 50th Street
New York, New York 10019
Approximately 8 booths

1651

22. Another bookstore, which had 14 booths, Vihara Video, 592 Eighth Avenue, New York, New York 10018, closed its doors and stopped operating in July of 2018.

23. The following five 60/40 bookstores with booths are in Brooklyn:

> Flatbush Video
> 2350 Flatbush Avenue
> Brooklyn, New York 11234
> Approximately 4 booths
>
> Video Lovers Inc.
> 746 Third Avenue
> Brooklyn, New York 11232
> Approximately 10 booths
>
> 757 Paradise
> 761 Third Avenue
> Brooklyn, New York 11232
> Approximately 20 booths
>
> Candy Love
> 871 Third Avenue
> Brooklyn, New York 11232
> Approximately 3 booths
>
> Video City
> 956 Third Avenue
> Brooklyn, New York 11232
> Approximately 6 booths

1652

24. The following four 60/40 bookstores with booths are in Queens:

    Explore DVD LLC
    97-06 Queens Boulevard
    Queens, New York 11374
    Approximately 15 booths

    DCD Exclusive Video Inc.
    102-30 Queens Boulevard
    Queens, New York 11375
    Approximately 7 booths

    DCD Exclusive
    23-08 Jackson Avenue
    Queens, New York 11101
    Approximately 8 booths

    Little Neck Video
    254-11 Northern Boulevard
    Queens, New York 11362
    Approximately 9 booths

25. The following two 60/40 bookstores with booths are in the Bronx:

    ASA Castle Video
    2160 Westchester Avenue
    Bronx, New York 10462
    Approximately 6 booths

    DVD Palace
    4028 Boston Road
    Bronx, New York 10475
    Approximately 4 booths

1653

26. To the best of my knowledge, if the 2001 Resolution is enforced then each of these bookstores -- including ours -- will be forced to close their booths. This will sound the death knell for virtually all booths in New York City.

27. To the best of my knowledge, there is only one bookstore in Manhattan within a permissible area for adult establishments: 300 Video Center, 300 West 40th Street, New York, New York 10018. This small bookstore, which is <u>not</u> at street level and is located down in the stairway for the subway system, does <u>not</u> have any private viewing booths. Therefore, if the preliminary injunction is denied, and all existing 60/40 bookstores are required to close and/or remove their booths, there will be <u>no</u> adult booths anywhere in Manhattan.

28. I only know of two bookstores -- in all of New York City --- which have booths and are in areas where exclusively adult establishments may operate: (1) Sensations Video, 150-19 Guy R. Brewer Boulevard, Queens, New York 11434; and (2) Nitecap Megastore ("Nitecap"), 690 Gulf Avenue, Staten Island, New York 10314.

1654

29. Sensations Video is in an industrial business zone within 500 feet of JFK Airport. I believe the building housing Sensations Video was recently sold, and the adult bookstore will close within the next few months.

30. Once Sensations Video closes, I believe there will only be <u>one</u> adult bookstore in the entire City with booths. That bookstore -- Nitecap on Staten Island -- is a <u>one-hour</u> drive from our bookstore, which is centrally located in Manhattan.

31. According to a Google Map search, which is attached as Exhibit 1, it would take 1 hour and 53 minutes during rush hour to get to Nitecap from our bookstore by public transportation. This would entail (1) walking from the Bookstore to the subway station at 23rd Street; (2) taking the E train to 42nd Street / Port Authority; (3) taking the SIM 30 bus for 44 minutes to Sunnyside via Forest Avenue; and (4) walking for <u>2.6 miles</u> (approximately 52 minutes) from Forest Avenue/Goethals Road to Nitecap at 690 Gulf Avenue.

32. It is extremely difficult for any bookstore to comply with the new 60/40 rules contained within the 2001 Resolution. In addition to dedicating less than 40 percent of all customer accessible floorspace and stock to adult materials, there are a number of other burdens now imposed on bookstores. For example, the 2001 Resolution directs where DVDs may be displayed, the variety of <u>titles</u> that can be offered for sale based on the content of films, and whether a store may sell or rent its DVDs.

33. Since June of 2017, a number of formerly 60/40 bookstores have removed <u>all</u> of their books, magazines, DVDs, and videos -- both adult and non-adult -- so they are no longer considered to be bookstores and subject to the 2001 Resolution. This has substantially reduced the amount of constitutionally protected information available to the public. We have no way to ascertain the number of 60/40 bookstores without booths remaining in Manhattan and the rest of New York City.

34. Each bookstore with booths employs people and provides expression to the public. If injunctive relief is not issued, hundreds of people -- including me and my employees -- will lose their jobs.

1656

35. While pure financial loss alone may not be enough to obtain a preliminary injunction, the annihilation of expression and loss of livelihood should certainly be considered in any determination of irreparable harm.

36. Forcing bookstore owners to censor the nature of our expression will have dire implications for free expression in New York City. Even if bookstores are not forced to close or relocate, which is disputed, irreparable harm exists if the businesses are required to alter the nature of our expression to comply with the disputed zoning law.

37. 336 LLC never previously operated this or any other bookstore with adult material. 336 LLC was not party to any prior lawsuit challenging the constitutionality of the 2001 Resolution.

38. For all these reasons, and those contained in the other documents filed in this case, I respectfully ask that the Court grant the Plaintiffs' motion for a preliminary injunction, and such other and additional relief as is just under all the circumstances of this case.

I declare under penalty of perjury that the foregoing is true and correct.

Dated: November 6, 2018

Daniel Knecht

1658

# KNECHT DECLARATION

# EXHIBIT 1



**336 8th Ave, New York, NY 10001 to** 4:15 PM - 6:08 PM (1 h 53 min)
**690 Gulf Avenue, Staten Island, NY**

Map data ©2018 Google    2 mi

---

**4:15 PM** ⭘ **336 8th Ave**

New York, NY 10001

🚶 **Walk**

About 4 min , 0.1 mi

⚠️ Use caution - may involve errors or
sections not suited for walking

⬆ Head southwest on 8th Ave toward W 26th St

466 ft

↰ Turn left onto W 25th St
 Destination will be on the right

62 ft

Take entrance 8th Ave & 25th St at SE corner

259 ft

**4:19 PM** ⭘ **23 St**

Ⓔ Jamaica Center - Parsons/Archer

3 min (2 stops)
Service run by MTA New York City Transit -
Route information

**4:22 PM** ⭘ **42 St - Port Authority Bus Terminal**

1660



🚶 **Walk**

About 1 min

⚠️ Use caution - may involve errors or
sections not suited for walking

Take exit Port Authority Bus Terminal entrance

82 ft

⬆️ Head northwest on W 42nd St

92 ft

**4:32 PM**   W 42 St/8 Av

🚌 **SIM30**

SUNNYSIDE via FOREST AV

44 min (non-stop) ·
Service run by MTA New York City Transit -
Route information

**5:16 PM**   Forest Av/Goethals Rd N

🚶 **Walk**

About 52 min , 2.6 mi

⚠️ Use caution - may involve errors or
sections not suited for walking

⬆️ Head southwest on Forest Ave toward
Goethals Rd N

167 ft

↰ Make a U-turn at Goethals Rd N

0.6 mi

↱ Turn right onto South Ave

1.4 mi

↱ Turn right onto Edward Curry Ave

0.3 mi

↱ Turn right onto Gulf Ave

0.3 mi

**6:08 PM**   **690 Gulf Ave**

Staten Island, NY 10314

**Tickets and information**

MTA New York City Transit - 1 (718) 330-1234

These directions are for planning purposes only.
You may find that construction projects, traffic,
weather, or other events may cause conditions to
differ from the map results, and you should plan
your route accordingly. You must obey all signs or
notices regarding your route.

# DECLARATION OF

# YITZIK SHACHAF

# IN SUPPORT OF

# PLAINTIFFS' MOTION FOR

# PRELIMINARY INJUNCTION

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
------------------------------------------------X

336 LLC, d/b/a "The Erotica", et al.,
                            Plaintiffs,

        v.

THE CITY OF NEW YORK, et al.,
                   Defendants.
------------------------------------------------X

DECLARATION OF
YITZIK SHACHAF

Docket No.
1:18-cv-3732-WHP

I, YITZIK SHACHAF, hereby declare pursuant to 28 U.S.C. § 1746:

1. I submit this declaration in support of the Plaintiffs' motion for a preliminary injunction against enforcement of Text Amendment N 010508 ZRY of the Zoning Resolution of the City of New York (the "2001 Resolution"), which amends the zoning law relating to adult uses. This declaration is based upon personal knowledge. I am not a party to this action and was not party to any prior lawsuit challenging the constitutionality of the 2001 Resolution.

2. I am an owner of 757 Paradise Ltd., which operates the bookstore at 761 Third Avenue, Brooklyn, New York 11232 (the "Bookstore"). The Bookstore has been at its current location in South Slope / Sunset Park since approximately 1991. Even though we are in an M1-2D zoning district, it is

1663

my understanding that adult establishments are not permitted at the address where the Bookstore is located.

3. When we first opened the Bookstore we only offered adult material. After the 1995 Resolution went into effect, we took extensive steps to change the essential nature of our business. For instance, we substantially reduced our adult inventory and introduced a large assortment of other merchandise to attract and appeal to a different clientele.

4. We redesigned the Bookstore to comply with the 60/40 Provision, whereby less than 40 percent of the customer accessible floorspace and stock is dedicated to adult material. We now have many female customers.

5. There are 20 private viewing booths in the Bookstore. These booths offer a selection of channels where patrons can view a variety of sexually explicit films on a screen within an enclosed private space.

6. The films and expression shown in the booths are protected by the First Amendment to the United States Constitution. There is no contention that any information provided in the booths is legally obscene. This information enjoys a substantial amount of public interest.

1664

7. Although the booths occupy less than 40 percent of the total floor space, they are an integral part of our business. They give customers a wide selection of films they cannot see anywhere else. If the 2001 Resolution, which has never been enforced against existing businesses, becomes enforceable, then we must immediately cease showing any adult films in our booths.

8. We will be forced to close and remove our costly and heavy booths. In addition to the devastating economic cost, this would severely limit our ability to dispense constitutionally protected expression to the public.

9. Because of the critical role the booths play in the operation of our business, we will sustain significant damages that may require the business to cease operations. If forced to close, at least four employees -- two of whom have worked for us for more than 15 years -- will lose their jobs. The consequences to our business -- and to our customers -- will be devastating and irreparable.

10. Our lease runs until December 21, 2021. If we break our lease because we must close the business before the lease expires, we will suffer substantial penalties. We may also be forced to break other contracts that we have for services.

1665

11. Approximately 75 percent of our customers are regulars who come to the Bookstore for adult and non-adult material. Many of our customers come because it is convenient to their homes or offices. If we must close the booths, we will lose regular customers and the goodwill we have developed over more than 25 years.

12. If we keep the booths open, we could be subjected to criminal prosecutions and injunctions under the Nuisance Abatement Law. I would close our booths, and silence important expression, rather than risk being thrown into jail or face criminal prosecution, or other sanctions, through enforcement proceedings.

13. Even if we wanted to move our business, which we do not, I have no idea where we could possibly try to relocate. The City has not generated any maps, or provided any other information, indicating permissible areas for adult booths.

14. It is my understanding that there are some industrial areas in Brooklyn -- such as Gowanus -- that may be subject to rezoning. Opening a bookstore with booths is an extremely costly proposition. It requires long term leases, building permits, architectural plans, the installation of sophisticated electronic equipment and wiring, and other substantial steps. Neither I nor any

4

other businessperson I know would undertake such a significant, costly, and burdensome task without an assurance the area will remain permissible for adult establishments.

15. Over the last three decades the area where the Bookstore is located has changed significantly. When we first opened the Bookstore, this was a seedy, industrial area, beneath the Gowanus Expressway. Since we have been there, the neighborhood has experienced tremendous development and gentrification. Real estate values have markedly increased over the last decade and the area seems substantially safer. We want to remain in our community and continue to provide constitutionally protected expression to our customers.

16. I am also principal of Washington Avenue LLC. We owned the building located at 150-19 Guy R. Brewer Boulevard, Queens, New York 11434. The building, which is in an industrial area near JFK Airport, houses Sensations Video ("Sensations"), which has 11 viewing booths. Sensations is in one of the very <u>few</u> areas where exclusively adult businesses can be located.

1667

17. Sensations will be closing within the next two months because the new owners are requiring the property to be delivered to them empty. They will not be operating a bookstore or any other type of adult business at the premises. It is my understanding that once Sensations closes, there will not be any bookstores with permissible adult booths in Queens, Manhattan, Brooklyn, or the Bronx.

18. I believe there may be one adult bookstore on Staten Island with booths. I lived in Staten Island for many years. Staten Island is quite unlike any other part of New York City. For instance, it is not connected to the rest of the City by the subway. It costs $17 (without EZ Pass) just to drive from Brooklyn to Staten Island. It lacks the infrastructure which exists elsewhere in New York. And, politics in Staten Island is quite distinct from the rest of the City. These are just some of the many reasons why I would not consider endeavoring to locate a permissible area in Staten Island to attempt to operate a bookstore with booths. Moreover, most of my regular customers would never travel to Staten Island to watch adult movies in booths.

1668

19. For all these reasons, and those contained in the other documents filed in this case, I respectfully ask that the Court grant the Plaintiffs' motion for a preliminary injunction and interim relief, and such other and additional relief as is just under all the circumstances of this case.

20. I declare under penalty of perjury that the foregoing is true and correct.

Dated: November 2, 2018

_____
YITZIK SHACHAF

1669

# DECLARATION OF

# ERICA T. DUBNO

# IN SUPPORT OF

# PLAINTIFFS' MOTION FOR

# PRELIMINARY INJUNCTION

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
--------------------------------------------------X

336 LLC, d/b/a "The Erotica", et al.,
                       Plaintiffs,

       v.

THE CITY OF NEW YORK, et al.,
                   Defendants.
--------------------------------------------------X

DECLARATION OF
ERICA T. DUBNO

Docket No.
1:18-cv-3732-WHP

     I, Erica T. Dubno, hereby declare pursuant to 28 U.S.C. § 1746:

     1. I am an attorney admitted to practice in this Court as well as in the New York State courts, the Second Circuit, and the United States Supreme Court. I am a member of Herald Price Fahringer PLLC, d/b/a Fahringer & Dubno, 767 Third Avenue, Suite 3600, New York, New York 10017. I represent the Plaintiffs in their action to have aspects of Text Amendment N 010508 ZRY to the Zoning Resolution of the City of New York (the "2001 Resolution"), which amends the zoning law relating to adult uses, declared unconstitutional.

     2.  I submit this declaration in support of the Plaintiffs' motion for a preliminary injunction against enforcement of the 2001 Resolution. This declaration is based upon personal knowledge, review of records, and investigation.

3. Most of the facts related to the Plaintiffs' motion are contained within the other declarations and exhibits contained in the Plaintiffs' Joint Appendix, including the Plaintiffs' Request to Take Judicial Notice. The arguments are contained within the Plaintiffs' Memorandum of Law in support of this application.

### The 1995 Resolution

4. On October 25, 1995, the City Council enacted Text Amendment N 950384 ZRY to the Zoning Resolution of the City of New York (the "1995 Resolution"). The 1995 Resolution defined "adult establishments" as a new category of land use and then subjected that land use to restrictive zoning provisions.

5. An "adult establishment" was defined as a commercial business a "substantial portion" of which includes: An adult bookstore (including videostores); an adult eating or drinking establishment; an adult theater; or other adult commercial establishment (Z.R. § 12-10).

6. An adult establishment was further defined as a business where "a substantial portion" of its "stock-in-trade" is characterized by an emphasis on "specified sexual activities" or "specified anatomical areas," or a business which "regularly features" films or live performances that depict an emphasis

2

on "specified sexual activities" or "specified anatomical areas" (Z.R. § 12-10).

7. The definitions of "adult eating or drinking establishments," "adult theaters," and "other adult commercial establishments" included a provision that the establishment "is not customarily open to the general public during such features because it excludes minors by reason of age" (Z.R. § 12-10). There was no age exclusion requirement in the definition of "adult book (and video) stores."

8. The 1995 Resolution restricted adult establishments to certain limited areas of the City. It also imposed the following limitations on adult establishments within the remaining available districts:

> (a) Adult establishments must be located at least 500 feet from a church, school, residential district, or certain commercial and manufacturing districts (Z.R. §§ 32-01(b), 42-01(b));
>
> (b) adult establishments must be located at least 500 feet from another adult establishment (Z.R. §§ 32-01(c), 42-01(c));
>
> (c) only one adult establishment can be located on a zoning lot (Z.R. §§ 32-01(d), 42-01(d)); and
>
> (d) adult establishments may not exceed 10,000 square feet of floor area and cellar space (Z.R. §§ 32-01(e), 42-01(e)).

1673

9. The City estimated that 148 of the 177 existing adult businesses would have to close, move, or modify the nature of their business to come into compliance with the law with the 1995 Resolution (PJA.1860). The City estimated that approximately four percent of its total land area was available for adult uses (PJA.1446). The City estimated that there were approximately 500 potential sites for adult establishments to relocate their businesses (PJA.1446).

10. The New York courts eventually upheld the 1995 Resolution. However, throughout the proceedings the state and federal courts recognized the significant constitutional ramification of such a law on the exercise of free speech, and stayed its enforcement throughout the proceedings. See, e.g., Stringfellow's of New York, Ltd. v. City of New York, 91 N.Y.2d 382, 395 n.1, 671 N.Y.S.2d 406, 413 n.1 (1998); Hickerson v. City of New York, 146 F.3d 99, 103 n.2 (2d Cir. 1998).

11. In defending the 1995 Resolution the City urged that businesses did not have to relocate if they reduced their adult materials to less than 40 percent (a "substantial portion") of their floor space and stock. For example, the City's motion to vacate the stay in the New York Court of Appeals claimed, "such establishments may continue to operate at their current locations as a non-

4

adult establishment. They will not run afoul of the Amendments so long as they do not regularly feature or devote a substantial portion of their stock-in-trade to adult entertainment or material, as defined in those regulations." (Assistant Corporation Counsel Natrella Aff. ¶ 31, Amsterdam Video v. City of New York, Index No. 103568/96); see also Affidavit of Assistant Corporation Counsel Albert Fredericks, dated September 25, 1996, in opposition to the plaintiffs' motion for a preliminary injunction in Amsterdam Video at 3 ("plaintiffs may continue to operate businesses that offer adult entertainment and materials, so long as a 'substantial portion' of their establishments are not devoted to adult materials or do not 'regularly feature' adult entertainment").

12. On July 20, 1998, when it became clear that application of the 1995 Resolution was inevitable, counsel for the adult-oriented businesses sought to enjoin its enforcement in federal court because the key term defining an adult establishment -- "substantial portion" -- was vague. See Amsterdam Video, Inc. v. City of New York, Docket No. 96 Civ. 2204 (MGC) (S.D.N.Y.).

1675

13. On July 24, 1998, in response to and out of a concern for our vagueness challenge, the City asserted before Judge Cedarbaum that any commercial establishment that has less than 40 percent of adult stock-in-trade, or allocated less than 40 percent of its accessible floor area to an adult use, would comply with the 1995 Resolution (the "60/40 Provision").  Id.

14. The 60/40 Provision applied to all types of businesses -- including bookstores with booths.  As long as a bookstore reduced its adult component to less than 40 percent of the floor space and stock, it could exhibit a selection of adult films to the public in the privacy of viewing booths without having to close, relocate or censor that aspect of its expression.

### The City Brought Criminal Charges and Nuisance Abatement Proceedings Against Businesses Under the 1995 Resolution

15. At the end of July 1998, after the judicial challenges to the 1995 Resolution had been turned back, the City launched a series of enforcement campaigns. Padlock orders were sought against establishments in every borough of New York under the Nuisance Abatement Law.

1676

16. The City also brought criminal charges against business owners under § 11-61 of the City's Zoning Resolution, which provides, in pertinent part, that the owner or operator of any place in violation of a provision of the Zoning Resolution "shall be guilty of a misdemeanor." Section 55.10(2)(b) of New York's Penal Law states that any offense defined outside this chapter which is declared by law to be a misdemeanor "shall be deemed a class A misdemeanor." P.L. § 70.15(1) then authorizes a sentence of imprisonment of up to one year for a class A misdemeanor.

17. The City Planning Commission ("CPC") reported a 23 percent decline in the number of adult establishments -- a loss of 41 businesses -- during the period from 1993 through 2000. See 2001 CPC Report at 6 (PJA.0714).

## The 2001 Resolution

18. On March 22, 2001, toward the end of Mayor Rudolph W. Giuliani's term, the Department of City Planning submitted Application No. N 010508 ZRY to the City Planning Commission to amend the definition of "adult establishment" contained within Z.R. § 12-10 and, inter alia to impose additional restrictions relating to adult businesses. On October 31, 2001, the

1677

City Council adopted and ratified Text Amendment N 010508 ZRY to the Zoning Resolution of the City of New York (the "2001 Resolution").

19. The 2001 Resolution is significantly more restrictive than the 1995 Resolution. The "substantial portion" language of the 1995 Resolution was removed from the definition of "adult establishment" so that the 60/40 Provision is no longer applicable to theaters, eating or drinking establishments, private viewing booths, or any use other than a "bookstore."

20. Section 12-10 still requires a bookstore to devote less than a substantial portion (40 percent) of its stock and accessible floor area to adult material. However, the 2001 Resolution includes nine other "features" that building inspectors can consider in determining whether a business that complies with the 60/40 floor space and stock requirements is an impermissible adult establishment.

21. On June 6, 2017, the New York Court of Appeals, with only five Judges sitting, reversed the Appellate Division and trial judge, and upheld the constitutionality of the 2001 Resolution. See For the People Theatres of N.Y., Inc. v. City of New York, 29 N.Y.3d 340 (2017).

22. On August 2, 2017, we entered a stipulation with the City whereby existing 60/40 bookstores agreed to comply with all provisions of the 2001 Resolution against bookstores, except three (the "Stipulation"). (PJA.1875).

23. Under the current stipulated status quo, bookstores must comply with the established 60/40 Provision, requiring them to limit their adult component to less than 40 percent of the customer accessible floor space and stock. In addition, bookstores that fully comply with the 60/40 Provision can still be subjected to sanctions if any one of these factors exist:

a. An interior configuration and lay-out which requires customers to pass through an area of the store with "adult printed or visual material" in order to access an area of the store with "other printed or visual material" (Z.R. § 12-10[2][d][aa]);

b. a method of operation which requires customer transactions with respect to "other printed or visual material" to be made in an area of the store which includes "adult printed or visual material" (Z.R. § 12-10[2][d][cc]);

c. a method of operation under which "other printed or visual material" is offered for sale only and "adult printed or visual material" is offered for sale or rental (Z.R. § 12-10[2][d] [dd]);

d. a greater number of different titles of "adult printed or visual material" than the number of different titles of "other printed or visual material" (Z.R. § 12-10[2][d][ee]);

1679

    e.  a sign that advertises the availability of "adult printed or visual material" which is disproportionate in size relative to a sign that advertises the availability of "other printed or visual material", when compared with the proportions of adult and other printed or visual materials offered for sale or rent in the store, or the proportions of floor area or cellar space accessible to customers containing stock of adult and other printed or visual materials (Z.R. § 12-10[2][d][gg]); and/or

    f.  a window display in which the number of products or area of display of "adult printed or visual material" is disproportionate in size relative to the number of products or area of display of "other printed or visual material", when compared with the proportions of adult and other printed or visual materials offered for sale or rent in the store, or the proportions of floor area or cellar space accessible to customers containing stock of adult and other printed or visual materials (Z.R. § 12-10[2][d][hh]).

24.  Under the Stipulation, the City agreed not to require compliance with the following provisions: (1) the prohibition against one or more individual enclosures where adult movies or live performances are available for viewing by customers (Z.R. § 12-10[2][d][bb]); (2) the prohibition against excluding or restricting minors from the store as a whole or from any section of the store with non-adult material (Z.R. § 12-10[2][d][ff]); and (3) authorizing the Building Commissioner to adopt rules relating to "configuration and layout or method of operation", which the Commissioner believes render the sale or rental of adult material a "substantial purpose" of the business conducted in such store (Z.R. § 12-10[2][d][ii]).

1680

25. The City remains free to enforce all provisions of the 2001 Resolution against any new bookstores that commenced operating after June 6, 2017, when the New York Court of Appeals issued its Remittitur in <u>For the People Theatres v. City of New York</u>, No. 121080/02, APL 2015-00273.

26. These Plaintiffs have not made any prior application to this Court or any other to enjoin enforcement of the 2001 Resolution.  A different bookstore, which is not part of this action, made prior applications for injunctive relief to the State courts, which were granted in <u>For the People Theatres of N.Y., Inc. v. City of New York</u>, Index No. 121080/02 (Sup. Ct. N.Y. Co.).

27. For example, on October 29, 2002; September 13, 2006; and June 30, 2011, Justice Louis B. York granted preliminary injunctions to stay enforcement of the 2001 Resolution. On June 15, 2010, the Appellate Division, First Department granted a preliminary injunction.  However, on June 27, 2017, a Judge of the New York Court of Appeals denied that plaintiff's application for a stay pending an application to the United States Supreme Court for a writ of certiorari.  On July 6, 2017, a Justice of the Supreme Court denied that plaintiff's application for a stay pending its

1681

application for a petition for certiorari. JGJ Merchandise Corp. v. City of New York, No. 17A38.

28. The applications for injunctive relief in 2017 were based on different grounds than those presented in this action. Specifically, that plaintiff was asking the Court to resolve the question of "[w]here a municipality seeks to regulate and restrict the operation of establishments that offer expression protected by the First Amendment under a zoning ordinance, what burden of proof must the municipality bear once the constitutionally protected establishments have furnished evidence that disputes the rationale for the municipality's zoning ordinance?"

29. The bookstore Plaintiffs have not presented that issue in this federal proceeding. Instead, this motion for a preliminary injunction is predicated largely on the City's failure to provide adequate alterative avenues for constitutionally protected expression.

30. This application is made in good faith and not for purposes of delay.

1682

31. I respectfully ask the Court to grant the Plaintiffs' motion for a preliminary injunction and such other and additional relief as is just under all the circumstances of this case.

November 13, 2018

_Erica T. Dubno_
Erica T. Dubno, Esq.

1683