UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
-------------------------------------------------------------X
689 EATERY CORP., etc., *et ano.,*                  :

                  Plaintiffs,       :

        - against -                  :          Civil Action No.
                                 02 CV 4431 (LJL)
THE CITY OF NEW YORK, et al.,               :

                Defendants.    :
-------------------------------------------------------------X
59 MURRAY ENTERPRISES INC., etc., *et al.,*    :

                  Plaintiffs,       :

        - against -                  :          Civil Action No.
                                 02 CV 4432 (LJL)
THE CITY OF NEW YORK, et al.,               :

                Defendants.    :
-------------------------------------------------------------X
CLUB AT 60TH STREET, INC., etc., *et al.,*    :

                  Plaintiffs,       :

        - against -                  :          Civil Action No.
                                 02 CV 8333 (LJL)
THE CITY OF NEW YORK,                       :

                Defendant.     :
-------------------------------------------------------------X
336 LLC., etc., *et al.,*                            :

                  Plaintiffs,       :

        - against -                  :          Civil Action No.
                                 18 CV 3732 (LJL)
THE CITY OF NEW YORK,                       :

                Defendant.     :
-------------------------------------------------------------X

**VOLUME 1 OF EXHIBITS TO**
**JOINT REQUEST AND STIPULATIONS REGARDING**
**<u>THE TAKING OF JUDICIAL NOTICE</u>**

JNR-000017

**EXHIBITS VOL. 1 of 10; pp. JNR-000020 – JNR-000153**
**(Exhibits 1 through 16)**

**Page(s)**

Exhibit 1    Resolution 1322-1995, approving Text Amendment N 950384     000020-000034
ZRY ("1995 Ordinance")

Exhibit 2    Resolution 0208-1998, approving Text Amendment N     000035-000056
980135 ZRY ("1998 Amendments"), as published in Vol. I
of Proceedings of the Council of the City of New York
for the period January 7, 1998 to June 24, 1998

Exhibit 3    Resolution 2096-2001, approving Text Amendment     000057-000074
N 010508 ZRY ("2001 Amendments"), as signed by
the Clerk of the City of New York

Exhibit 4    Portions of NYC Council Resolution 586-2004 amending     000075-000081
ZR 32-01 & 42-01 regarding adult businesses ("2004
Amendments"), as published in Vol. II, Part I, of Proceedings
of the Council of the City of New York for the period
July 21, 2004 to December 15,  2004

Exhibit 5    Portions of NYC Council Resolution 0499-2010 amending, ZR     000082-000089
32-01 & 42-01 regarding adult businesses) ("2010 Amendments"),
as published in Vol. II, Part I, of Proceedings of the Council
of the City of New York for the period July 29, 2010 to
December 20, 2010

Exhibit 6    Directive 14 of 1975 (authorizing professional certification of     000090-000092
Applications for building permits by licensed architects and
engineers)

Exhibit 7    OPPN 17/95 (prohibiting professional certification of adult     000093-000108
establishment filings by architects and engineers)

Exhibit 8    OPPN 6/96 (reaffirming prohibition on professional certification of     000109-000116
Filings related to adult establishments by architects and engineers)

Exhibit 9    OPPN 7/96 (defining "place of worship" and "church")     000117-000118

Exhibit 10    OPPN  8/96  (describing methodology for measuring separation     000119-000123
between adult establishments and other adult establishments
or sensitive receptors)

**Page(s)**

Exhibit 11    OPPN 4/98 (definition of "substantial portion")                    000124-000126

Exhibit 12    OPPN 6/98 (explanation of "substantial portion" in context of      000127-000129
              multiple uses)

Exhibit 13    OPPN 5/02 (clarifying procedures for professional certification     000130-000135
              by architects and engineers)

Exhibit 14    OPPN 7/02 (clarifying procedures for securing "priority"           000136-000138
              as an adult establishment)

Exhibit 15    OPPN 1/04 (clarifying procedures for professional certification    000139-000149
              by architects and engineers)

Exhibit 16    Bulletin 2016-010 (describing procedures for professional          000150-000153
              certification)

Exhibit A

## THE COUNCIL OF THE CITY OF NEW YORK
### RESOLUTION NO. 1322

Resolution approving the decision of the City Planning Commission on Application No. N 950384 ZRY, an amendment to the text of the Zoning Resolution regarding adult establishments (L.U. No. 713).

By Council Members Eisland and McCaffrey

WHEREAS, the City Planning Commission filed with the Council on September 22, 1995 its decision dated September 18, 1995 ("the Decision"), on the application submitted by the Department of City Planning and the City Council Land Use Committee, pursuant to Sections 200 and 201 of the New York City Charter, for an amendment to the text of the Zoning Resolution (Application No. N 950384 ZRY) (the "Application");

WHEREAS, on March 21, 1995, the Land Use Committee adopted Resolution No. 897, which approved the filing of the Application with the City Planning Commission;

WHEREAS, the Decision is subject to review and action by the Council pursuant to Section 197-d(b)(1) of the City Charter;

WHEREAS, the Council held a public hearing on the Decision and Application on October 19 and 20, 1995;

WHEREAS, the Council has considered the land use implications and other policy issues relating to the Decision and Application; and

WHEREAS, the Council has considered the relevant environmental issues and the negative declaration, issued on April 10, 1995 (CEQR No. 95DCP038Y);

RESOLVED:

The Council finds that the action described herein will have no significant effect on the environment;

Page 2 of 15 pages
N 950384 ZRY
Reso. No. 1322 (L.U. No. 713)


Pursuant to Sections 197-d and 200 of the City Charter and on the basis of the Decision and Application the Council approves the Decision; and

The Zoning Resolution of the City of New York, effective as of December 15, 1961, and as subsequently amended, is further amended as follows:


Matter in Graytone is new, to be added;
Matter in strikeout is old, to be deleted;
Matter within #  # is defined in Section 12-10;
*** indicates where unchanged text appears in the Zoning Resolution

***

11-113
For adult establishments

Notwithstanding any other provision of this Resolution to the contrary, in all districts, no new #adult establishment# shall be allowed, nor shall any existing #adult establishment# be #enlarged# or #extended#, nor shall any #non-conforming use# be changed to an #adult establishment#, for an interim period of one year from the effective date of this amendment.

***

12-10
DEFINITIONS
***

Adult Establishment
An "adult establishment" is a #use# which includes:

(a)    Adult bookstore — an establishment listed in Use Group 6 or 12 having as a significant portion of its stock-in-trade books, magazines, other periodicals, films, slides or video tapes, and which establishment is customarily not open to the public because it excludes minors by reason of age; or,

0350

Page 3 of 15 pages
N 950384 ZRY
Reso. No. 1322 (L.U. No. 713)

(b) ~~Adult eating or drinking establishment - an eating or drinking establishment listed in Use Group 6A, 6C, 10 or 12A which customarily presents topless or nude dancers, strippers or similar entertainments, and which establishment is customarily not open to the public because it excludes minors by reason of age; or;~~

(c) ~~Adult theater - an establishment listed in Use Group 8 or 13 which customarily presents motion pictures, films, videotapes, slide shows, or live performances featuring topless or nude dancers, strippers or similar entertainments, including an establishment where such entertainment is viewed from an enclosure, and which establishment is customarily not open to the public because it excludes minors by reason of age.~~

Adult Establishment
An "adult establishment" is a commercial establishment where a "substantial portion" of the establishment includes an adult book store, adult eating or drinking establishment, adult theater, or other adult commercial establishment, or any combination thereof, as defined below:

(a) An adult book store is a book store which has as a "substantial portion" of its stock-in-trade any one or more of the following:

(1)    books, magazines, periodicals or other printed matter which are characterized by an emphasis upon the depiction or description of "specified sexual activities" or "specified anatomical areas"; or,

(2)    photographs, films, motion pictures, video cassettes, slides or other visual representations which are characterized by an emphasis upon the depiction or description of "specified sexual activities" or "specified anatomical areas."

(b) An adult eating or drinking establishment is an eating or drinking establishment which regularly features any one or more of the following:

(1)    live performances which are characterized by an emphasis on "specified anatomical areas" or "specified sexual activities"; or,

0351

Page 4 of 15 pages
N 950384 ZRY
Reso. No. 1322 (L.U. No. 713)

(2)     films, motion pictures, video cassettes, slides or other photographic reproductions which are characterized by an emphasis upon the depiction or description of "specified sexual activities" or "specified anatomical areas"; or,

(3)     employees who, as part of their employment, regularly expose to patrons "specified anatomical areas." and

which is not customarily open to the general public during such features because it excludes minors by reason of age.

(c) An adult theater is a theater which regularly features one or more of the following:

(1)     films, motion pictures, video cassettes, slides or similar photographic reproductions characterized by an emphasis on the depiction or description of "specified sexual activities" or "specified anatomical areas"; or,

(2)     live performances characterized by an emphasis on "specified anatomical areas" or "specified sexual activities", and

which is not customarily open to the general public during such features because it excludes minors by reason of age.

An adult theater shall include commercial establishments where such materials or performances are viewed from individual enclosures.

(d)     An other adult commercial establishment is a facility — other than an adult book store, adult eating and drinking establishment, adult theater, commercial studio, or business or trade school — which features employees who as part of their employment, regularly expose to patrons "specified anatomical areas" and which is not customarily open to the general public during such features because it excludes minors by reason of age.

For the purpose of defining #adult establishments#, "specified sexual activities" are: (i) human genitals in a state of sexual stimulation or arousal; (ii) actual or simulated acts of human masturbation, sexual intercourse or sodomy; or (iii) fondling or other erotic touching of human genitals, pubic region, buttock, anus or female breast.

Page 5 of 15 pages
N 950384 ZRY
Reso. No. 1322 (L.U. No. 713)

"Specified anatomical areas" are: (i) less than completely and opaquely concealed: (a) human genitals, pubic region, (b) human buttock, anus, or (c) female breast below a point immediately above the top of the areola; or (ii) human male genitals in a discernibly turgid state, even if completely and opaquely concealed.

For the purpose of determining whether a "substantial portion" of an establishment includes an adult bookstore, adult eating or drinking establishment, adult theater, or other adult commercial establishment, or combination thereof, the following factors shall be considered: (1) the amount of #floor area# and #cellar# space accessible to customers and allocated to such #uses#; and (2) the amount of #floor area# and #cellar# space accessible to customers and allocated to such uses as compared to the total #floor area# and #cellar# space accessible to customers in the establishment.

For the purpose of determining whether a bookstore has a "substantial portion" of its stock in materials defined in paragraphs (a) (1) or (a) (2) hereof, the following factors shall be considered: (1) the amount of such stock accessible to customers as compared to the total stock accessible to customers in the establishment; and (2) the amount of #floor area# and #cellar# space accessible to customers containing such stock; and (3) the amount of #floor area# and #cellar# space accessible to customers containing such stock as compared to the total #floor area# and #cellar# space accessible to customers in the establishment.

***

32-00
GENERAL PROVISIONS

In order to carry out the purposes and provisions of this Resolution, the #uses# of #buildings or other structures# and of tracts of land have been classified and combined into Use Groups. A brief statement is inserted at the start of each Use Group to describe and clarify the basic characteristics of that Use Group. Use Groups 1, 2, 3, 4, 5, 6, 7, 8, 9, 10, 11, 12, 13, 14, 15 and 16, including each #use# listed separately therein, are permitted in #Commercial Districts# as indicated in Sections 32-11 to 32-25, inclusive –, except that any such #use# which is also an #adult establishment# shall, in addition, be subject to the provisions of Section 32-01 (Special Provisions for Adult Establishments).

Page 6 of 15 pages
N 950384 ZRY
Reso. No. 1322 (L.U. No. 713)

32-01
Special Provisions for Adult Establishments

In addition to the applicable regulations for the #uses# listed in a permitted Use Group, #adult establishments# shall be subject to the following provisions:

(a)  #adult establishments# are not permitted in C1, C2, C3, C4, C5, C6-1, C6-2, or C6-3 Districts;

(b)  in C6-4, C6-5, C6-6, C6-7, C6-8, C6-9, C7 or C8 Districts, #adult establishments# shall be located at least 500 feet from a church, a #school#, a #residence district#, a C1, C2, C3, C4, C5-1, C6-1, C6-2, or C6-3 district, or a #manufacturing district# other than M1-6M in which new #residences#, new #joint living-work quarters for artists# or new #loft dwellings# are allowed, under the provisions of the Zoning Resolution, as-of-right or by special permit or authorization. However, on or after the effective date of this amendment, an #adult establishment# that otherwise complies with the provision of this paragraph shall not be rendered #non-conforming# if a church or a #school# is established on or after April 10, 1995 within 500 feet of such #adult establishment#;

(c)  in C6-4, C6-5, C6-6, C6-7, C6-8, C6-9, C7, or C8 Districts, #adult establishments# shall be located at least 500 feet from another #adult establishment#;

(d)  in C6-4, C6-5, C6-6, C6-7, C6-8, C6-9, C7, or C8 Districts, no more than one #adult establishment# permitted under this Section shall be located on a #zoning lot#;

(e)  in C6-4, C6-5, C6-6, C6-7, C6-8, C6-9, C7, or C8 Districts, #adult establishments# shall not exceed in total 10,000 square feet of #floor area# and #cellar# space not used for enclosed storage or mechanical equipment;

0354

Page 7 of 15 pages
N 950384 ZRY
Reso. No. 1322 (L.U. No. 713)

(f)     #adult establishments# which existed on the effective date of this amendment and
        conform to all provisions of the Zoning Resolution relating to #adult
        establishments# other than the provisions of all or any combination of paragraphs
        (c), (d), and (e) of this Section, shall not be subject to the provisions of Section
        52-77 (Termination of Adult Establishments).

                                        ***

32-60
SIGN REGULATIONS

                                        ***

32-62
Permitted Accessory Business Signs
C1, C2, C3, C4, C5, C6, C7, C8

In all districts, as indicated, #accessory business signs# are permitted subject to the
provisions of the following Sections:

                                        ***

Section 32-69 (Additional Accessory Business Sign Regulations for Adult Establishments)

                                        ***

32-69
Additional Accessory Business Sign Regulations for Adult Establishments
C6-4, C6-5, C6-6, C6-7, C6-8, C6-9, C7, C8

#Accessory business signs# for #adult establishments# are permitted only as set forth in
this Section, and are limited to locations in the districts indicated.

All permitted #accessory business signs# for #adult establishments# shall conform with
all the #sign# regulations applicable in C1 Districts as set forth in this Chapter, except
that the provisions of Section 32-64 (Surface Area and Illumination Provisions) shall not
apply. In lieu thereof, the maximum #surface area# of all #accessory business signs# for

0355

Page 8 of 15 pages
N 950384 ZRY
Reso. No. 1322 (L.U. No. 713)

#adult establishments# shall not exceed, in the aggregate, three times the #street# frontage of the #zoning lot#, but in no event more than 150 square feet per establishment, of which no more than 50 square feet may be #illuminated# non-#flashing signs#.

*** 

42-00
GENERAL PROVISIONS

In order to carry out the purposes and provisions of this Resolution, the #uses# of #buildings or other structures# and of tracts of land have been classified and combined into Use Groups. A brief statement is inserted at the start of each Use Group to describe and clarify the basic characteristics of that Use Group. Use Groups 4B, 4C, 5, 6A, 6B, 7, 8, 9B, 9C, 10B, 10C, 11, 12A, 12C, 12D, 12E, 13, 14, 16, 17 or 18, including each #use# listed separately therein, and certain #uses# listed in Use Groups 3A, 6C, 9A, 10A or 12B are permitted in #Manufacturing Districts# as indicated in Sections 42-11 to 42-15, inclusive-- , except that any such #use# which is also an #adult establishment# shall, in addition, be subject to the provisions of Section 42-01 (Special Provisions for Adult Establishments).


42-01
Special Provisions for Adult Establishments

In addition to the applicable regulations for the #uses# listed in a permitted Use Group, #adult establishments# shall be subject to the following provisions:

(a)   #adult establishments# are not permitted in a #manufacturing district# in which #residences#, #joint living-work quarters for artists# or #loft dwellings# are, under the provisions of the Zoning Resolution, allowed as-of-right or by special permit or authorization.

(b)   in all other #manufacturing districts#, #adult establishments# shall be located at least 500 feet from a church, a #school#, a #residence district#, a C1, C2, C3, C4, C5-1, C6-1, C6-2, or C6-3 district, or a #manufacturing district# other than

Page 9 of 15 pages
N 950384 ZRY
Reso. No. 1322 (L.U. No. 713)

M1-6M in which new #residences#, new #joint living-work quarters for artists# or new #loft dwellings# are allowed, under the provisions of the Zoning Resolution, as-of-right or by special permit or authorization. However, on or after the effective date of this amendment, an #adult establishment# that otherwise complies with the provision of this paragraph shall not be rendered #non-conforming# if a church or a #school# is established on or after April 10, 1995 within 500 feet of such #adult establishment#.

(c)   #adult establishments# shall be located at least 500 feet from another #adult establishment#.

(d)   no more than one #adult establishment# permitted under this Section shall be located on a #zoning lot#.

(e)   that #adult establishments# shall not exceed in total 10,000 square feet of #floor area# and #cellar# space not used for enclosed storage or mechanical equipment.

(f)   #adult establishments# which existed on the effective date of this amendment and conform to all provisions of the Zoning Resolution relating to #adult establishments# other than the provisions of all or any combination of paragraphs (c), (d), and (e) of this Section, shall not be subject to the provisions of Section 52-77 (Termination of Adult Establishments).

\*\*\*

42-50
SIGN REGULATIONS
\*\*\*

42-52
Permitted Accessory Business Signs or Advertising Signs
M1, M2, M3

In all districts, as indicated, #accessory business signs# or #advertising signs# are permitted with no restriction on size, illumination or otherwise, except as ~~otherwise~~ provided in Section 42-54 (Special Provisions Applying along District Boundaries) and

subject to the provisions of Section 42-53 (Additional Regulations for Advertising Signs) ~~and Section 42-55 (Additional Regulations for Business and Advertising Signs in Certain Manufacturing Districts).~~ and Section 42-55 (Additional Accessory Business Sign Regulations for Adult Establishments).

***

42-55

Additional Accessory Business Sign Regulations for Adult Establishments
M1, M2, M3

In all districts, as indicated, all permitted #accessory business signs# for #adult establishments# shall conform with the provisions of this Chapter, except that the maximum #surface area# of all #accessory business signs# for #adult establishments# shall not exceed, in the aggregate, three times the #street# frontage of the #zoning lot#, but in no event more than 150 square feet per establishment, of which no more than 50 square feet may be #illuminated# and no portion thereof may be #flashing#

No #accessory business signs# for #adult establishments# shall be permitted on the roof of any #building#, nor shall such signs extend above #curb level# at a height greater than 25 feet.

***

ARTICLE V
NON-CONFORMING USES AND NON-COMPLYING BUILDINGS

CHAPTER 1
STATEMENT OF LEGISLATIVE INTENT

51-00
PURPOSE OF REGULATIONS GOVERNING NON-CONFORMING USES AND NON-COMPLYING BUILDINGS

***

In the case of a few objectionable non-conforming uses which are detrimental to the character of ~~residence~~ the districts in which such uses are located, a reasonable statutory

Page 11 of 15 pages
N 950384 ZRY
Reso. No. 1322 (L.U. No. 713)

period of life is established for such uses, in order to permit the owner gradually to make his plans for the future during the period when he the owner is allowed to continue the non-conforming uses of his the property, thereby minimizing any loss, while at the same time assuring the public that the district in which such non-conformity exists will eventually benefit from a more nearly uniform character.

***

52-30
CHANGE OF NON-CONFORMING USE

***

52-38
Special Regulations for Adult Establishments

In all districts, a #non-conforming use# may not be changed, initially or in any subsequent change, to an #adult establishment#, except as provided in Section 32-01 (Special Provisions for Adult Establishments) or Section 42-01 (Special Provisions for Adult Establishments).

***

52-70
TERMINATION    OF    CERTAIN    NON-CONFORMING    USES    AFTER AMORTIZATION

52-71
General Provisions

In specified districts, specific #non-conforming signs#, specific #non-conforming uses# of #land with minor improvements#, specific #non-conforming# objectionable #uses#, certain specific types of #uses# involving open storage or salvage , #non-conforming# #adult establishments#, or certain #non-conforming public parking lots# may be continued

JNR-000030

Page 12 of 15 pages
N 950384 ZRY
Reso. No. 1322 (L.U. No. 713)

for a reasonable period of useful life as set forth in this Chapter, provided that after the expiration of that period such #non-conforming uses# shall terminate in accordance with the provisions of this Chapter.

\*\*\*

52-73
Non-conforming Signs

\*\*\*

52-734
Non-conforming accessory business signs for adult establishments

In all districts, a #non-conforming accessory business sign# for an #adult establishment# shall terminate within one year from the effective date of this amendment or from such later date that such #sign# becomes #non-conforming#, except that such #sign# may be continued for a limited period of time by the Board of Standards and Appeals pursuant to Section 72-40 (Amortization of Certain Adult Establishments and Signs for Adult Establishments).

\*\*\*

52-77
Termination of Adult Establishments

In all districts, a #non-conforming# #adult establishment# shall terminate within one year from the effective date of this amendment or from such later date that the #adult establishment# becomes #non-conforming#, except that such establishment may be continued for a limited period of time by the Board of Standards and Appeals pursuant to Section 72-40 (Amortization of Certain Adult Establishments and Signs for Adult Establishments). However, the provisions of this Section shall not apply to an #adult establishment# subject to the provisions of paragraph (f) of Section 32-01 or 42-01 (Special Provisions for Adult Establishments).

\*\*\*

52-80
REGULATIONS APPLYING TO NON-CONFORMING SIGNS

\*\*\*

0360

Page 13 of 15 pages
N 950384 ZRY
Reso. No. 1322 (L.U. No. 713)


52-82
Non-Conforming Business Signs

Any #non-conforming accessory business sign#, except a #flashing sign# or a #sign# subject to the provisions of Section 52-734 (Non-conforming accessory business signs for adult establishments), may be structurally altered, reconstructed, or replaced in the same location and position, provided that such structural alteration, reconstruction, or replacement does not result in:

(a)    the creation of a new #non-conformity# or an increase in the degree of #non-conformity# of such #sign#;

(b)    an increase in the #surface area# of such #sign#; or

(c)    an increase in the degree of illumination of such #sign#.

***

72-01
General Provisions

The Board of Standards and Appeals (referred to hereinafter as the Board) shall have the power, pursuant to the provisions of the New York City Charter and of this Resolution, after public notice and hearing:

***

(f)    to make such administrative determinations and findings as may be set forth in this Resolution at Sections 15-021 and 15-50 et seq., or pursuant to Section 72-40 (Amortization of Certain Adult Establishments and Signs for Adult Establishments).

***

72-40
AMORTIZATION OF CERTAIN ADULT ESTABLISHMENTS AND SIGNS FOR ADULT ESTABLISHMENTS

Page 14 of 15 pages
N 950384 ZRY
Reso. No. 1322 (L.U. No. 713)

The Board of Standards and Appeals may permit any #non-conforming# #adult establishment# or any #non-conforming accessory business sign# for an #adult establishment# to continue for a limited period of time beyond that provided for in Section 52-734 (Non-conforming accessory business signs for adult establishments) or Section 52-77 (Termination of Adult Establishments), provided that:

(a)     an application is made by the owner of such establishment to the Board of Standards and Appeals at least 120 days prior to the date on which such establishment or #sign# must terminate;

(b)     the Board shall find, in connection with such establishment or #sign#, that:

    (1)    the applicant had made, prior to the #non-conformity#, substantial financial expenditures related to the #non-conformity#; and

    (2)    the applicant has not recovered substantially all of the financial expenditures related to the #non-conformity#; and

    (3)    the period for which such establishment or #sign# may be permitted to continue is the minimum period sufficient for the applicant to recover substantially all of the financial expenditures incurred related to the #non-conformity#.

For the purpose of this Section, "financial expenditures" shall mean the capital outlay made by the applicant to establish the #adult establishment# or #sign#, exclusive of the fair market value of the #building# in which such #use# or #sign# is located and exclusive of any improvements unrelated to the #non-conforming# #adult establishment# or #non-conforming accessory business sign# for #adult establishments#.

***

Page 15 of 15 pages
N 950384 ZRY
Reso. No. 1322 (L.U. No. 713)


Adopted.


Office of the City Clerk, }
The City of New York,   } ss.:

I hereby certify that the foregoing is a true copy of a Resolution passed by The
Council of The City of New York on October 25, 1995, on file in this office.

City Clerk, Clerk of Council

# PROCEEDINGS
## OF THE
## COUNCIL
## OF THE
## CITY OF
## NEW YORK

# VOL. I

## JANUARY 7, 1998
## TO
## JUNE 24, 1998

# CERTIFICATE

CITY OF NEW YORK

OFFICE OF THE CITY CLERK

Pursuant to section forty-eight of the New York City Charter, I hereby certify that this volume was printed under my direction and that the contents thereof are correct and authentic transcripts of the original record of proceedings of the Council on file in this office.

CARLOS CUEVAS

City Clerk, Clerk of the Council



Section forty-eight of the New York City Charter reads in part as follows:

§ 48 * * * The city clerk shall have charge of all the papers and documents of the city, except as are by law committed to the keeping of the several departments or of other officers. He shall keep the record of the proceedings of the council. * * * Copies of all papers duly filed in his office, and transcripts thereof, and of the records of the proceedings of the council and copies of the laws, ordinances and local laws of the city, certified by him under the corporate seal of the city, shall be admissible in evidence in all courts and places in the same manner and for the same purpose as papers or documents similarly authenticated by clerk of the county. * * *

April 8, 1998                                    1126

To modify signage regulations in the Zoning Resolution by removing or reformatting most of the exemptions contained in the definition of "sign" and replace them with a single exemption; to clarify the definition of "advertising sign" to be only signs referencing commercial activity conducted on other zoning lots; to delete the definition of "business signs" as necessary.

Accordingly, Your Committee recommends its adoption.

In connection herewith, Council Members Eisland and McCaffrey offered the following resolution:

Res. No. 208

**Resolution approving the decision of the City Planning Commission on Application No. N 980135 ZRY, amendments to the text of the Zoning Resolution concerning signs (L.U. No. 91).**

By Council Members Eisland and McCaffrey

**Whereas,** the City Planning Commission filed with the Council on February 26, 1998 its decision dated February 18, 1998 (the "Decision"), on the application submitted by the Department of City Planning, pursuant to Section 201 of the New York City Charter, for  amendments to the text of the Zoning Resolution (Application No. N 980135 ZRY) (the "Application");

**Whereas,** the Decision is subject to review and action by the Council pursuant to Section 197-d(b)(1) of the City Charter;

**Whereas,** the Council held a public hearing on the Decision and Application on March 16 and April 1, 1998;

**Whereas,** the Council has considered the land use implications and other policy issues relating to the Decision and Application; and

**Whereas,** the Council has considered the relevant environmental issues and the Negative Declaration, issued on October 20, 1997 (CEQR No. 98DCP022Y);

**Resolved:**

The Council finds that the action described herein will have no significant effect on the environment;

Pursuant to Sections 197-d and 200 of the City Charter and on the basis of the Decision and Application the Council approves the Decision; and

The Zoning Resolution of the City of New York, effective as of December 15, 1961, and as subsequently amended, is further amended as follows:

JNR-000037

1127                                      April 8, 1998

Matter in *italics* is new, to be added;

Matter in ~~strikeout~~ is old, to be deleted;

Matter within #   # is defined in Section 12-10;

* * * indicates where unchanged text appears in the Zoning Resolution

Text not in *italics* or strikeout is to be readopted

12-10
DEFINITIONS
                                    * * *

Advertising sign—see Sign, advertising

                                    * * *

~~Business sign—see Sign, business~~

                                    * * *

Flashing sign—see Sign, flashing

                                    * * *

Illuminated sign—see Sign, illuminated

                                    * * *

Sign

   A "sign" is any writing (including letter, word, or numeral), pictorial representation (including illustration or decoration), emblem (including device, symbol, or trademark), flag, (including banner or pennant), or any other figure of similar character, that:

(a)  is a structure or any part thereof, or is attached to, painted on, or in any other manner represented on a #building or other structure#;

(b)  is used to announce, direct attention to, or advertise; and

(c)  is visible from outside a #building#.  A #sign# shall include writing, representation, or other figures of similar character, within a #building#, only when illuminated and located in a window.

   However, non-#illuminated# signs containing solely non-commercial copy with a total #surface area# not exceeding 12 square feet on any #zoning lot#, including memorial tablets or signs displayed for the direction or convenience of the public, ~~The following~~ shall not be subject to the provisions of this Resolution~~:~~.

~~(1)  Signs of a duly constituted governmental body, including traffic or similar regulatory devices, legal notices, or warnings at railroad crossings;~~

~~(2)  Flags or emblems of a political, civic, philanthropic, educational or religious organization;~~

April 8, 1998                              1128

~~(3)  Temporary signs announcing a campaign, drive, or event of the above organizations;~~

~~(4)  Memorial signs or tablets;~~

~~(5)  Signs denoting architect, engineer, or contractor when placed on construction sites and not exceeding 25 square feet in area;~~

~~(6)  Signs required to be maintained by law or governmental order, rule, or regulation, with a total #surface area# not exceeding ten square feet on any #zoning lot#;~~

~~(7)  Small signs displayed for the direction or convenience of the public, including signs that identify rest rooms, freight entrances, or the like, with a total #surface area# not exceeding five square feet on any #zoning lot#.~~

### Sign, advertising

An "advertising sign" is a #sign# that directs attention to a business, profession, commodity, service or entertainment conducted, sold, or offered elsewhere than upon the same #zoning lot# and is not #accessory# to a #use# located on the #zoning lot#.

~~Sign, business (12/15/61)~~

~~A "business sign" is an #accessory sign# that directs attention to a profession, business, commodity, service or entertainment conducted, sold, or offered upon the same #zoning lot#.~~

* * *

### Sign, flashing (12/15/61)

A "flashing sign" is any #illuminated sign#, whether stationary, revolving or rotating, that exhibits changing light or color effects, provided that revolving or rotating #signs# that exhibit no changing light or color effects other than those produced by revolution or rotation, shall be deemed #flashing signs# only if they exhibit sudden or marked changes in such light or color effects.

#Illuminated signs# that indicate the time, temperature, weather or other similar information shall not be considered #flashing signs#, provided that:

(a)  the total #surface area# of such #sign# is not greater than 16 square feet;

(b)  the vertical dimension of any letter or number is not greater than 24 inches; and

(c)  color or intensity of light is constant except for periodic changes in the information displayed, which occur not more frequently than once every minute.

### Sign, illuminated (12/15/61)

An "illuminated sign" is a #sign# designed to give forth any artificial light or reflect such light from an artificial source.

1129                                                                          April 8, 1998

Sign, surface area of—see Surface area (of a sign)

Sign with indirect illumination (12/15/61)

A "sign with indirect illumination" is any #illuminated# non-#flashing sign# whose illumination is derived entirely from an external artificial source and is so arranged that no direct rays of light are projected from such artificial source into #residences# or #streets#.

* * *

Surface area (of a sign)

The "surface area" of a #sign# shall be the entire area within a single continuous perimeter enclosing the extreme limits of writing, representation, emblem, or any figure of similar character, together with any material or color forming an integral part of the display or used to differentiate such #sign# from the background against which it is placed.  In any event, the supports or uprights on which such #sign# is supported shall not be included in determining the #surface area# of a #sign#.

When two #signs# of the same shape and dimensions are mounted or displayed back to back and parallel on a single free-standing structural frame, only one of such #signs# shall be included in computing the total #surface area# of the two #signs#.

When a double-faced #sign# projects from the wall of a #building#, and its two sides are located not more than 28 inches apart at the widest point and not more than 18 inches apart at the narrowest point, and display identical writing or other representation, the #surface area# shall include only one of the sides.  Any additional side of a multi-faced #sign# shall be considered as a separate #sign# for purposes of computing the total #surface area# of the #sign#.

* * *

22-30
SIGN REGULATIONS

* * *

22-32
Permitted Non-Illuminated Accessory Signs

R1 R2 R3 R4 R5 R6 R7 R8 R9 R10

In all districts, as indicated, non-#illuminated accessory ~~business~~ signs# are permitted as set forth in this Section, subject to the provisions of Section 22-34 (Additional Regulations).

* * *

22-33
Signs on Lots Containing Certain Community Facilities

April 8, 1998                                    1130

22-331

Permitted ~~I~~illuminated ~~A~~accessory ~~S~~signs for ~~H~~hospitals and ~~R~~related ~~F~~facilities

R1 R2 R3 R4 R5 R6 R7 R8 R9 R10

In all districts, as indicated, for hospitals and related facilities #illuminated# non-#flashing accessory ~~business~~ signs# are permitted in all districts, subject to Section 22-34 (Additional Regulations). Any number of #illuminated# non-#flashing# identification or directional #signs# are permitted, provided that the total #surface area# in square feet of said #illuminated signs# or the combined total #surface area# in square feet of the #illuminated# and non-#illuminated# identification or directional #signs# does not exceed 25 square feet on any one #street# frontage or 15 percent of such #street# frontage in feet, whichever is less, and provided further that the Commissioner of Buildings determines that such #signs# are so located as to cause a minimum amount of light to be projected on to abutting or adjacent #residences#. In addition to #illuminated# or non-#illuminated accessory ~~business~~ signs#, one illuminated non-flashing directory or bulletin board or combination thereof is permitted in lieu of a non-illuminated directory or bulletin board or combination thereof provided that the total #sign# area does not exceed 50 square feet and provided further that the Commissioner of Buildings determines that such #sign# is so located as to minimize the amount of light projected on the abutting or adjacent #residences#.

22-332

Flags, banners or pennants on lots containing certain community facilities

R1 R2 R3 R4 R5 R6 R7 R8 R9 R10

In all districts, as indicated, flags, banners or pennants other than those that are #advertising signs#, located on any #zoning lot# used primarily for #community facility uses# of a civic, philanthropic, educational or religious nature, are permitted without limitation.

*   *   *

22-35

Advertising Signs on Waterways

No moving or stationary "advertising sign" shall be displayed on a vessel plying waterways adjacent to #Residence Districts# and within view from an arterial highway. For the purposes of this Section, arterial highways shall include all highways which are shown on the Master Plan of Arterial Highways and Major Streets as "principal routes," "parkways," or "toll crossings" and which have been designated by the City Planning Commission as arterial highways to which the provisions of this Section shall apply.

For the purposes of this Section "advertising sign" is a sign which directs attention to a profession, business, commodity, service or entertainment conducted, sold, or offered elsewhere than upon the premises of the vessel~~, and shall not include signs, symbols or flags identifying the vessel, its owners or operators~~ and is not #accessory# to a #use# on such vessel.

*   *   *

JNR-000041                                          1898

Case 1:02-cv-08333-LJL   Document 147-1   Filed 05/09/22   Page 26 of 137

32-421
Limitation on floors occupied by non-residential uses

C1 C2 C3

In the districts indicated, in any #building#, or portion of a #building# occupied on one or more of its upper #stories# by #residential uses# listed in Use Group 1 or 2 or by #community facility uses# listed in Use Group 3 or 4, no non-#residential uses# listed in Use Group 6, 7, 8, 9 or 14 shall be located above the level of the first #story# ceiling, provided, however, that permitted #business# signs, other than #advertising signs#, accessory# to such non-#residential uses# may extend to a maximum height of two feet above the level of the finished floor of the second #story#, but in no event higher than six inches below the lowest window sill of the second #story#. In any other #building#, or portion thereof, not more than two #stories# may be occupied by non-#residential uses# listed in Use Group 6A, 6B, 6C, 6F, 7, 8, 9 or 14. Non-#residential uses# permitted by the applicable district regulations may occupy two #stories# in any new #development# in C1 or C2 Districts mapped within R9 or R10 Districts or in C1-8, C1-9, C2-7 or C2-8 Districts.

32-422
Location of floors occupied by non-residential uses

C4 C5 C6

In the districts indicated, in any #building#, or portion of a #building# occupied by #residential uses# listed in Use Group 1 or 2, non-#residential uses# listed in Use Group 5, 6, 7, 8, 9, 10, 11, 12, 13, 14, 15 or 16 may be located only on a #story# below the lowest #story# occupied in whole or in part by such #residential uses#, except that this limitation shall not preclude the location of any such non-#residential use# below the level of the first #story# ceiling, or the extension of a permitted #business# sign, other than #advertising sign#, accessory# to such non-#residential use# to a maximum height of two feet above the level of the finished floor of the second #story#, but in no event higher than six inches below the lowest window sill on the second #story#.

* * *

32-60
SIGN REGULATIONS

* * *

32-62
Permitted Accessory Business Signs

C1 C2 C3 C4 C5 C6 C7 C8

In all districts, as indicated, #accessory business signs# other than #advertising signs# are permitted subject to the provisions of the following Sections:

Section 32-64  (Surface Area and Illumination Provisions)

April 8, 1998                                    1132

Section 32-65  (Permitted Projection or Height of Signs)

Section 32-67  (Special Provisions Applying along District Boundaries)

Section 32-68  (Permitted Signs on Residential Buildings)~~,~~

Section 32-69  (Additional ~~Accessory Business~~ Sign Regulations for Adult Estab-
lishments)

However, notwithstanding any provision of this Section, flags, banners or pennants
other than those that are #advertising signs#, located on any #zoning lot# used primarily
for #community facility uses# of a civic, philanthropic, educational or religious nature,
are permitted in all districts, as indicated, without limitation.

\* \* \*

32-64
Surface Area and Illumination Provisions

C1 C2 C3 C4 C5 C6 C7 C8

In all districts, as indicated, all permitted #signs# shall be subject to the restrictions
on #surface area# and illumination as set forth in this Section, provided that the follow-
ing #signs# shall be exempted from such restrictions on #surface area#:

#Illuminated# non-#flashing ~~business~~ signs# other than #advertising signs# located
in a window within a #building#, with a total #surface area# not exceeding eight
square feet on any #zoning lot# and limited to not more than three such #signs# in
any window.

For the purpose of determining permitted #surface area# of #signs# for #zoning lots#
occupied by more than one establishment, any portion of such #zoning lot# occupied by
a #building# or part of a #building# accommodating one or more establishments on the
ground floor may be considered as a separate #zoning lot#.

\* \* \*

32-645
Illuminated or flashing signs in C8 Districts

C8

In the district indicated, #illuminated# or #flashing ~~business~~ signs#, other than
#advertising signs#, and ~~or~~ #advertising signs# with indirect illumination , are permit-
ted, provided that the total #surface area# of all such #signs# (in square feet) shall not
exceed five times the #street# frontage of the #zoning lot# (in feet) and that the #surface
area# of each #sign# shall not exceed 500 square feet.

\* \* \*

JNR-000043

1133                                                April 8, 1998

**32-651**
**Permitted projection in C6-5, C6-7 or C7 Districts**

C6-5 C6-7 C7

In the districts indicated, except as otherwise provided in Section 32-653 (Additional regulations for projecting ~~business~~ signs), no permitted #sign# shall project across a #street line# more than eight feet.

**32-652**
**Permitted projection in all other Commercial Districts**

C1 C2 C3 C4 C5 C6-1 C6-2 C6-3 C6-4 C6-6 C6-8 C6-9 C8

In the districts indicated, except as otherwise provided in Section 32-653 (Additional regulations for projecting ~~business~~ signs), no permitted #sign# shall project across a #street line# more than 18 inches for double- or multi-faceted #signs# or 12 inches for all other #signs#.

**32-653**
**Additional regulations for projecting ~~business~~ signs**

C1 C2 C3 C4 C5 C6 C7 C8

In all districts, as indicated, permitted #~~accessory business~~ signs# other than #advertising signs# may be displayed as follows:

(a) Non-#illuminated signs# may be displayed on awnings or canopies permitted by Section 27-313(b) of the Administrative Code, with a #surface area# not exceeding 12 square feet and with the height of letters not exceeding 12 inches . ~~, provided that~~ Any commercial copy on such #signs# shall be limited to identification of the name or address of the #building# or an establishment contained therein.

(b) #Signs# may be displayed on marquees permitted by Section 27-313(b) of the Administrative Code, provided that such #signs# conform to the provisions of Section 26-182 of the Administrative Code, and provided further that no such #sign# in a district other than a C6-5, C6-7 or C-7 District shall project more than 48 inches above nor more than 12 inches below such marquee.

\* \* \*

**32-661**
**Advertising signs on waterways**

No moving or stationary  # advertising sign #  shall be displayed on a vessel plying waterways adjacent to #Commercial Districts# and within view from an arterial highway. For the purposes of this Section, arterial highways shall include all highways which are shown on the Master Plan of Arterial Highways and Major Streets as "principal routes," "parkways," or "toll crossings" and which have been designated by the City Planning Commission as arterial highways to which the provisions of this Section shall apply.

JNR-000044

April 8, 1998                                    1134

For the purposes of this Section #advertising sign# is a #sign# which directs attention to a profession, business, commodity, service or entertainment conducted, sold, or offered elsewhere than upon the premises of the vessel~~, and shall not include signs, symbols or flags identifying the vessel, its owner or operators~~ and is not #accessory# to a #use# on such vessel.

32-67
Special Provisions Applying along District Boundaries

C2 C3 C4 C5 C6 C7 C8

In the districts indicated, and within 100 feet of the #street line# of any #street# or portion thereof in which the boundary of an adjoining #Residence District# is located, or which adjoins a #public park# of one-half acre or more, ~~all #signs#~~ no #advertising sign# which faces at an angle of less than 165 degrees away from such #Residence District# or park boundary shall be permitted and all other #signs# facing at less than such an angle ~~limited to #accessory business signs# and~~ shall conform with all the #sign# regulations applicable in C1 Districts as set forth in Sections 32-61 to 32-68, inclusive, relating to Sign Regulations.

32-68
Permitted Signs on Residential or Mixed Buildings

C1 C2 C3 C4 C5 C6

In the districts indicated, any #use# listed in Use Group 1 or 2 shall conform to the #sign# regulations for #Residence Districts# set forth in Sections 22-31 to 22-34, inclusive. In #residential# or #mixed buildings#, #residential sign# regulations shall apply to a #building# or part of a #building# used for #residential# purposes.

Where non-#residential uses# are permitted to occupy two floors of the #building#, all #signs accessory# to non-#residential uses# located on the second floor shall be non-#illuminated ~~business~~ signs#, and shall be located below the level of the finished floor of the third #story#.

32-69
Additional ~~Accessory Business~~ Sign Regulations for Adult Establishments

C6-4 C6-5 C6-6 C6-7 C6-8 C6-9 C7 C8

~~#Accessory business signs#~~ #Signs#, other than #advertising signs#, for #adult establishments# are permitted only as set forth in this Section and are limited to locations in the districts indicated.

All permitted ~~#accessory business~~ signs#, other than #advertising signs#, for #adult establishments# shall conform with all the #sign# regulations applicable in C1 Districts as set forth in this Chapter, except that the provisions of Section 32-64 (Surface Area and Illumination Provisions) shall not apply. In lieu thereof, the maximum #surface area# of all ~~#accessory business~~ signs#, other than #advertising signs#, for #adult establishments#

shall not exceed, in the aggregate, three times the #street# frontage of the #zoning lot#, but in no event more than 150 square feet per establishment, of which no more than 50 square feet may be #illuminated# non-#flashing signs#.

\* \* \*

36-56
Screening

C1 C2 C3 C4 C5 C6 C7 C8

\* \* \*

(d)  have no #signs# hung or attached thereto other than those permitted in Sections 32-62 (Permitted ~~Accessory Business~~ Signs) or 32-63 (Permitted Advertising Signs).

\* \* \*

36-685
Screening

C1 C2 C3 C4 C5 C6 C7 C8

\* \* \*

(d)  shall have no #signs# hung or attached thereto other than those permitted in Sections 32-62 (Permitted ~~Accessory Business~~ Signs) or 32-63 (Permitted Advertising Signs).

\* \* \*

37-011
Applicability of Section 37-01

\* \* \*

An application to the Department of Buildings for a permit respecting any new #development# shall include a plan and an elevation drawn to a scale of at least one sixteenth inch to a foot of the new #building# and #buildings# on #contiguous lots# or #contiguous blocks# showing ~~accessory business~~ signs#, other than #advertising signs#, #arcades#, #street wall# articulation, curb cuts, #street# trees, sidewalk paving, central refuse storage area and such other necessary information as may be required by the Commissioner of Buildings.

\* \* \*

37-014
Modifications to applicability of Article II, Chapter 6

In C1-8, C1-9, C2-7, C2-8, C4-6, C5-1, C5-2, C5-4, C6-3, C6-4, C6-5 and C6-8 Districts, or C1 or C2 Districts mapped within R9 or R10 Districts, the regulations of Article II, Chapter 6, applicable to #residential developments# or #developments# occupied by a #predominantly residential use# are modified by the provisions of Sections 37-015

April 8, 1998                                    1136

(Retail continuity) and 37-016 (~~Accessory business signs~~Sign regulations) and 37-017 (Street wall articulation).

\* \* \*

37-016
~~Accessory business signs~~Sign regulations

In addition to the applicable district regulations in C1-8, C1-9, C2-7, C2-8, C4-6 Districts and C1 or C2 Districts mapped within R9 or R10 Districts, all #~~accessory business~~ signs#, other than #advertising signs# and ~~other than~~ window #signs#, shall be located in a horizontal band not higher than 3 feet, the base of which is located not higher than 17 feet above #curb level#. Where there is a grade change of at least 1.5 feet in 100 along the portion of the #street# upon which the #development# fronts, such signage band may be staggered along such #street#.

\* \* \*

42-50
SIGN REGULATIONS

\* \* \*

42-52
Permitted ~~Accessory Business Signs or Advertising~~ Signs

M1 M2 M3

In all districts, as indicated, #~~accessory business~~ signs# ~~or #advertising signs#~~ are permitted with no restriction on size, illumination or otherwise, except as otherwise provided in Section 42-53 (Additional Regulations for Advertising Signs), 42-54 (Special Provisions Applying along District Boundaries) and subject to the provisions of Section 42-55 (Additional ~~Accessory Business~~ Sign Regulations for Adult Establishments).

\* \* \*

42-53
Additional Regulations for Advertising Signs

M1 M2 M3

In all districts, as indicated no #advertising sign# shall be located, nor shall an existing #advertising sign# be structurally altered, relocated, or reconstructed, within 200 feet of an arterial highway or of a #public park# with an area of one-half acre or more, if such #advertising sign# is within view of such arterial highway or #public park#. For the purposes of this Section, arterial highways shall include all highways which are shown on the Master Plan of Arterial Highways and Major Streets, as "principal routes," "parkways," or "toll crossings," and which have been designated by the City Planning Commission as arterial highways to which the provisions of this Section shall apply. Beyond 200 feet from such arterial highway or #public park#, an #advertising sign# shall be located at a distance of at least as many linear feet therefrom as there are square feet of

#surface area# on the face of such #sign#.  However, in all districts as indicated, the more restrictive of the following shall apply:

(a) Any #advertising sign# erected, structurally altered, relocated or reconstructed prior to June 1, 1968, within 660 feet of the nearest edge of the right-of-way of an arterial highway, whose message is visible from such arterial highway, shall have legal #non-conforming use# status pursuant to Section 52-83, to the extent of its size existing on May 31, 1968.

(b) Any #advertising sign# erected, structurally altered, relocated or reconstructed between June 1, 1968 and November 1, 1979, within 660 feet of the nearest edge of the right-of-way of an arterial highway, whose message is visible from such arterial highway, and whose size does not exceed 1200 square feet in #surface area# on its face, 30 feet in height, and 60 feet in length, shall have legal #non-conforming use# status pursuant to Section 52-83, to the extent of its size existing on November 1, 1979.  All #advertising signs# not in conformance with the standards set forth herein shall terminate.

42-531
Advertising signs on waterways

No moving or stationary #advertising sign# shall be displayed on a vessel plying waterways adjacent to #Manufacturing Districts# and within view from an arterial highway.  For the purposes of this Section, arterial highways shall include all highways which are shown on the Master Plan of Arterial Highways and Major Streets as "principal routes," "parkways," or "toll crossings" and which have been designated by the City Planning Commission as arterial highways to which the provisions of this Section shall apply.

For the purposes of this Section, #advertising sign# is a #sign# which directs attention to a profession, business, commodity, service or entertainment conducted, sold, or offered elsewhere than upon the premises of the vessel, and shall not include signs, symbols or flags identifying the vessel, its owners or operators and is not #accessory# to a #use# on such vessel.

42-54
Special Provisions Applying along District Boundaries

42-541
Restrictions along district boundary located in a street

M1 M2 M3

In all districts, as indicated, and within 100 feet of the #street line# of any #street# or portion thereof in which the boundary of an adjoining #Residence District# is located, or which adjoins a #public park# of one-half acre or more, #advertising signs# which face at an angle of less than 165 degrees away from such #Residence District# or park boundary shall not be permitted and all other #signs# facing at less than such an angle be lim-

April 8, 1998                         1138

~~ited to #accessory business signs# and~~ shall conform with all the #sign# regulations applicable in C1 Districts as set forth in Sections 32-61 to 32-68, inclusive, relating to Sign Regulations.

\* \* \*

42-55
Additional ~~Accessory Business~~ Sign Regulations for Adult Establishments

M1 M2 M3

In all districts, as indicated, all permitted #~~accessory business~~ signs#, other than #advertising signs#, for #adult establishments# shall conform with the provisions of this Chapter, except that the maximum #surface area# of all #~~accessory business~~ signs#, other than #advertising signs#, for #adult establishments# shall not exceed, in the aggregate, three times the #street# frontage of the #zoning lot#, but in no event more than 150 square feet per establishment, of which no more than 50 square feet may be #illuminated# and no portion thereof may be #flashing#.

No #~~accessory business~~ signs# for #adult establishments# shall be permitted on the roof of any #building#, nor shall such #signs# extend above #curb level# at a height greater than 25 feet.

\* \* \*

44-45
Screening

M1 M2 M3

\* \* \*

(d)  shall have no #signs# hung or attached thereto other than those permitted in Section 42-52 (Permitted ~~Accessory Business Signs or Advertising~~ Signs).

\* \* \*

44-585
Screening

M1 M2 M3

\* \* \*

(3)  shall have no #signs# hung or attached thereto other than those permitted in Section 42-52 (Permitted ~~Accessory Business Signs or Advertising~~ Signs).

\* \* \*

52-73
Non-Conforming Signs

\* \* \*

1139                                                      April 8, 1998

52-733
Advertising signs on waterways

On all waterways adjacent to #Residence#, #Commercial# or #Manufacturing Districts# and within view from an arterial highway, a #non-conforming advertising sign# may be continued for one year after July 23, 1964 if already in operation on April 15, 1964; provided that after the expiration of this period such #non-conforming advertising sign# shall terminate.

For the purposes of this Section #advertising sign# is a #sign# which directs attention to a profession, business, commodity, service or entertainment conducted, sold, or offered elsewhere than upon the premises of the vessel, ~~and shall not include signs, symbols or flags identifying the vessel, its owners or operators~~ and is not #accessory# to a #use# on such vessel.

52-734
Non-conforming ~~accessory business~~ signs for adult establishments

In all districts, a #non-conforming ~~accessory business~~ sign# for an #adult establishment# shall terminate within one year from October 25, 1995 or from such later date that such #sign# becomes #non-conforming#, except that such #sign# may be continued for a limited period of time by the Board of Standards and Appeals pursuant to Section 72-40 (AMORTIZATION OF CERTAIN ADULT ESTABLISHMENTS AND SIGNS FOR ADULT ESTABLISHMENTS).

* * *

52-80
REGULATIONS APPLYING TO NON-CONFORMING SIGNS

52-81
General Provisions

A #non-conforming sign# shall be subject to all the provisions of this Chapter relating to #non-conforming uses#, except as modified by the provisions of Section 52-82 (Non-Conforming ~~Business~~ Signs) and Section 52-83 (Non-Conforming Advertising Signs).

A change in the subject matter represented on a #sign# shall not be considered a change of #use#.

52-82
Non-Conforming ~~Business~~ Signs other than #Advertising Signs#

Any #non-conforming ~~accessory business~~ sign#, except a #flashing sign# or a #sign# subject to the provisions of Section 52-734 (Non-conforming ~~accessory business~~ signs for adult establishments), and except any #advertising sign# may be structurally altered, reconstructed, or replaced in the same location and position, provided that such structural alteration, reconstruction, or replacement does not result in:

April 8, 1998                                    1140

(a) the creation of a new #non-conformity# or an increase in the degree of #non-conformity# of such #sign#;

(b) an increase in the #surface area# of such #sign#; or

(c) an increase in the degree of illumination of such #sign#.

However, any structural alteration, reconstruction or replacement of a #non-conforming sign accessory# to a #non-conforming use# shall be subject to the provisions of Section 52-31 (General Provisions).

To the extent that such structural alteration, reconstruction, or replacement of #non-conforming ~~accessory business~~ signs# is permitted under the provisions of this Section, the provisions of the following Sections are modified:

Section 52-22 (Structural Alterations)

Sections 52-51 to 52-55, inclusive, relating to Damage or Destruction.

* * *

72-40
AMORTIZATION OF CERTAIN ADULT ESTABLISHMENTS AND SIGNS FOR
ADULT ESTABLISHMENTS

The Board of Standards and Appeals may permit any #non-conforming adult establishment# or any #non-conforming ~~accessory business~~ sign#, other than #advertising sign#, for an #adult establishment# to continue for a limited period of time beyond that provided for in Section 52-734 (Non-conforming accessory business signs for adult establishments) or Section 52-77 (Termination of Adult Establishments), provided that:

* * *

73-211
Location in C2, C4, C6 or C7 Districts

* * *

(5) that #~~accessory business~~ signs#, other than #advertising signs#, shall be subject to the applicable district #sign# regulations, provided that:

* * *

73-241
In C1-1, C1-2, C1-3, C1-4, C2-1, C2-2, C2-3, C2-4, C3, C5, M1-5A or M1-5B Districts

* * *

The Board may modify the regulations relating to #~~accessory business~~ signs# in C3 Districts to permit a maximum total #surface area# of 50 square feet of non-#illuminat-

1141                                                                      April 8, 1998

ed# or #illuminated# non-#flashing signs#, provided that any #illuminated sign# shall not be less than 150 feet from the boundary of any #Residence District#. The Board shall prescribe appropriate controls to minimize adverse effects on the character of the surrounding area, including, but not limited to, location of entrances and operable windows; provision of sound-lock vestibules; specification of acoustical insulation; maximum size of establishment; kinds of amplification of musical instruments or voices; shielding of floodlights; adequate screening; curb cuts or parking.

73-242
In C3 Districts

* * *

The Board may modify the regulations relating to #accessory business signs# in C3 Districts to permit a maximum total #surface area# of 50 square feet of non-#illuminated# or #illuminated# non-#flashing signs#, provided that any #illuminated sign# shall not be less than 150 feet from the boundary of any #Residence District#.

* * *

73-25
Boatels

* * *

The Board may modify the regulations relating to #accessory business signs# in C3 Districts to permit a maximum total #surface area# of 50 square feet of non-#illuminated# or #illuminated# non-#flashing signs# on each of not more than three #street# or water frontages.

* * *

73-35
Amusement Arcades

* * *

(c) that the #use# is so located within the shopping center that no entrance and no #accessory business# sign# fronts upon or faces a #street#.

* * *

74-47
Amusement Arcades

(c) the #use# is so located within the #building# that no entrance nor any #accessory business# sign# of the amusement arcade fronts upon or faces a #street#.

* * *

April 8, 1998                                    1142

74-744
Modification of use regulations

\* \* \*

(c)  Modifications of #~~accessory business~~ sign# regulations

In C6 Districts, the City Planning Commission may modify the regulations of Section 32-65 (Permitted Projection or Height of Signs) for #~~accessory business~~ signs#, other than #advertising signs#, on a non- #residential building#, provided that such #~~accessory~~ signs# will not be incompatible with the character of the surrounding area.

\* \* \*

81-141
Special sign regulations

\* \* \*

(b)  In a C5-3 District within the Fifth Avenue Subdistrict, the Chairperson of the City Planning Commission may, by certification, modify the requirements of Section 32-655 (Height of signs in all other Commercial Districts), to allow a single non-#illuminated ~~business~~ sign#, other than #advertising sign#, per #building# to be located at a height between 25 and 50 feet above #curb level# provided that the permitted #sign# shall:

\* \* \*

82-24
Supplementary Sign Regulations

No permitted #~~business~~ sign# shall extend above #curb level# at a height greater than 20 feet or obstruct an #arcade#.

\* \* \*

93-34
Accessory ~~Business~~ Signs

All #~~accessory business~~ signs#, other than #advertising signs# and ~~other than~~ window #signs#, shall be located in a horizontal band not higher than two feet, the base of which is located not less than 13 feet nor more than 16 feet above #curb level#.  Where there is a grade change of at least 1.5 feet in 100 feet along the portion of the #street# upon which the #development# fronts, such signage band may be staggered along such #street#.

\* \* \*

1143                                                                April 8, 1998

94-066
Additional sign regulations

Where #illuminated signs# are permitted by the underlying district regulations, such #signs# shall have only indirect illumination. Where #business signs#, other than #advertising signs#, are permitted by the underlying district regulations, such #signs# shall not extend above the roof level of any #building or other structure# in the Special District.

* * *

97-112
Sign regulations

All #signs# for Use Group M #manufacturing uses# within the R(M) #Special Northside Mixed Use District# shall be limited to #accessory business signs#, other than #advertising signs#, and shall conform to regulations for C1 Districts as set forth in Sections 32-61 to 32-68 (Sign Regulations) inclusive, in this Resolution, except that no #illuminated signs# shall be permitted in the R(M) #Special Northside Mixed Use District#. In addition, no #sign# shall extend above the floor level of the second #story# above ground.

* * *

108-112
Sign regulations

All #signs# for #manufacturing# or #commercial uses# within the #Special Franklin Street Mixed Use District# shall be limited to #accessory business signs#, other than #advertising signs#, and shall conform to regulations for C1 Districts as set forth in Section 32-61 to 32-68 (Sign Regulations), inclusive, in this Resolution, except that no #illuminated signs# shall be permitted in the #Special Franklin Street Mixed Use District#. In addition, no #sign# shall extend above the floor level of the second #story# above ground.

* * *

109-24
Sign Regulations

In addition to the underlying district #sign# regulations, the following regulations shall apply to all #signs#:

(a)  #accessory business signs# may not occupy more than 25 percent of the total area of the storefront measured from #curb level# to 10 feet above #curb level#;

* * *

(c)  #accessory business signs# may not cover columns, cornices or sills.

* * *

1911

April 8, 1998                                        1144

112-00
GENERAL PURPOSES

\* \* \*

(c)  to maintain and protect the environmental quality and "village" character of City
     Island Avenue by imposing special controls on building setbacks and ~~accessory busi-~~
     ~~ness~~ signs; and

\* \* \*

112-123
Screening requirements for parking facilities accessory to commercial uses

\* \* \*

(c)  shall have no #signs# hung or attached thereto other than those permitted in Section
     32-62 (Permitted ~~Accessory Business~~ Signs), Section 32-63 (Permitted Advertising
     Signs) or Section 42-52 (Permitted ~~Accessory Business~~ Signs or Advertising Signs).

\* \* \*

115-046
Permitted projection of signs

Except as otherwise permitted in Section 32-653 (Additional regulations for project-
ing ~~business~~ signs), no permitted #sign# shall project across a #street line# more than 12
inches.  Double or multifaced #signs# are not permitted.

\* \* \*

117-423
~~Accessory business s~~Sign regulations

\* \* \*

118-12
Sign Regulations

\* \* \*

#Signs# on #street walls# fronting all other #streets# within the Special District
shall be subject to the provisions of Section 37-016 (~~Accessory business signs~~Sign regu-
lations).

\* \* \*

121-20
SIGN REGULATIONS

The following provisions apply on #wide streets# within the #Special Garment Cen-
ter District#:

(a)  no #accessory business#sign# or #advertising sign# shall project across the #street line# of a #wide street# more than 18 inches for double or multi-faced #signs# or 12 inches for other #signs#;

\* \* \*

122-20
SPECIAL SIGN REGULATIONS

In order to enhance the visual quality of the Special District, the applicable #sign# regulations of the underlying districts are modified as follows:

(a)  Within the Limited Commercial Areas, only one #accessory business# sign#, other than an #advertising sign#, with a surface area not exceeding 12 square feet shall be permitted per #commercial use#. #Accessory business# Such signs# shall be located in a #sign band#, on the flap of a canopy, or as allowed under Section 122-20(d). The height of an #accessory business# such #signs# shall be not more than 24 inches and the letter sizes shall be restricted to a height of 12 inches. Except as provided in Section 122-20(d), all such #signs# may not project from the vertical surface of a #building# more than 18 inches.

(b)  Within the Commercial Extension Areas, no #accessory business# signs# and no #display windows# shall be permitted on a #building or other structure# within 50 feet of the Grand Concourse. #Commercial uses# which are located on a cross-street beyond a distance of 50 feet from the Grand Concourse #street line#, shall comply with the #sign# regulations applicable to the underlying #Commercial District#.

(c)  On Commercial Infill Sites, the maximum surface area to be occupied by an #accessory business# sign#, other than an #advertising sign#, shall be three square feet for every five feet of store frontage or 12 square feet, whichever is greater. #Accessory business# Such #signs# shall be located in a #sign band# and/or on the flap of a canopy, or as allowed under Section 122-20(d). On portions of Commercial Infill Sites more than 50 feet from the Grand Concourse, the signage regulations of a C1 District shall apply.

(d)  Except in C1 Districts, no #sign# may be located so as to obscure any decorative lintel, cornice or other architectural detail. In the event that compliance with this requirement does not provide adequate surface area for the allowable #accessory business# sign# as defined in Section 122-20(a), a projecting #sign# may be permitted by the Commissioner of Buildings provided that no such #sign# shall project from the vertical surface of a #building# more than 18 inches.

JUNE M. EISLAND, Chairperson; MARY PINKETT, ARCHIE SPIGNER, HERBERT E. BERMAN, SHELDON S. LEFFLER, NOACH DEAR, JEROME X. O'DONOVAN, PRISCILLA A. WOOTEN, WALTER L. McCAFFREY, THOMAS K. DUANE, JOHN D. SABINI, ADOLPHO CARRION, LAWRENCE A. WARDEN, BILL PERKINS, MICHAEL J. ABEL—April 2, 1998

On motion of the Speaker (Council Member Vallone), and adopted, the foregoing matter was coupled as a General Order for the day. (See ROLL CALL ON GENERAL ORDERS FOR THE DAY.)

662

**THE COUNCIL OF THE CITY OF NEW YORK**
**RESOLUTION NO. 2096**

Resolution approving the decision of the City Planning Commission on Application No. N 010508 ZRY, an amendment to the text of the Zoning Resolution regarding adult establishments (L.U. No. 1112).

**By Council Members Eisland and McCaffrey**

WHEREAS, the City Planning Commission filed with the Council on August 16, 2001 its decision dated August 8, 2001 (the "Decision"), on the application submitted by the Department of City Planning, pursuant to Section 201 of the New York City Charter, for an amendment to the text of the Zoning Resolution (Application No. N 010508 ZRY) (the "Application");

WHEREAS, the Decision is subject to review and action by the Council pursuant to Section 197-d(b)(1) of the City Charter;

WHEREAS, upon due notice, the Council held a public hearing on the Decision and Application on October 1, 2001;

WHEREAS, the Council has considered the land use implications and other policy issues relating to the Decision and Application; and

WHEREAS, the Council has considered the relevant environmental issues and the Negative Declaration, issued on March 26, 2001 (CEQR No. 01DCP054Y);

RESOLVED:

The Council finds that the action described herein will have no significant effect on the environment;

Pursuant to Sections 197-d and 200 of the City Charter and on the basis of the Decision and Application the Council approves the Decision; and

Page 2 of 18
N 010508 ZRY
Reso. No. 2096 (L.U. No. 1112)

     The Zoning Resolution of the City of New York, effective as of December 15, 1961, and as subsequently amended, is further amended as follows:

***

Matter in greytone is new, to be added;

Matter in ~~strikeout~~ is existing text, to be deleted;

*** indicates where unchanged text appears in the Resolution

**Section 12-10**

**DEFINITIONS**

***

**Adult Establishment (10/25/95)**

1.    Adult Establishment:  An "adult establishment" is a commercial establishment ~~where a~~ ~~"substantial portion" of the establishment~~ which is or includes an adult book store, adult eating or drinking establishment, adult theater, or other adult commercial establishment, or any combination thereof as defined below:

**664**

Page 3 of 18
N 010508 ZRY
Reso. No. 2096 (L.U. No. 1112)

(a)     An adult book store is a book store ~~which has as~~ that offers "printed or visual material"

for sale or rent to customers where a "substantial portion" of its stock-in-trade of "printed

or visual material" consists of "adult printed or visual material", defined as ~~any one or~~

~~more of the following:~~

~~(1) books, magazines, periodicals or other printed matter which are characterized by an~~

~~emphasis upon the depiction or description of "specified sexual activities" or "specified~~

~~anatomical areas"; or~~

~~(2) photographs, films, motion pictures, video cassettes or other visual representations~~

~~which are~~ "printed or visual material" characterized by an emphasis upon the depiction or

description of "specified sexual activities" or "specified anatomical areas";

(b)     An adult eating or drinking establishment is an eating or drinking establishment which

regularly features in any portion of such establishment any one or more of the following:

(1)     live performances which are characterized by an emphasis on "specified

anatomical areas" or "specified sexual activities"; or

Case 1:02-cv-08333-LJL   Document 147-1   Filed 05/09/22   Page 44 of 137

665

Page 4 of 18
N 010508 ZRY
Reso. No. 2096 (L.U. No. 1112)

(2)    films, motion pictures, video cassettes, slides or other photographic reproductions which are characterized by an emphasis upon the depiction or description of "specified sexual activities" or "specified anatomical areas"; or

(3)    employees who, as part of their employment, regularly expose to patrons "specified anatomical areas"; and

which is not customarily open to the general public during such features because it excludes or restricts minors by reason of age.

(c)    An adult theater is a theater commercial establishment which regularly features one or more of the following:

(1)    films, motion pictures, videocassettes, slides or similar photographic reproductions characterized by an emphasis on the depiction or description of "specified sexual activities" or "specified anatomical areas"; or

(2)    live performances characterized by an emphasis on "specified anatomical areas" or "specified sexual activities"; and

Case 1:02-cv-08333-LJL    Document 147-1    Filed 05/09/22    Page 45 of 137

which is not customarily open to the general public during such features because it

excludes or restricts minors ~~by reason of age~~.

An adult theater shall include commercial establishments where such materials or

performances are viewed from one or more individual enclosures.

(d)    An other adult commercial establishment is a facility — other than an adult book store,

adult eating or drinking establishment, adult theater, commercial studio, or business or

trade school  — which features employees who as part of their employment, regularly

expose to patrons "specified anatomical areas" and which is not customarily open to the

general public during such features because it excludes or restricts minors ~~by reason of~~

~~age~~.

~~For the purpose of defining adult establishments,~~

2.    Defined Terms:

(a)    For purposes of paragraph (1) (a), "printed or visual materials" are books,

magazines, or other printed matter, including product packaging or wrapping, or

photographs, films, motion pictures, video cassettes, slides or other visual matter;

(b)    For purposes of paragraph (1)(a)(b) and (c), "specified sexual activities" are: (1 i) human genitals in a state of sexual stimulation or arousal; (2 ii) actual or simulated acts of human masturbation, sexual intercourse or sodomy; or (3 iii) fondling or other erotic touching of human genitals, pubic region, buttock, anus or female breast;

(c)    For purposes of paragraph (1)(a)(b)(c) and (d), "specified anatomical areas" are: (1 i) less than completely and opaquely concealed: (i aa) human genitals, pubic region,(ii bb) human buttock, anus, or (iii cc) female breast below a point immediately above the top of the areola; or (2 ii) human male genitals in a discernibly turgid state, even if completely and opaquely concealed.

~~For the purpose of determining whether a "substantial portion" of an establishment includes an adult bookstore, adult eating or drinking establishment, adult theater, or other adult commercial establishment, or combination thereof, the following factors shall be considered: (1) the amount of *floor area* and *cellar* space accessible to customers and allocated to such *uses* and (2) the amount of *floor area* and *cellar* space accessible to customers and allocated to such uses as compared to the total *floor area* and *cellar* space accessible to customers in the establishment.~~

(d)    For the purpose of determining under paragraph (1)(a) whether a ~~bookstore has a~~ "substantial portion" of ~~its stock in materials defined in paragraphs (a)(1) or (a)(2)~~

**668**

~~hereof~~ a book store's stock-in-trade of "printed or visual" material consists of

"adult printed or visual material", the following factors shall be considered: ~~(1)~~ (i)

the amount of ~~such~~ stock of "adult printed or visual material" accessible to

customers as compared to the total stock of "printed or visual material" accessible

to customers in the establishment; and ~~(2)~~ (ii) the amount of *floor area* and *cellar*

space accessible to customers containing ~~such~~ stock of "adult printed or visual

material"; and ~~(3)~~ (iii) the amount of *floor area* and *cellar* space accessible to

customers containing ~~such~~ stock "of adult printed or visual material" as compared

to the ~~total amount~~ of *floor area* and *cellar* space accessible to customers ~~in the~~

~~establishment~~ ~~containing~~ "printed or visual material" which is not "adult printed

or visual material", provided that "printed or visual material" which is not "adult

printed or visual material" (hereinafter for purposes of this paragraph "other

printed or visual material") shall not be considered stock-in-trade for purposes of

this paragraph where such store has one or more of the following features:


(aa)    An interior configuration and lay-out which requires customers to pass

        through an area of the store with "adult printed or visual material" in order

        to access an area of the store with "other printed or visual material";

(bb)     One or more individual enclosures where adult movies or live

performances are available for viewing by customers;


(cc)     A method of operation which requires customer transactions with respect

to "other printed or visual material" to be made in an area of the store

which includes "adult printed or visual material";


(dd)     A method of operation under which "other printed or visual material" is

offered for sale only and "adult printed or visual material" is offered for

sale or rental;


(ee)     A greater number of different titles of "adult printed or visual material"

than the number of different titles of "other printed or visual material";


(ff)     A method of operation which excludes or restricts minors from the store as

a whole or from any section of the store with "other printed or visual

material";


(gg)     A sign that advertises the availability of "adult printed or visual material"

which is disproportionate in size relative to a sign that advertises the

availability of "other printed or visual material," when compared with the proportions of adult and other printed or visual materials offered for sale or rent in the store, or the proportions of floor area or cellar space accessible to customers containing stock of adult and other printed or visual materials;

(hh)  A window display in which the number of products or area of display of "adult printed or visual material" is disproportionate in size relative to the number of products or area of display of "other printed or visual material," when compared with the proportions of adult and other printed or visual materials offered for sale or rent in the store, or the proportions of floor area or cellar space accessible to customers containing stock of adult and other printed or visual materials;

(ii)  Other features relating to configuration and lay-out or method of operation, as set forth in rules adopted by the commissioner of buildings, which the commissioner has determined render the sale or rental of "adult printed or visual material" a substantial purpose of the business conducted in such store.  Such rules shall provide for the scheduled implementation of the terms thereof to commercial establishments in existence as of the

date of adoption, as necessary.

(e)    For the purposes of paragraph (1) (b), an "eating or drinking establishment"

includes: (i) any portion of a commercial establishment within which food or

beverages are offered for purchase, or are available to or are consumed by

customers or patrons, and (ii) any portion of a commercial establishment from

which a portion of a commercial establishment described in (i) above is accessible

by customers or patrons.

\*\*\*

**32-01**

**Special Provisions for Adult Establishments**

\*\*\*

(b)    In C6-4, C6-5, C6-6, C6-7, C6-8, C6-9, C7 or C8 Districts, #adult

establishments# no #adult establishment# shall be located at least established less

than 500 feet from a church, a #school#, a #Residence District#, a C1, C2, C3,

C4, C5-1, C6-1, C6-2 or C6-3 District, or a #Manufacturing District#, other than

672

an M1-6M District, in which new #residences#, new #joint living-work quarters

for artists# or new #loft dwellings# are allowed, under the provisions of the

Zoning Resolution, as-of-right or by special permit or authorization. No

provisions or findings of such special permit or authorization which require an

assessment of the impact of new #residences#, new #joint living-work quarters for

artists# or new #loft dwellings# on #commercial# or #manufacturing uses# within

a #Manufacturing District# shall be construed as a limitation on the scope of this

provision.  However, on or after October 25, 1995, an #adult...

(c)    in C6-4, C6-5, C6-6, C6-7, C6-8, C6-9, C7 or C8 Districts, #adult establishments#

no #adult establishment# shall be located established at least less than 500 feet

from another a previously established #adult establishment#.

(d)    in C6-4, C6-5, C6-6, C6-7, C6-8, C6-9, C7, or C8 districts, no more than one

#adult establishment# permitted under this Section shall be located established on

a #zoning lot#.

***

(f)    #adult establishments# which existed on were established on the effective date...

For purposes of this section, an #adult establishment# shall be established upon the date of a permit issued by the department of buildings therefor, or, in the case of an #adult establishment# in existence prior to August 8, 2001, as determined by the department of buildings, subject to rules as the department of buildings may prescribe regarding the failure to perform work authorized under a permit or to commence operation pursuant to a permit and the discontinuance of an #adult establishment#.

\*\*\*

**42-01**

**Special Provisions for Adult Establishments**

\*\*\*

(a)     #adult establishments# are not permitted in a #Manufacturing District# in which #residences#, #joint living-work quarters for artists# or #loft dwellings# are, under the provisions of the Zoning Resolution, allowed as-of-right or by special permit or authorization. No provisions or findings of such special permit or authorization which require an assessment of the impact of new #residences#, new #joint living-work quarters

**674**

for artists# or new #loft dwellings# on #commercial# or #manufacturing uses# within a "Manufacturing District# shall be construed as a limitation on the scope of this provision.

(b)   In all other #Manufacturing Districts#, #adult establishments# no #adult establishment# shall be ~~located established at least~~ less than 500 feet from a church, a #school#, a #Residence District#, a C1, C2, C3, C4, C5-1, C6-1, C6-2 or C6-3 District, or a #Manufacturing District#, other than an M1-6M District, in which new #residences#, new #joint living-work quarters for artists# or new #loft dwellings# are allowed, under the provisions of the Zoning Resolution, as-of-right or by special permit or authorization. No provisions or findings of such special permit or authorization which require an assessment of the impact of new #residences#, new #joint living-work quarters for artists# or new #loft dwellings# on #commercial# or #manufacturing uses# within a "Manufacturing District# shall be construed as a limitation on the scope of this provision. However, on or after October 25, 1995, an #adult establishment# that otherwise complies with the provisions of this paragraph shall not be rendered #non-conforming# if a church or a #school# is established on or after April 10, 1995 within 500 feet of such #adult establishment#.

(c)   ~~#Adult establishments#~~ No #adult establishment# shall be ~~located at least~~ established less than 500 feet from another #adult establishment#.

Page 14 of 18
N 010508 ZRY
Reso. No. 2096 (L.U. No. 1112)

(d)     No more than one #adult establishment# permitted under this Section shall be ~~located~~

        established on a #zoning lot#.

                                    ***

(f)     #Adult establishment# which ~~existed on~~ were established on October 25, 1995 and

        conform to all provisions of the Zoning Resolution relating to #adult establishments#

        other than the provisions of all or any combination of paragraphs (c), (d), and (e) of this

        Section, shall not be subject to the provisions of Section 52-77 (Termination of Adult

        Establishments).

For purposes of this section, an #adult establishment# shall be established upon the date of a

permit issued by the department of buildings therefor, or, in the case of an #adult establishment#

in existence prior to August 8, 2001, as determined by the department of buildings, subject to

rules as the department of buildings may prescribe regarding the failure to perform work

authorized under a permit or to commence operation pursuant to a permit and the discontinuance

of an #adult establishment#.

                                    ***

676

**72-01**

General Provisions

***

(f)     to make such administrative determinations and findings as may be set forth in this

Resolution or pursuant to Section 72-40 (AMORTIZATION OF CERTAIN ADULT

ESTABLISHMENTS AND SIGNS FOR ADULT ESTABLISHMENTS); or to Section

72-41 (Continuation of Certain Adult Establishments).

***

**72-40**

Amortization of Certain Adult Establishments and Signs For Adult Establishments

***

This section shall not apply to commercial establishments described in section 72-41.

***

**72 - 41**

**Continuation of Certain Adult Establishments**

Any commercial establishment in existence as of August 8, 2001 which: (i) subsequent to September 18, 1995 and prior to August 8, 2001 made financial expenditures so as to avoid becoming subject to the provisions of Section 32-01 or 42-01 (Special Provisions for Adult Establishments); and (ii) is defined as an #adult establishment# pursuant to the amendments to the definition of #adult establishment# in Section 12-10 adopted on (date of Council adoption), shall terminate as an #adult establishment# within one year from (date of Council adoption). Notwithstanding the foregoing, the Board of Standards and Appeals may permit such #adult establishment# to continue for a limited period beyond such one year period, provided that:

(b)     an application is made by the owner of such establishment to the Board of Standards and Appeals at least 120 days prior to the date on which such establishment must terminate;

(c)     the Board shall find, in connection with such establishment, that:

(1)     the applicant had made, subsequent to September 18, 1995 and prior to August 8, 2001, substantial financial expenditures so as to avoid becoming subject to the provisions of Section 32-01 or 42-01 (Special Provisions for Adult Establishments);

**678**

Page 17 of 18
N 010508 ZRY
Reso. No. 2096 (L.U. No. 1112)

(2)    the applicant has not recovered substantially all such financial

expenditures; and

(3)    the period for which such establishment may be permitted to continue is

the minimum period sufficient for the applicant to recover substantially all

of such financial expenditures;

For purposes of this Section, "financial expenditures" shall mean the following: (i) any capital

outlay for improvements made in connection with the configuration or reconfiguration of the

amount of #floor area# and #cellar# space within such establishment accessible to customers

either: (a) containing books, magazines, periodicals or other printed matter or photographs, films,

motion pictures, video cassettes, slides or other visual matter characterized by an emphasis upon

the depiction or description of "specified sexual activities" or "specified anatomical areas"; or (b)

allocated to one of the activities described in paragraphs (b) (c) or (d) of section 1 of the

definition of #adult establishment# in Section 12-10; and (ii) any purchases of books, magazines,

periodicals, or other printed matter, or photographs, films, motion pictures, video cassettes, slides

or other visual matter, which are not characterized by an emphasis upon the depiction or

description of "specified sexual activities" or "specified anatomical areas".

The provisions of Sections 52-77 and 72-40 shall not apply to commercial establishments subject
to this Section.

679

**Page 18 of 18**
**N 010508 ZRY**
**Reso. No. 2096 (L.U. No. 1112)**

Adopted.

      Office of the City Clerk, }
      The City of New York, } ss.:

       I hereby certify that the foregoing is a true copy of a Resolution passed by The Council of The City of New York on October 31, 2001, on file in this office.

                                    **City Clerk, Clerk of Council**

1932

# PROCEEDINGS
## OF THE
## COUNCIL
## OF THE
## CITY OF
## NEW YORK

# VOL. II

JULY 21, 2004
TO
DECEMBER 15, 2004

## PART I

# CERTIFICATE

## CITY OF NEW YORK

### OFFICE OF THE CITY CLERK

Pursuant to section forty-eight of the New York City Charter, I hereby certify that this volume was printed under my direction and that the contents thereof are correct and authentic transcripts of the original record of proceedings of the Council on file in this office.

VICTOR L. ROBLES
City Clerk, Clerk of the Council



Section forty-eight of the New York City Charter reads in part as follows:

§48 * * * The city clerk shall have charge of all the papers and documents of the city, except as are by law committed to the keeping of the several departments or of other officers. He shall keep the record of the proceedings of the council. * * * Copies of all papers duly filed in his office, and transcripts thereof, and of the records of the proceedings of the council and copies of the laws, ordinances and local laws of the city, certified by him under the corporate seal of the city, shall be admissible in evidence in all courts and places in the same manner and for the same purpose as papers or documents similarly authenticated by clerk of the county.* * *

In connection herewith, Council Members Katz and Avella offered the following resolution:

Res. No. 586

**Resolution approving the decision of the City Planning Commission on Application No. N 040202 ZRY, an amendment to the text of the Zoning Resolution regarding community facilities (L.U. No. 236).**

By Council Members Katz and Avella.

**Whereas,** the City Planning Commission filed with the Council on July 28, 2004 its decision dated July 28, 2004 (the "Decision"), on the application submitted by the Department of City Planning and the City Council Land Use Committee, pursuant to Section 201 of the New York City Charter, for an amendment to the text of the Zoning Resolution (Application No. N 040202 ZRY) (the "Application");

**Whereas,** the Decision is subject to review and action by the Council pursuant to Section 197-d(b)(1) of the City Charter;

**Whereas,** upon due notice, the Council held a public hearing on the Decision and Application on August 9, 2004;

**Whereas,** the Council has considered the land use implications and other policy issues relating to the Decision and Application; and

**Whereas,** the Council has considered the relevant environmental issues and the Final Environmental Impact Statement ("FEIS") for which a Notice of Completion was issued on July 16, 2004 (CEQR No. 04DCP025Y);

**Resolved:**

Having considered the FEIS, with respect to the Application, the Council finds that:

(1)  The FEIS meets the requirements of 6 N.Y.C.R.R. Part 617;

(2)  From among the reasonable alternatives thereto, the action to be approved is one which minimize or avoid adverse environmental impacts to the maximum extent practicable; and

September 9, 2004                    3970

(3)  The adverse environmental impacts identified in the FEIS will be minimized or avoided to the maximum extent practicable by incorporating as conditions to the approval those mitigative measures that were identified as practicable;

(4)  The Decision and the FEIS constitute the written statement of facts, and of social, economic and other factors and standards that form the basis of this decision, pursuant to 6 N.Y.C.R.R. §617.11(d).

Pursuant to Sections 197-d and 200 of the City Charter and on the basis of the Decision and Application the Council approves the Decision; and

The Zoning Resolution of the City of New York, effective as of December 15, 1961, and as subsequently amended, is further amended as follows:

Matter underlined is new, to be added;
Matter in strikeout is old, to be deleted;
Matter within # # signs is defined in Section 12-10;
*** indicates where unchanged text appears in the Zoning Resolution
City Council's changes are indicated by **bold and doubled underline**

***

3987                        September 9, 2004
                ***

10/31/01

## 32-01
**Special Provisions for Adult Establishments**

In addition to the applicable regulations for the #uses# listed in a permitted Use Group, #adult establishments# shall be subject to the following provisions:

(a)  #Adult establishments# are not permitted in C1, C2, C3, C4, C5, C6-1, C6-2 or C6-3 Districts.

(b)  In C6-4, C6-5, C6-6, C6-7, C6-8, C6-9, C7 or C8 Districts, no #adult establishment# shall be established less than 500 feet from a ~~church~~ house of worship, a #school#, a #Residence District#, a C1, C2, C3, C4, C5-1, C6-1, C6-2 or C6-3 District, or a #Manufacturing District#, other than an M1-6M District, in which new #residences#, new #joint living-work quarters for artists# or new #loft dwellings# are allowed, under the provisions of the Zoning Resolution, as-of-right or by special permit or authorization. No provisions or findings of such special permit or authorization which require an assessment of the impact of new #residences#, new #joint living-work quarters for artists# or new #loft dwellings# on #commercial# or #manufacturing uses# within a #Manufacturing District# shall be construed as a limitation on the scope of this provision. However, on or after October 25, 1995, an #adult establishment# that otherwise complies with the provisions of this paragraph shall not be rendered #non-conforming# if a ~~church~~ house of worship or a #school# is established on or after April 10, 1995, within 500 feet of such #adult establishment#.

                ***

4003                    September 9, 2004

***

10/31/01

**42-01**
**Special Provisions for Adult Establishments**

In addition to the applicable regulations for the #uses# listed in a permitted Use Group, #adult establishments# shall be subject to the following provisions:

***

(b) In all other #Manufacturing Districts#, no #adult establishment# shall be established less than 500 feet from a ~~church~~ house of worship, a #school#, a #Residence District#, a C1, C2, C3, C4, C5-1, C6-1, C6-2 or C6-3 District, or a #Manufacturing District#, other than an M1-6M District, in which new #residences#, new #joint living-work quarters for artists# or new #loft dwellings# are allowed, under the provisions of the Zoning Resolution, as-of-right or by special permit or authorization. No provisions or findings of such special permit or authorization which require an assessment of the impact of new #residences#, new #joint living-work quarters for artists# or new #loft dwellings# on #commercial# or #manufacturing uses# within a #Manufacturing District# shall be construed as a limitation on the scope of this provision.

However, on or after October 25, 1995, an #adult establishment# that otherwise complies with the provisions of this paragraph shall not be rendered #non-conforming# if a ~~church~~ house of worship or a #school# is established on or after April 10, 1995, within 500 feet of such #adult establishment#.

***

1939

4031                    September 9, 2004

***

  On motion of the Speaker (Council Member Miller), and adopted, the foregoing matter was coupled as a General Order for the day (see ROLL CALL ON GENERAL ORDERS FOR THE DAY).

# PROCEEDINGS

## OF THE
## COUNCIL
## OF THE
## CITY OF
## NEW YORK

# VOL. II
# PART I

## JULY 29, 2010
## TO
## DECEMBER 20, 2010

# PROCEEDINGS

## OF THE

# COUNCIL

## OF

# THE CITY OF NEW YORK

## FROM

## JULY 29, 2010 TO DECEMBER 20, 2010

## VOLUME II



Published by Authority of The Council

# CERTIFICATE

## CITY OF NEW YORK

### OFFICE OF THE CITY CLERK

Pursuant to section forty-eight of the New York City Charter, I hereby certify that this volume was printed under my direction and that the contents thereof are correct and authentic transcripts of the original record of proceedings of the Council on file in this office.

Michael M. McSweeney
City Clerk, Clerk of the Council

Section forty-eight of the New York City Charter reads in part as follows:

§48 * * * The city clerk shall have charge of all the papers and documents of the city, except as are by law committed to the keeping of the several departments or of other officers. He shall keep the record of the proceedings of the council. * * * Copies of all papers duly filed in his office, and transcripts thereof, and of the records of the proceedings of the council and copies of the laws, ordinances and local laws of the city, certified by him under the corporate seal of the city, shall be admissible in evidence in all courts and places in the same manner and for the same purpose as papers or documents similarly authenticated by clerk of the county.* * *

October 13, 2010                         4268

*Report Summary*

## COMMITTEE RECOMMENDATION AND ACTION

**DATE:** October 5, 2010

The Committee recommends that the Council approve the proposed resolution and thereby approve the decision of the City Planning Commission.

In connection herewith, Council Members Comrie and Weprin offered the following resolution:

Res. No. 499

**Resolution approving the decision of the City Planning Commission on Application No. N 100370 (A) ZRM, proposed for modification pursuant to Section 2-06 (c)(1) of the Uniform Land Use Review Procedure, for an amendment of the Zoning Resolution of the City of New York, concerning Article XI, Chapter I (Special Tribeca Mixed Use District), Borough Manhattan (L.U. No. 222).**

By Council Members Comrie and Weprin.

**WHEREAS,** the City Planning Commission filed with the Council on September 17, 2010 its decision dated September 15, 2010 (the "Decision"), pursuant to Section 201 of the New York City Charter, regarding an application submitted by the New York City Department of City Planning, and proposed for modification pursuant to Section 2-06 (c)(1) of the Uniform Land Use Review Procedure, for an amendment of the Zoning Resolution of the City of New York, concerning Article XI, Chapter I (Special Tribeca Mixed Use District) (Application No. N 100370 (A) ZRM), Borough of Manhattan (the "Application");

**WHEREAS,** the Application is related to Application Number C 100369 ZMM (L.U. No. 221), an amendment to the Zoning Map to replace the existing M1-5 zoning district with a new contextual C6-2A zoning district;

**WHEREAS,** the Decision is subject to review and action by the Council pursuant to Section 197-d(b)(1) of the City Charter;

**WHEREAS,** upon due notice, the Council held a public hearing on the Decision and Application on October 5, 2010;

**WHEREAS,** the Council has considered the land use implications and other policy issues relating to the Decision and Application; and

**WHEREAS,** the Council has considered the relevant environmental issues and the Negative Declaration, issued on June 4, 2010 which included an e-designation (E-257) for hazardous materials, air quality and noise.  On September 15, 2010, a Revised Negative Declaration was issued which reflects the modified application and minor corrections to the (E) Designation (CEQR No. 10DCP039M);

**RESOLVED:**

The Council finds that the action described herein will have no significant effect on the environment.

Pursuant to Sections 197-d and 200 of the City Charter and on the basis of the Decision and Application, and based on the environmental determination and consideration described in this report, N 100370(A) ZRM, incorporated by reference herein, the Council approves the Decision.

The Zoning Resolution of the City of New York, effective as of December 15, 1961, and as subsequently amended, is further amended as follows:

Matter in <u>underline</u> is new, to be added;
Matter in ~~strikeout~~ is to be deleted;
Matter with # # is defined in Section 12-10;
* * * indicates where unchanged text appears in the Zoning Resolution

4275                          October 13, 2010

\* \* \*

**32-01**
**Special Provisions for Adult Establishments**

In addition to the applicable regulations for the #uses# listed in a permitted Use Group, #adult
establishments# shall be subject to the following provisions:

(a)      #Adult establishments# are not permitted in C1, C2, C3, C4, C5, C6-1, C6-2 or C6-3 Districts.

(b)      In C6-4, C6-5, C6-6, C6-7, C6-8, C6-9, C7 or C8 Districts, no #adult establishment# shall be established less than 500 feet from a house of worship, a #school#, a #Residence District#, a C1, C2, C3, C4, C5-1, C6-1, C6-2 or C6-3 District, or a #Manufacturing District#, other than an M1-6M District, in which new #residences#, or new #joint living-work quarters for artists# ~~or new #loft dwellings#~~ are allowed, ~~under the provisions of the Zoning Resolution~~, as-of-right or by special permit or authorization. No provisions or findings of such special permit or authorization which require an assessment of the impact of new #residences#, or new #joint living-work quarters for artists# ~~or new #loft dwellings#~~ on #commercial# or #manufacturing uses# within a #Manufacturing District# shall be construed as a limitation on the scope of this provision. However, on or after October 25, 1995, an #adult establishment# that otherwise complies with the provisions of this paragraph shall not be rendered #non-conforming# if a house of worship or a #school# is established on or after April 10, 1995, within 500 feet of such #adult establishment#.

\* \* \*

October 13, 2010                     4276

## 42-01
## Special Provisions for Adult Establishments

In addition to the applicable regulations for the #uses# listed in a permitted Use Group, #adult establishments# shall be subject to the following provisions:

(a)     #Adult establishments# are not permitted in a #Manufacturing District# in which #residences#, or #joint living-work quarters for artists# or #loft dwellings# are, under the provisions of the Zoning Resolution, allowed as-of-right or by special permit or authorization. No provisions or findings of such special permit or authorization which require an assessment of the impact of new #residences#, or new #joint living-work quarters for artists# or new #loft dwellings# on #commercial# or #manufacturing uses# within a #Manufacturing District# shall be construed as a limitation on the scope of this provision.

(b)     In all other #Manufacturing Districts#, no #adult establishment# shall be established less than 500 feet from a house of worship, a #school#, a #Residence District#, a C1, C2, C3, C4, C5-1, C6-1, C6-2 or C6-3 District, or a #Manufacturing District#, other than an M1-6M District, in which new #residences#, or new #joint living-work quarters for artists# or new #loft dwellings# are allowed, under the provisions of the Zoning Resolution, as-of-right or by special permit or authorization. No provisions or findings of such special permit or authorization which require an assessment of the impact of new #residences#, or new #joint living-work quarters for artists# or new #loft dwellings# on #commercial# or #manufacturing uses# within a #Manufacturing District# shall be construed as a limitation on the scope of this provision. However, on or after October 25, 1995, an #adult establishment# that otherwise complies with the provisions of this paragraph shall not be rendered #nonconforming# if a house of worship or a #school# is established on or after April 10, 1995, within 500 feet of such #adult establishment#.

* * *

October 13, 2010                    4308

* * *

LEROY G. COMRIE, Chairperson; JOEL RIVERA, DIANA REYNA, CHARLES BARRON, ROBERT JACKSON, JAMES S. SANDERS JR., SARA MA. GONZALEZ, ANNABEL PALMA, MARIA DEL CARMEN ARROYO, INEZ E. DICKENS, DANIEL R. GARODNICK, JESSICA S. LAPPIN, ROSIE MENDEZ, JAMES VACCA, BRADFORD S. LANDER, STEPHEN T. LEVIN, MARK S. WEPRIN, JUMAANE D. WILLIAMS, VINCENT M. IGNIZIO, DANIEL J. HALLORAN, PETER A. KOO, Committee on Land Use, October 7, 2010.

On motion of the Speaker (Council Member Quinn), and adopted, the foregoing matter was coupled as a General Order for the day (see ROLL CALL ON GENERAL ORDERS FOR THE DAY).

HOUSING AND DEVELOPMENT ADMINISTRATION
DEPARTMENT OF BUILDINGS
DIRECTIVE NO. 14 of 1975

DEPARTMENTAL MEMORANDUM                                DATE: September 19, 1975

TO:     Borough Superintendents

FROM:   Commissioner Jeremiah T. Walsh, P.E.

SUBJECT: BUILDING NOTICES, PERMITS, APPROVALS AND INSPECTIONS

This directive supersedes Directive No. 12, issued August 29, 1975.

1.  Filing.  Upon filing a Building Notice application by a registered
architect or licensed professional engineer, and after payment of
required fees, a permit may be issued with limited examination, as
specified in the following subdivision 2, and without approval of the
application.  It will be required that proof of compensation insurance
and disability benefits insurance be filed before the permit is issued.

2.  Processing.

    a. Upon filing of the Building Notice application by a registered
       architect or licensed professional engineer, the applicant
       shall be directed to carry the application and plans to the
       Chief Engineer of Engineering.  Either the Chief Engineer
       or his designated assistant, shall immediately review the
       application and plans to determine whether the application
       may be filed as a Building Notice and to ascertain whether
       the application shows conformance with zoning requirements.
       When these items are satisfactory, the application shall be
       so marked.  Otherwise, the application shall be marked that
       an alteration application is required or that a zoning objection
       applies.  When further examination for zoning requirements
       is necessary, the application shall be assigned to an examiner
       for zoning review only.  When such review cannot be made at
       once, the applicant shall be instructed to return the following
       workday at a time when the examiner has completed the zoning
       examination.

    b. After review by the Chief Engineer or his assistant and when
       the application has been found to be in satisfactory order, the
       applicant is to be directed to the fee estimator, for check of
       the estimated cost and computation of fee.  He shall there-
       after pay the fee at the cashier's window and receive the
       permit, upon producing evidence of workmen's compensation
       insurance and disability benefits insurance.

980

3. Examination Requested and Limitations. This procedure shall be followed for all Building Notice applications that are filed by registered architects or licensed professional engineers, except when examination is requested by the applicant. When so requested, the application shall be examined when reached in turn, according to date of filing. Building Notice applications that are not filed by a registered architect or licensed professional engineer shall be examined completely, and permits shall not be issued until the applications are approved. Filing of such applications shall be limited in accordance with department regulations.

4. Post Permit Review. After issuance of permits, applications will be checked for compliance with applicable laws as the work load and availability of examiners permit, as determined by the Borough Superintendent. Examination of an application so selected shall be complete. Where non-compliance is found, corrective action shall be required. Applications shall be selected at random so as to provide representative sampling. The number of samplings shall be sufficient to permit the Borough Superintendent to be informed as to the extent of compliance with such applications.

5. Inspection. When an owner or lessee responsible for performance of the work elects to do so, he may employ a registered architect or licensed professional engineer to make inspections during progress of the work and upon completion. In such case, the owner or lessee shall notify the Building Department of the name and address of such architect or engineer. Where any work is found not in compliance with the plans or not in compliance with applicable laws, it shall be corrected and if not corrected, the department shall be notified by the architect or engineer and a violation requiring elimination of the defective work shall be filed. Except when such notices are received, inspections by department inspectors will be made on a random basis, as staffing permits.

6. Reports. Controlled inspection reports and other reports relating to quality of concrete, ventilation, fire dampers and other requirements, shall be filed by an architect or engineer before the work is reported as completed. In addition, he shall file a certification that the work was performed in accordance with requirements of applicable laws, except as reported otherwise. Upon receipt of all reports from the architect or engineer, including the report of completion, the application shall be filed with the completed applications.

7. Limitations. Building Notice applications may be filed for only that work permitted by memorandum of November 24, 1972, (page 714 of volumes of memorandums) entitled "Building Notice Applications." The procedure set forth above shall apply only to Building Notice applications.

961

8.   Plans and Stamping.  Entries showing issuance of permits shall be made upon applications in accordance with current practice.  A cloth print and a paper print of plans shall be required.  Plans shall not be stamped as approved but shall be stamped with a permit stamp and number of permit and date shall be noted.

9.   Fees.  Applications shall be reviewed by fee examiners to insure that estimated costs and required fees are correct, before issuance of permits.

10.   Fairs and Carnivals.  Building Notice applications filed for fairs and carnivals shall be examined and approved before issuance of permits.

11.   Fire Safety Applications.  Applications filed to provide compliance with fire safety requirements of Local Law No. 5 of 1973, shall be examined for such compliance and shall be approved, before a permit is issued.  This requirement shall not apply to applications filed for the purpose of installing subdividing partitions, where because of the area of the floor, fire separation of floor areas is required, as incidental to the installation of the partitions.

This directive shall be effective immediately.


JTW/TVB/df

CC:   Exec. Staff
      Industry

Jeremiah T. Walsh, P.E.
Commissioner

982



**DEPARTMENT OF BUILDINGS**

EXECUTIVE OFFICES
60 HUDSON STREET, NEW YORK, N.Y. 10013

JOEL A. MIELE, Sr., P.E., COMMISSIONER

**BARRY G. COX**
Assistant Commissioner
Borough Operations
(212) 312-8004

Issuance # 493

---

## OPERATIONS
## POLICY AND PROCEDURE NOTICES  #17/95

---

**TO:**          Distribution

**FROM:**      Barry G. Cox

**DATE:**      27 December 1995

**SUBJECT:**   Adult Establishments

---------------------------------------------------------------------------------------------

**Reference:**   Zoning Resolution Sections 11-113, 11-30, 12-10, 32-00, 42-00, 42-55, 51-00, 52-00, and 72-00, et seq.

**Purpose:**     To establish a procedure to assure the provisions of the Zoning Resolution relating to adult establishments is accurately enforced.

**Effective:**   October 25, 1995

**Specifics:**

♦           **Filing Process:**

**Applicant:**
Directive 14 of 1975 and the Professional Certification of Application and Plans Process (PPN #2/95) may not be used for any filing related to adult establishments.

In Section 16 (comments) of the PW1, the applicant shall indicate whether the filing he/she is making is to create, enlarge or extend an adult establishment or to erect a business

0467

sign accessory to such an adult establishment.

The application shall also include a separate area diagram detailing all existing uses and block and lot numbers within a 500 foot radius of the zoning lot of the adult establishment and include the location of any adult establishment identified on the enclosed list from the Department of City Planning. (Appendix A)

. Plan Examiner:

An objection shall be raised if there exists another adult establishment within 500 feet of the proposed use or on the same zoning lot or if the establishment is in the wrong zoning district. Examiners should be guided by Appendix B.

. Permit Clerk:

Prior to issuing a work permit for an adult establishment, the clerk shall refer the applicant to the Borough Commissioner (or his/her designee) who shall verify from a batch report of all applications filed on or after October 25, 1995 to create, enlarge or extend an adult establishment made available weekly by MIS, that the new establishment meets the criteria established under the Zoning Resolution.

◆     **Enforcement Process:**

*Borough Complaint Clerk:*

*For all Boroughs Except Manhattan:*

Any complaint received about an adult establishement shall be data entered onto BIS using complaint category code 75. The complaint will automatically be assigned a "B" priority. The jurisdiction must state "refer to Operations", category 98.

The disposition of the complaint by the Night Squad shall be data entered upon being returned to the Borough office and a written response letter generated to the complainant.

*For Manhattan Only:*

Any complaint received about an adult establishment shall be data entered onto BIS using complaint category code 75. The complaint will automatically be assigned a "B" priority. The jurisdiction must state "refer to Office of Midtown Enforcement" category G7.

A written response letter will be generated and mailed to the complainant indicating the complaint was referred to the Office of Midtown Enforcement, 330 West 42nd Street, 15th Floor, New York, N.Y. 10036.

2

0468

On a weekly basis, the Borough office shall batch these complaint letters to that Office for investigation.

*Executive Chief Inspector's Office*:

The Executive Chief shall secure a city-wide BIS printout of all category code 75 complaints on a weekly basis, print out the required work orders and route the Night Squad inspectors to these premises.

Complaints about premises appearing on Appendix A shall not be inspected prior to October 25, 1996 unless the complaint alleges such premises has been enlarged or the use extended.

The Executive Chief's office shall request the respective borough office to provide the following information with respect to each premises to be inspected:

> * Certificate of occupancy
> * sign permits
> * any other documentation which may establish the existing legal use of the premises.
> * Zoning or Sanborn map showing premises location.

*Night Emergency Squad*:

Any Department of Buildings notice of violation written for violating Zoning Resolution Section 11-113 must identify the specific type of adult establishment defined in Zoning Resolution Section 12-10 as either:

> * An Adult Bookstore, or
> * Adult Eating or Drinking Establishment, or
> * An Adult Theater or
> * Other commercial establishment or
> * Any combination of the above

To the extent possible, the Night Squad log should include a brief layout of any premises inspected, the extent of the adult establishment and a description of the activities taking place in the premises. Backup documentation and the results of the inspection written on the work order shall be submitted to the Executive Chief who shall review the materials. If a determination is made that a violation should be issued, it shall be returned to the respective Borough Office for data entry.

Inspectors should refer to Appendix B for further guidance.

BGC:yaj
adult.est

3

0469

OCP SURVEY OF ADULT ENTERTAINMENT ESTABLISHMENTS, FALL 1993

1
12:30 Wednesday, November 15, 1995

-------------------------------------------------- BORO=MANHATTAN --------------------------------------------------

| CD | TAXBLOCK | TAXLOT | NAME | ADDRESS | | USE |
|----|----------|--------|------|---------|------|-----|
| 01 | 53 | 38 | THUNDER XXX VIDEO | 100 | GREENWICH ST | VIDEO STORE |
| 01 | 53 | 39 | PUSSYCAT LOUNGE | 96 | GREENWICH ST | TOPLESS BAR |
| 01 | 65 | 10 | XXX VIDEO | 11 | MAIDEN LANE | VIDEO STORE |
| 01 | 90 | 21 | ADULT VIDEO | 21 | ANN ST | VIDEO STORE |
| 01 | 92 | 26 | KINDLS | 118 | NASSAU ST | TOPLESS BAR |
| 01 | 133 | 15 | THE DOLL HOUSE | 59 | MURRAY ST | TOPLESS BAR |
| 01 | 150 | 6 | DESIRE VIDEO | 68 | READE ST | VIDEO STORE |
| 01 | 175 | 16 | HARMONY THEATRE | 279 | CHURCH ST | OTHER THEATER |
| 01 | 193 | 17 | BABY DOLL LOUNGE | 34 | WHITE ST | TOPLESS BAR |
| 02 | 211 | 28 | LOVESTYLE VIDEO | 376 | CANAL ST | VIDEO STORE |
| 02 | 228 | 10 | XXX VIDEO SALE | 377 | CANAL ST | VIDEO STORE |
| 02 | 230 | · | XXX VIDEO SALE | 323 | CANAL ST | VIDEO STORE |
| 08 | 434 | 6 | CHIPPENDALES | 110 | 1ST AV | TOPLESS BAR |
| 02 | 528 | 52 | XXX VIDEO | 220 | VARICK ST | VIDEO STORE |
| 03 | 558 | 30 | ALL MALE JEWEL THEATRE | 100 | 3RD AV | MOVIE THEATER |
| 02 | 577 | 1 | XXX VIDEO SALE | 520 | 6TH AV | VIDEO STORE |
| 02 | 585 | 49 | CHRISTOPHER ST BOOKS | 500 | HUDSON ST | VIDEO STORE |
| 02 | 589 | 28 | CRAZY FANTASY XXX VIDEO | 331 | 6TH AV | VIDEO STORE |
| 02 | 596 | 1 | PRINCE THEATER | 329 | WEST ST | MOVIE THEATER |
| 02 | 619 | 45 | XXX VIDEO | 119 | CHRISTOPHER ST | VIDEO STORE |
| 02 | 630 | 30 | HARMONY VIDEO | 139 | CHRISTOPHER ST | VIDEO STORE |
| 02 | 636 | 1 | BADLANDS ADULT VIDEO | 388 | WEST ST | VIDEO STORE |
| 02 | 636 | 4 | XXX VIDEO | 391 | WEST ST | VIDEO STORE |
| 04 | 699 | 1 | PURE GOLD | 262 | 11TH AV | TOPLESS BAR |
| 04 | 761 | 31 | ZIDEO XX VIDEO | 539 | 8TH AV | BOOK STORE |

PREPARED BY NYC DEPARTMENT OF CITY PLANNING, GIS/PLANNING SUPPORT

APPENDIX - A

0470

JNR-000096

DCP SURVEY OF ADULT ENTERTAINMENT ESTABLISHMENTS, FALL 1993

2
12:30 Wednesday, November 15, 1995

------------------------------------------------ BORO=MANHATTAN ------ ----------------------------------------
(continued)

| CD | TAXBLOCK | TAXLOT | NAME | | ADDRESS | USE |
|----|----------|--------|------|--|---------|-----|
| 04 | 763 | 42 | 300 BOOK STORE | 300 | W 40TH ST | VIDEO STORE |
| 04 | 763 | 44 | BACK DATE MAGAZINES | 304 | W 40TH ST | BOOK STORE |
| 04 | 771 | 6 | ADULT VIDEO | 228 | 8TH AV | VIDEO STORE |
| 04 | 778 | 34 | CLUB 90 | 208 | W 29TH ST | TOPLESS BAR |
| 05 | 780 | 70 | PENN VIDEO | 252 | W 31ST ST | VIDEO STORE |
| 05 | 784 | 5 | ADULT ENTERTAINMENT CENTER | 488 | 8TH AV | PEEP SHOW |
| 05 | 787 | 1 | MEDALIOS | 552 | 8TH AV | TOPLESS BAR |
| 04 | 793 | 37 | XXX VIDEO | 603 | 6TH AV | VIDEO STORE |
| 04 | 798 | 11 | ALL-STAR HARMONY CLUB | 161 | W 22ND ST | TOPLESS BAR |
| 04 | 799 | 40 | ADULT VIDEO XXX | 725 | 6TH AV | VIDEO STORE |
| 04 | 799 | 42 | BILLYS TOPLESS | 729 | 6TH AV | TOPLESS BAR |
| 04 | 801 | 36 | SERENDIB XXX VIDEO & PEEP | 755 | 6TH AV | VIDEO STORE |
| 04 | 803 | 35 | ADULT VIDEO | 795 | 6TH AV | VIDEO STORE |
| 05 | 809 | 8 | PEEPWORLD | 155 | W 33RD ST | VIDEO STORE |
| 05 | 821 | 55 | TEXAS GOLD | 20 | W 20TH ST | TOPLESS BAR |
| 05 | 832 | 46 | VOGUE VIDEO | 296 | 5TH AV | VIDEO STORE |
| 05 | 834 | 69 | WORLD FAMOUS PARADISE | 42 | W 33RD ST | TOPLESS BAR |
| 05 | 840 | 12 | BANANA VIDEO | 55 | W 38TH ST | VIDEO STORE |
| 05 | 840 | 81 | MANHATTAN VIDEO | 60 | W 39TH ST | BOOK STORE |
| 05 | 843 | 39 | SALAX IN NEW YORK | 16 | E 16TH ST | TOPLESS BAR |
| 05 | 850 | 25 | STRINGFELLOW | 35 | E 21ST ST | TOPLESS BAR |
| 05 | 860 | 30 | A CARNIVALE | 39 | E 30TH ST | BOOK STORE |
| 06 | 896 | 1 | ALL MALE ADULT VIDEO | 125 | 3RD AV | VIDEO STORE |
| 06 | 896 | 2 | XXX VIDEO | 127 | 3RD AV | VIDEO STORE |

PREPARED BY NYC DEPARTMENT OF CITY PLANNING, CIS/PLANNING SUPPORT

0471

--------------------------------------------------- BORO-MANHATTAN ---------------------------------------------------
(continued)

| CD | TAXBLOCK | TAXLOT | NAME | | ADDRESS | USE |
|----|----------|--------|------|--|---------|-----|
| 06 | 917 | 156 | 24-HOUR XXX VIDEO | 557 | 3RD AV | VIDEO STORE |
| 06 | 921 | 1 | | 301 | E 14TH ST | VIDEO STORE |
| 05 | 994 | 47 | LES GALS | 136 | W 42ND ST | PEEP SHOW |
| 05 | 995 | 26 | FUN CITY | 113 | W 42ND ST | VIDEO STORE |
| 05 | 995 | 26 | 113 VIDEO CENTER | 113 | W 42ND ST | VIDEO STORE |
| 05 | 1000 | 64 | JOCKS | 711 | 7TH AV | OTHER THEATER |
| 05 | 1000 | 64 | SHOW FOLLIES CENTER | 711 | 7TH AV | BOOK STORE |
| 05 | 1001 | 3 | METROPOLE GOGO (RUNWAY 69) | 725 | 7TH AV | TOPLESS BAR |
| 05 | 1012 | 63 | XXX NECTAR | 632 | 8TH AV | VIDEO STORE |
| 05 | 1013 | 29 | L & J BOOKS & VIDEOS | 584 | 7TH AV | PEEP SHOW |
| 05 | 1013 | 35 | FORSYTH BOOKS | 598 | 7TH AV | BOOK STORE |
| 05 | 1013 | 37 | VIDEO WORLD CENTER | 210 | W 42ND ST | PEEP SHOW |
| 05 | 1013 | 53 | ROXY MOVIE | 244 | W 42ND ST | MOVIE THEATER |
| 05 | 1013 | 55 | NEPTUNE VIDEO | 252 | W 42ND ST | VIDEO STORE |
| 05 | 1013 | 55 | 250 BOOKSTORE | 250 | W 42ND ST | BOOK STORE |
| 05 | 1013 | 57 | EROTICA | 256 | W 42ND ST | VIDEO STORE |
| 05 | 1013 | 57 | NIMBLE VIDEO | 254 | W 42ND ST | VIDEO STORE |
| 05 | 1014 | 1 | TIME COME VIDEO | 263 | W 42ND ST | VIDEO STORE |
| 05 | 1014 | 1 | TIMES SQ ADULT SHOPPING CENTER | 267 | W 42ND ST | VIDEO STORE |
| 05 | 1014 | 5 | SHOW CENTER | 259 | W 42ND ST | PEEP SHOW |
| 05 | 1014 | 6 | G & A BOOKS | 251 | W 42ND ST | BOOK STORE |
| 05 | 1014 | 10 | HAREM | 249 | W 42ND ST | MOVIE THEATER |
| 05 | 1014 | 11 | VIDEO BLOW OUT | 247 | W 42ND ST | VIDEO STORE |
| 05 | 1014 | 13 | 241 BOOK INC | 241 | W 42ND ST | BOOK STORE |

PREPARED BY NYC DEPARTMENT OF CITY PLANNING, CIS/PLANNING SUPPORT

JNR-000098

-------------------------------------- BORO-MANHATTAN --------------------------------------
(continued)

| CD | TAXBLOCK | TAXLOT | NAME | ADDRESS | | USE |
|----|----------|--------|------|---------|---|-----|
| 05 | 1014 | 58 | SUPER VIDEO | 264 | W 43RD ST | VIDEO STORE |
| 05 | 1014 | 59 | PLAYPEN | 266 | W 43RD ST | BOOK STORE |
| 05 | 1014 | 60 | THE MALE BOX | 268 | W 43RD ST | VIDEO STORE |
| 05 | 1014 | 63 | SLR MERCHANDISING | 672 | 8TH AV | BOOK STORE |
| 05 | 1014 | 64 | SHOW PALACE | 670 | 8TH AV | BOOK STORE |
| 05 | 1017 | 2 | VENUS CINEMA | 728 | 8TH AV | MOVIE THEATER |
| 05 | 1017 | 63 | CAPRI THEATER | 738 | 8TH AV | MOVIE THEATER |
| 05 | 1017 | 63 | EROS THEATER | 738 | 8TH AV | MOVIE THEATER |
| 05 | 1017 | 105 | MARQUIS VIDEO | 265 | W 45TH ST | VIDEO STORE |
| 05 | 1018 | 39 | LAPS | 204 | W 47TH ST | MOVIE THEATER |
| 05 | 1019 | 3 | XXX VIDEO | 776 | 8TH AV | VIDEO STORE |
| 05 | 1020 | 38 | CIRCUS CINEMA | 1606 | BROADWAY | MOVIE THEATER |
| 05 | 1020 | 38 | PINKS | 204 | W 49TH ST | OTHER THEATER |
| 05 | 1021 | 49 | ADULT VIDEO EXPRESS | 216 | W 50TH ST | VIDEO STORE |
| 05 | 1024 | 131 | FLASH DANCERS | 1572 | BROADWAY | TOPLESS BAR |
| 05 | 1025 | 50 | NEW DAVID | 236 | W 54TH ST | OTHER THEATER |
| 05 | 1026 | 15 | FAMOUS LEGZ DIAMOND | 231 | W 54TH ST | TOPLESS BAR |
| 04 | 1033 | 32 | SHOW WORLD | 669 | 8TH AV | BOOK STORE |
| 04 | 1034 | 32 | CLUB 44 | 689 | 8TH AV | TOPLESS BAR |
| 04 | 1034 | 33 | XXX-TASY VIDEO | 691 | 8TH AV | PEEP SHOW |
| 04 | 1034 | 34 | ADONIS THEATER | 693 | 8TH AV | MOVIE THEATER |
| 04 | 1034 | 60 | NEW KING MALE CINEMA | 356 | W 44TH ST | MOVIE THEATER |
| 04 | 1037 | 34 | ADULT VIDEO | 763 | 8TH AV | VIDEO STORE |
| 04 | 1038 | 31 | HOLLYWOOD TWIN | 777 | 8TH AV | MOVIE THEATER |

0473

JNR-000099

DCP SURVEY OF ADULT ENTERTAINMENT ESTABLISHMENTS, FALL 1993

12:30 Wednesday, November 15, 1995    5

------------------------------------------------ BORO=MANHATTAN ------------------------------------------------
(continued)

| CD | TAXBLOCK | TAXLOT | NAME | | ADDRESS | USE |
|----|----------|--------|------|--|---------|-----|
| 04 | 1038 | 31 | HOLLYWOOD TWIN ADULT VIDEO | 777 | 8TH AV | VIDEO STORE |
| 04 | 1096 | 1 | THE XXX VIDEO | 644 | 12TH AV | VIDEO STORE |
| 07 | 1145 | 61 | AMSTERDAM AVE VIDEO | 287 | AMSTERDAM AV | VIDEO STORE |
| 07 | 1228 | 22 | ESHOMMES | 217 | W 80TH ST | VIDEO STORE |
| 06 | 1302 | 123 | FLASH DANCERS DANGEROUS CURVES | 127 | E 47TH ST | TOPLESS BAR |
| 06 | 1326 | 36 | LIONS DEN | 230 | E 53RD ST | VIDEO STORE |
| 06 | 1326 | 40 | HOUSE OF DREAMS | 220 | E 53RD ST | VIDEO STORE |
| 06 | 1326 | 40 | LOVE TO LOVE | 220 | E 53RD ST | VIDEO STORE |
| 06 | 1347 | 52 | THE DOLL HOUSE | 307 | E 54TH ST | TOPLESS BAR |
| 08 | 1435 | 16 | SCORES | 333 | E 60TH ST | TOPLESS BAR |

N = 107

PREPARED BY NYC DEPARTMENT OF CITY PLANNING, CIS/PLANNING SUPPORT

0474

JNR-000100

DCP SURVEY OF ADULT ENTERTAINMENT ESTABLISHMENTS, FALL 1993

12:30 Wednesday, November 15, 1995    6

-------------------------------------------- BORO=BRONX --------------------------------------------

| CD | TAXBLOCK | TAXLOT | NAME | | ADDRESS | USE |
|----|----------|--------|------|------|---------|-----|
| 05 | 2875 | 45 | ALTAGRACIA RESTAURANT | 1548 | UNIVERSITY AVE | TOPLESS BAR |
| 05 | 3164 | 31 | ASCOT MOVIE THEATRE | 2313 | GRAND CONCOURSE | MOVIE THEATER |
| 08 | 3266 | 112 | JUST US BAR | 156 | W 231ST ST | TOPLESS BAR |
| 11 | 4317 | 50 | GLOBE THEATER | 640 | PELHAM PARKWAY S | MOVIE THEATER |
| 12 | 4804 | 100 | MICKEY & ANTHONYS CABARET | 1769 | E GUN HILL RD | TOPLESS BAR |
| 12 | 4953 | 122 | PRETTY WOMAN | 4141 | BOSTON RD | TOPLESS BAR |
| 12 | 5275 | 6 | FOOLS PARADISE | 4074 | BOSTON RD | TOPLESS BAR |
| 10 | 5576 | 102 | RUFFLES BAR | 4026 | E TREMONT AVE | TOPLESS BAR |

N = 8

PREPARED BY NYC DEPARTMENT OF CITY PLANNING, GIS/PLANNING SUPPORT

0475

JNR-000101

DCP SURVEY OF ADULT ENTERTAINMENT ESTABLISHMENTS, FALL 1993

-------------------------------------------- BORO=BROOKLYN ------------- --------------------------------------------

| CD | TAXBLOCK | TAXLOT | NAME | ADDRESS | | USE |
|----|----------|--------|------|---------|--|-----|
| 02 | 268 | 52 | PANDORA BOOKS | 88 | COURT ST | BOOK STORE |
| 07 | 654 | 7 | VIDEO XXX WAREHOUSE | 761 | 3RD AV | VIDEO STORE |
| 07 | 687 | 1 | FOXY DEN | 920 | 3RD AV | TOPLESS BAR |
| 07 | 695 | 38 | VIDEO XXX | 952 | 3RD AV | VIDEO STORE |
| 07 | 706 | 24 | CORRADOS CLUB | 3915 | 1ST AV | TOPLESS BAR |
| 07 | 707 | 9 | WILD WILD WEST | 3901 | 2ND AV | TOPLESS BAR |
| 07 | 722 | 8 | MOMS BAR | 4201 | 2ND AV | TOPLESS BAR |
| 06 | 1009 | 5 | PLAYPEN ADULT VIDEO | 463 | 3RD AV | VIDEO STORE |
| 02 | 2012 | 70 | VIDEO XXX | 851 | ATLANTIC AV | VIDEO STORE |
| 12 | 5719 | 35 | VIDEO XXX | 1368 | 60TH ST | VIDEO STORE |
| 07 | 5789 | 46 | CORKSCREW CAFE | 6120 | 3RD AV | TOPLESS BAR |
| 15 | 6774 | 45 | THE RUBY CLUB | 1105 | QUENTIN RD | TOPLESS BAR |
| 15 | 6774 | 45 | XXX VIDEO | 1103 | QUENTIN RD | VIDEO STORE |
| 15 | 7170 | 42 | THE CABARET | 2937 | 86 ST | TOPLESS BAR |
| 14 | 7557 | 40 | CLUB CHEETAH | 1496 | FLATBUSH AV | TOPLESS BAR |

N = 15

PREPARED BY NYC DEPARTMENT OF CITY PLANNING, CIS/PLANNING SUPPORT

0476

DCP SURVEY OF ADULT ENTERTAINMENT ESTABLISHMENTS, FALL 1993

12:30 Wednesday, November 15, 1995                    8

------ BORO=QUEENS ------

| CD | TAXBLOCK | TAXLOT | NAME | | ADDRESS | USE |
|----|----------|--------|------|---|---------|-----|
| 02 | 25 | 9 | RIVERHEAD INN | 45-08 | VERNON BLVD | TOPLESS BAR |
| 02 | 160 | 50 | MERRY-GO-ROUND | 45-15 | QUEENS BLVD | TOPLESS BAR |
| 02 | 190 | 2 | GALLAGHERS | 39-33 | QUEENS BLVD | TOPLESS BAR |
| 01 | 239 | 19 | CANDY | 29-32 | NORTHERN BLVD | TOPLESS BAR |
| 02 | 276 | 41 | XXX VIDEO | 31-17 | QUEENS BLVD | VIDEO STORE |
| 02 | 304 | 113 | SCANDALS | 32-37 | GREENPOINT AV | TOPLESS BAR |
| 01 | 589 | 44 | MERMAID | 31-08 | 31ST ST | TOPLESS BAR |
| 01 | 668 | 5 | CITYSCAPE | 35-03 | 38TH ST | TOPLESS BAR |
| 01 | 823 | 165 | XXX VIDEO | 36-19 | DITMARS BLVD | VIDEO STORE |
| 01 | 833 | 3 | PENNY WHISTLE | 31-07 | 23RD AV | TOPLESS BAR |
| 03 | 1284 | 7 | EARLE THEATER | 73-07 | 37TH RD | MOVIE THEATER |
| 02 | 1329 | 1 | NAKED CITY | 56-07 | QUEENS BLVD | TOPLESS BAR |
| 03 | 1364 | 16 | FAIR THEATRE | 90-18 | ASTORIA BLVD | MOVIE THEATER |
| 03 | 1366 | 21 | COZY CABIN | 92-03 | ASTORIA BLVD | TOPLESS BAR |
| 03 | 1366 | 39 | LOVESHACK ADULT VIDEO | 92-20 | ASTORIA BLVD | VIDEO STORE |
| 03 | 1393 | 45 | WILEYS | 95-07 | 31ST AVE | TOPLESS BAR |
| 03 | 1467 | 39 | POLK THEATER | 93-09 | 37TH AVE | MOVIE THEATER |
| 03 | 1480 | 42 | FIDDLE & BOW | 92-07 | ROOSEVELT AV | TOPLESS BAR |
| 03 | 1502 | 6 | DEE TWO VIDEO | 86-10 | ROOSEVELT AV | VIDEO STORE |
| 04 | 1506 | 1 | PIDES PLACE II | 81-26 | BAXTER AV | TOPLESS BAR |
| 03 | 1706 | 1 | JOHNNY JAYS CATCH ME IF YOU CA | N112-08 | ASTORIA BLVD | TOPLESS BAR |
| 03 | 1770 | 81 | TOPLESS BAR | 39-02 | 104TH ST | TOPLESS BAR |
| 04 | 1862 | 1 | CANHE | 92-02 | CORONA AV | TOPLESS BAR |
| 06 | 2075 | 39 | GOLDFINGERS | 92-77 | QUEENS BLVD | TOPLESS BAR |
| 02 | 2282 | 29 | HONEYS | 49-14 | QUEENS BLVD | TOPLESS BAR |

PREPARED BY NYC DEPARTMENT OF CITY PLANNING, GIS/PLANNING SUPPORT

0477

DCP SURVEY OF ADULT ENTERTAINMENT ESTABLISHMENTS, FALL 1993

------------------------------------------------ BORO=QUEENS ------------------------------------------------
(continued)

| CD | TAXBLOCK | TAXLOT | NAME | ADDRESS | | USE |
|----|----------|--------|------|---------|---|-----|
| 02 | 2432 | 21 | NICKELS | 69-20 | QUEENS BLVD | TOPLESS BAR |
| 05 | 2736 | 55 | TREASURE CHEST | 60-07 | METROPOLITAN AVE | TOPLESS BAR |
| 04 | 2855 | 17 | ADULT LOVE BOUTIQUE | 89-18 | QUEENS BLVD | PEEP SHOW |
| 06 | 3080 | 23 | VIRGINIAS | 95-36 | QUEENS BLVD | TOPLESS BAR |
| 06 | 3086 | 22 | XXX VIDEO STORE | 98-32 | QUEENS BLVD | VIDEO STORE |
| 09 | 3338 | 18 | AUSTIN THEATER | 81-07 | LEFFERTS BLVD | MOVIE THEATER |
| 07 | 4294 | 1 | GALLAGHERS II | 26-35 | 123RD ST | TOPLESS BAR |
| 07 | 4958 | 48 | SPORTS BAR | 135-41 | ENORTHERN BLVD | TOPLESS BAR |
| 07 | 4977 | 10 | CORSETORIUM INC | 36-35 | MAIN ST | OTHER |
| 07 | 5033 | 14 | GOODTIME VIDEO | 150-36 | NORTHERN BLVD | VIDEO STORE |
| 07 | 5040 | 1 | CANDELWOOD INN | 41-57 | COLLEGE POINT BLVD | TOPLESS BAR |
| 08 | 6930 | 1 | MAYFAIR THEATRE | 68-25 | FRESH MEADOW LANE | MOVIE THEATER |
| 09 | 8988 | 103 | PORT O CALL | 93-10 | WOODHAVEN BLVD | TOPLESS BAR |
| 09 | 9056 | 16 | ANDYS BAR | 85-01 | ROCKAWAY BLVD | TOPLESS BAR |
| 12 | 9690 | 7 | GORDONS TOPLESS BAR | 146-16 | HILLSIDE AV | TOPLESS BAR |
| 12 | 9798 | 15 | KRYSTALLS | 89-25 | MERRICK BLVD | TOPLESS BAR |
| 12 | 9994 | 51 | DREAMS TOPLESS BAR | 90-67 | SUTPHIN BLVD | TOPLESS BAR |
| 13 | 10759 | 147 | HAPPY TIPS LOUNGE | 215-50 | JAMAICA AV | TOPLESS BAR |
| 13 | 13614 | 12 | XXX VIDEO | 245-02 | S CONDUIT AVE | VIDEO STORE |

N = 44

PREPARED BY NYC DEPARTMENT OF CITY PLANNING, CIS/PLANNING SUPPORT

0478

DCP SURVEY OF ADULT ENTERTAINMENT ESTABLISHMENTS, FALL 1993

12:30 Wednesday, November 15, 1995

10

------------------------------ BORO=S.I. ------------------------------

| CD | TAXBLOCK | TAXLOT | NAME | | ADDRESS | USE |
|----|----------|--------|------|------|---------|-----|
| 02 | 2162 | 190 | LIPSTICKS | 3575 | VICTORY BLVD | TOPLESS BAR |
| 02 | 3110 | 127 | SCARLETTS | 283 | SAND LANE | TOPLESS BAR |
| 03 | 7206 | 1 | MIPPS | 2945 | ARTHUR KILL RD | TOPLESS BAR |

N = 3

PREPARED BY NYC DEPARTMENT OF CITY PLANNING, CIS/PLANNING SUPPORT

0479

JNR-000105

# ADULT ESTABLISHMENT GUIDELINES

## DEFINITION OF AN ADULT ESTABLISHMENT

ZR §12-10 defines an adult establishment as any commercial establishment which features the depiction, description, or display of "specified anatomical areas" or "specified sexual activities" to the degree specified in the text.  Adult establishments include:

- adult bookstores,
- adult eating or drinking establishments,
- adult theaters,
- other adult commercial establishments,
- or any combination of the above.

When determining whether a **substantial portion of an establishment** is devoted to an adult establishment(s), the following factors are to be considered:

1) the amount of floor area and cellar space accessible to the customer and allocated to such establishment, and

2) the percentage of total floor area and cellar space accessible to the customer and allocated to such establishment (("adult" FA accessible to the customer + "adult" cellar space accessible to the customer) / (total FA accessible to the customer)).

When determining whether a **substantial portion of an establishment's stock in trade** is devoted to specified materials, the following factors are to be considered:

1) the percentage of total stock accessible to the customer that such materials represent (("adult" stock accessible to the customers) / (total stock accessible to the customer)), and

2) the amount of floor area and cellar space accessible to the customer containing such materials, and

3) the percentage of total floor area and cellar space accessible to the customer containing such materials (("adult" FA accessible to the customer + "adult" cellar space accessible to the customer) / (total FA accessible to the customer)).

See definition under ZR §12-10 for further guidance.

1

0480

# ADULT ESTABLISHMENT GUIDELINES

## PROHIBITED LOCATIONS

Adult establishments are <u>not</u> permitted in the following districts or locations:

- On the same zoning lot as another adult establishment.
- Residence districts.
- C1, C2, C3, C4, C5, C6-1, C6-2, or C6-3 zoning districts.
- C6-4, C6-5, C6-6, C6-7, C6-8, C6-9, C7, or C8 zoning districts <u>within 500' of</u>:
  - a church established before April 10, 1995,
  - a school established before April 10, 1995,
  - a residence district,
  - a C1, C2, C3, C4, C5-1, C6-1, C6-2, or C6-3 zoning district,
  - a manufacturing district, other than M1-6M district, in which new residence, new joint living-work quarters for artists, or new loft dwellings are allowed, under the provisions of the zoning resolution, as-of-right or by special permit or authorization, or
  - another adult establishment.
- Manufacturing districts in which residences, joint living-work quarters for artists, or loft dwellings are, under the provisions of the Zoning Resolution, allowed as-of-right or by special permit or authorization.
- In any other manufacturing district <u>within 500' of</u>:
  - a church established before April 10, 1995,
  - a school established before April 10, 1995,
  - a residence district,
  - a C1, C2, C3, C4, C5-1, C6-1, C6-2, or C6-3 zoning district,
  - a manufacturing district, other than M1-6M district, in which new residence, new joint living-work quarters for artists, or new loft dwellings are allowed, under the provisions of the zoning resolution, as-of-right or by special permit or authorization, or
  - another adult establishment.

## SIZE LIMITATIONS

- Under no circumstances may an adult establishment exceed in total 10,000 square feet of floor area or cellar space not used for enclosed storage or mechanical equipment.

2

0481

# ADULT ESTABLISHMENT GUIDELINES

## SIGN LIMITATIONS

- Accessory business signs for adult establishments are permitted but are subject to the sign regulations otherwise applicable in C1 zoning districts except that the provisions of ZR §32-64 shall not apply.
- The maximum surface area of all accessory business signs for adult establishments shall not exceed. in the aggregate, three times the street frontage of the zoning lot, but in no event more than 150 square feet per establishment. of which no more than 50 square feet may be illuminated, non-flashing signs.
- In manufacturing districts, accessory business signs for adult establishments  are not permitted on the roof of any building and are not permitted to extend above curb level at a height of greater than 25 feet.

## AMORTIZATION OF ADULT ESTABLISHMENTS (§52-77)

General rule:      In all districts, non-conforming adult establishments, including any business signs accessory thereto, shall <u>terminate</u> within one year from October 25, 1995, or from such later date that the adult establishment or sign becomes non-conforming.

Exceptions:      Any adult establishment which existed on October 25, 1995, and which conform to all provisions of the Zoning Resolution regarding adult establishments other than paragraphs (c), (d), and (e) of ZR §32-01 or paragraphs (c), (d), and (e) of ZR §42-01 shall not be required to amortize pursuant to ZR §52-77.

     The Board of Standards and Appeals may, pursuant to ZR §72-40, extend the time period for amortization of an adult establishment or business sign accessory thereto under specified circumstances.

## NON-CONFORMING USES (§52-30):

- A legal non-conforming use may not be changed to a use including an adult establishment, except as provided in Section 32-01 or Section 42-01.

3

0482



**DEPARTMENT OF BUILDINGS**

EXECUTIVE OFFICES
60 HUDSON STREET, NEW YORK, N.Y. 10013-3394

GASTON SILVA, R.A., Commissioner

(212) 312-8100

Richard C. Visconti, R.A.
First Deputy Commissioner
Technical Affairs/Operations
(212) 312-8120
TTY (212) 312-8188

Issuance # 506

---

## OPERATIONS
## POLICY AND PROCEDURE NOTICES # 6/96

---

**TO:**  Distribution

**FROM:**  Richard C. Visconti, R.A.

**DATE:**  October 25, 1996

**SUBJECT:**  Adult Establishments -- Applications and Complaint Procedure

---

**Reference:**  Zoning Resolution Sections 11-113, 11-30, 12-10, 32-00, 42-00, 42-55, 51-00, 52-00, and 72-00, et seq.

**Purpose:**  To clarify procedures for enforcement of the provisions of the Zoning Resolution relating to adult establishments.

**Effective:**  October 26, 1996

**Specifics:**  This PPN supersedes PPN # 17/95.

♦ ### FILING PROCESS

• #### Applicant

Directive 14 of 1975 and the Professional Certification of Application and Plans Process (PPN #2/95) may not be used for any filing related to adult establishments.

In Section 16 (comments) of the PWI, the applicant shall indicate whether the filing he/she is making is to create, enlarge or extend an adult establishment or to erect a business sign accessory to such an establishment.

The application shall also include a separate area diagram detailing all existing uses and block and lot numbers within 500 feet of the center line of the door(s) of the principal entrance of the adult establishment or of the center line of the ground floor door(s) giving the most direct street access to the adult establishment.

- ### Plan Examiner

An objection shall be raised if there exists another adult establishment within 500 feet of the proposed use or on the same zoning lot or if the establishment is in the wrong zoning district.  Examiners should be guided by the Provision of the Zoning Resolution Relating to Adult Establishments, a copy of which is attached hereto as Appendix A.

- ### Permit Clerk

Prior to issuing a work permit for an adult establishment, the clerk shall refer the applicant to the Borough Commissioner (or his/her designee) who shall verify from a batch report of all applications filed on or after October 25, 1995 to create, enlarge or extend an adult establishment made available weekly by MIS, that the new establishment meets the criteria established under the Zoning Resolution.

♦ ## ENFORCEMENT PROCESS

### *Borough Complaint Clerk:*

- ### For All Boroughs Except Manhattan

Any complaint received about an adult establishment shall be data entered into BIS using complaint category code 75.  The complaint will automatically be assigned a "B" priority.  The jurisdiction must state "refer to Operations", category 98.

The disposition of the complaint by the Night Squad shall be data entered upon being returned to the Borough office and a written response letter generated to the complainant.

- ### For Manhattan Only

Any complaint received about an adult establishment shall be data entered onto BIS using complaint category code 75.  The complaint will automatically be assigned a "B" priority.  The jurisdiction must state "refer to Office of Midtown Enforcement" category G7.

A written response letter will be generated and mailed to the complainant indicating the complaint was referred to the Office of Midtown Enforcement, 330 West 42nd Street, 15th Floor, New York, New York 10036.

On a weekly basis, the Borough Office shall batch these complaint letters to that Office for investigation.

- **Executive Chief Inspector's Office**

The Executive Chief shall secure a city-wide BIS printout of all category code 75 complaints on a weekly basis, print out the required work orders and route the Night Squad inspectors.

The Executive Chief's Office shall request the respective borough office to provide the following information with respect to each premises to be inspected.

* Certificate of Occupancy,
* Sign permits,
* Any other documentation which may establish the existing legal use,
* Zoning or Sanborn map showing premises location.

- **Night Emergency Squad**

Any Department of Buildings notice of violation written for violating Zoning Resolution Section 11-113 must identify specific type of adult establishment defined in the Zoning Resolution Section 12-10 as the following:

* An Adult Bookstore, or
* An Adult Eating or Drinking Establishment, or
* An Adult Theater, or
* Other commercial establishment, or
* Any combination of the above.

To the extent possible, the Night Squad log should include, but not be limited to, the following:

* a brief layout of any premises inspected, including the size of the space, location and number of entrances, and description and location of signs,
* the extent of the adult establishment,
* a description of the activities taking place inside the premises,
* the name(s) of the person(s) in charge (if possible), and
* proximity to any places of worship/churches, schools or other adult establishments,
* the size of the area devoted to the adult establishment and/or adult materials in relation to the total floor area and cellar space accessible to the customer, and
* the quantity of stock/inventory devoted to adult material in relation to the entire stock/inventory

Back-up documentation and the results of the inspection written on the work order shall be submitted to the Executive Chief who shall review the materials. If a determination is made that a violation

0486

should be issued, it shall be returned to the respective Borough Office for data entry.

Inspectors should refer to Appendix A for further guidance.

c:\aeproc.ppn

0487

## PROVISIONS OF THE ZONING RESOLUTION RELATING
## TO ADULT ESTABLISHMENTS

### DEFINITION OF AN ADULT ESTABLISHMENT

ZR §12-10 defines an adult establishment as any commercial establishment which features the depiction, description or display of "specified anatomical areas" or "specified sexual activities" to the degree specified in the text. Adult establishments include:

- adult bookstores,
- adult eating or drinking establishments
- adult theaters,
- other adult commercial establishments,
- or any combination of the above.

When determining whether a **substantial portion of an establishment** is devoted to an adult establishment(s), the following factors are to be considered:

(1) the amount of floor area and cellar space accessible to the customer and allocated to such an establishment, and

(2) the percentage of total floor area and cellar space accessible to the customer and allocated to such establishment -- (["adult" FA accessible to the customer + "adult" cellar space accessible to the customer] / [total FA accessible to the customer]).

When determining whether a **substantial portion of an establishment's stock in trade** is devoted to specified materials, the following factors are to be considered:

(1) the percentage of total stock accessible to the customer that such materials represent -- (["adult" stock accessible to the customers] / [total stock accessible to the customer]), and

(2) the amount of floor area and cellar space accessible to the customer containing such materials, and

(3) the percentage of total floor area and cellar space accessible to the customer containing such materials -- (["adult" FA accessible to the customer + "adult" cellar space accessible to the customer] / [total FA accessible to the customer]).

See definition under ZR §12-10 for further guidance.

**APPENDIX A**

0488

## PROVISIONS OF THE ZONING RESOLUTION RELATING
## TO ADULT ESTABLISHMENTS

### PROHIBITED LOCATIONS

Adult establishments are not permitted in the following districts or locations:

- on the same zoning lot as another adult establishment.
- Residence districts
- C1, C2, C3, C4, C5, C6-1, C6-2, or C6-3 zoning districts.
- C6-4, C6-5, C6-6, C6-7, C6-8, C6-9, C7, or C8 zoning districts within 500' of:
  - a church
  - a school
  - a residence districts
  - a C1, C2, C3, C4, C5-1, C6-1, C6-2, or C6-3 zoning district,
  - a manufacturing district, other than M1-6M district, in which new residence, new joint living-work quarters for artists, or new loft dwellings are allowed, under the provisions of the zoning resolution, as-of-right or by special permit or authorization, or
  - another adult establishment.

EXCEPTION: An adult establishment will not become non-conforming if a church or school locates within 500 feet of an existing adult establishment after April 10, 1995 (ZR 32-01 and 42-10).

- Manufacturing districts in which residences, joint living-work quarters for artists, or loft dwellings are, under the provisions of the Zoning Resolution, allowed as-of-right or by special permit or authorization.
- In all other manufacturing districts within 500' of:
  - a church
  - a school
  - a residence district,
  - a C1, C2, C3, C4, C5-1, C6-1, C6-2, or C6-3 zoning district,
  - a manufacturing district, other than M1-6M district, in which new residence, new joint living-work quarters for artists, or new loft dwellings are allowed, under the provisions of the Zoning Resolution, as-of-right by special permit or authorization, or

0489

## PROVISIONS OF THE ZONING RESOLUTION RELATING
## TO ADULT ESTABLISHMENTS

- another adult establishment

EXCEPTION:     An adult establishment will not become non-conforming if a church or school locates within 500 feet of an existing adult establishment after April 10, 1995 (ZR 32-01 and 42-10).

### SIZE LIMITATIONS

- Under no circumstances may an adult establishment exceed in total 10,000 square feet of floor area or cellar space not used for enclosed storage or mechanical equipment.

### SIGN LIMITATIONS

- Accessory business signs for adult establishments are permitted but are subject to the sign regulations otherwise applicable in C1 zoning districts except that the provisions of ZR §32-64 shall not apply.
- The maximum surface area of accessory business signs for adult establishments shall not exceed, in the aggregate, three times the street frontage of the zoning lot, but in no event more than 150 square feet per establishment, of which no more than 50 square feet may be illuminated, non-flashing signs
- In manufacturing districts, accessory business signs for adult establishments are not permitted on the roof of any building and are not permitted to extend above curb level at height of greater than 25 feet

### TERMINATION OF EXISTING ADULT ESTABLISHMENTS (ZR §52-77)

General rule:     In all districts, non-conforming adult establishments, including any business signs accessory thereto, shall terminate within one year from October 25, 1995, or from such later date that the adult establishment or sign becomes non-conforming.

Exceptions:     Any adult establishment which existed on October 25, 1995, and which conforms to provisions of the Zoning Resolution relating to adult establishments other than the provisions of all or any combination of paragraphs (c), (d), and (e) of ZR §32-01 or paragraphs (c), (d), and (e) of ZR §42-01 shall not be subject to ZR §52-77 (Amortization provision).

0490

The Board of Standards and Appeals may, pursuant to ZR §72-40 and ZR §52-734, extend the time period for amortization of an adult establishment or business sign accessory thereto under specified circumstances.

## NON-CONFORMING USES (ZR §52-38)

- A legal non-conforming use may not be changed to an adult establishment, except as provided in Section 32-01 or Section 42-01.



**DEPARTMENT OF BUILDINGS**

EXECUTIVE OFFICES
60 HUDSON STREET, NEW YORK, N.Y. 10013-3394

GASTON SILVA, R.A., Commissioner

(212) 312-8100

Richard C. Visconti, R.A.
First Deputy Commissioner
Technical Affairs/Operations
(212) 312-8120
TTY (212) 312-8188

Issuance # 507

---

## OPERATIONS
## POLICY AND PROCEDURE NOTICES # 7/96

---

**TO:**          Distribution

**FROM:**       Richard C. Visconti, R.A.

**DATE:**       October 25, 1996

**SUBJECT:**    Adult Establishments -- Places of Worship/Churches

---

**Reference:**   Zoning Resolution Sections 11-113, 11-30, 12-10, 32-00, 42-00, 42-55, 51-00, 52-00, and 72-00, et seq.

**Purpose:**     To establish a uniform definition of a "place of worship"/"church" in order to assure the provisions of the Zoning Resolution relating to adult establishments is accurately enforced.

**Effective:**   October 26, 1996

**Specifics:**

The Department of Buildings does not maintain a survey or catalogue of all churches or other places of worship in the City of New York for the purpose of enforcing the adult establishment provision in the Zoning Resolution. With respect to enforcing zoning regulations for adult establishments, this PPN will refer to a "church" as any "place of worship".

Evidence supporting the allegation that a particular premises is occupied by a place of worship

0493

should be issued, it shall be returned to the respective Borough Office for data entry.

Inspectors should refer to Appendix A for further guidance.

c:\aeproc.ppn

0494



**DEPARTMENT OF BUILDINGS**

EXECUTIVE OFFICES
60 HUDSON STREET, NEW YORK, N.Y. 10013-3394

GASTON SILVA, R.A., Commissioner

(212) 312-8100

Richard C. Visconti, R.A.
First Deputy Commissioner
Technical Affairs/Operations
(212) 312-8120
TTY (212) 312-8188

Issuance # 508

---

## OPERATIONS
## POLICY AND PROCEDURE NOTICES # 8/96

---

**TO:**       Distribution

**FROM:**   Richard C. Visconti, R.A.

**DATE:**   October 25, 1996

**SUBJECT:**   Adult Establishments -- Measuring the 500 feet distance requirement

---

**Reference:**   Zoning Resolution Sections 11-113, 11-30, 12-10, 32-00, 32-01, 42-00, 42-01, 42-55, 51-00, 52-00, and 72-00, et seq.

**Purpose:**   To clarify the manner in which the Department determines the distances between adult establishments and schools or places of worship/churches.

**Effective:**   October 26, 1996

**Specifics:**

     Pursuant to the Zoning Resolution, adult establishments are not permitted in residence districts and certain commercial districts. In those districts in which adult establishments are permitted, the Zoning Resolution requires that such establishments be located at least 500 feet from a place of worship/church, a school (both also referred to as "sensitive receptors"), or another adult establishment. A "place of worship"/"church" is defined in PPN # 7/96. A "school" is defined in Section 12-10 of the Zoning Resolution. In order to ascertain whether an adult establishment is within 500 feet of such sensitive receptor or another adult establishment, the Department of Buildings shall determine the 500-foot distance radially as set forth below.

## Measuring From the Adult Establishment

When measuring from the adult establishment, the 500-foot distance shall be measured from the center line of the door(s) of the principal entrance of the adult establishment or from the center line of the ground floor door(s) giving the most direct street access to the adult establishment.

## Measuring Between Two Adult Establishments "A" and "B"

When measuring between two adult establishments, the 500-foot distance shall be measured from the center line of the door(s) of the principal entrance of adult establishment "A" or from the center line of the ground floor door(s) giving the most direct street access to adult establishment "A" to the center line of the door(s) of the principal entrance of adult establishment "B" or to the center line of the ground floor door(s) giving the most direct street access to adult establishment "B".

## Measuring From the Adult Establishment to the Sensitive Receptor

With respect to measuring from the adult establishment to the sensitive receptor, the 500-foot distance shall be measured from the center line of the door(s) of the principal entrance of the adult establishment or from the center line of the ground floor door(s) giving the most direct street access to the adult establishment to the outside face of the closest demising wall of the school or place of worship. If there are outdoor spaces directly adjacent to and customarily used by such school or place of worship, such as a school playground, the 500-foot distance shall be measured from the previously described door(s) of the adult establishment to the nearest boundary point of a school playground rather than the boundary of the school building.

However, if a school or place of worship shares a zoning lot with an unrelated use such as a commercial office building, the office building portion of the zoning lot shall not be considered part of the sensitive receptor site.

c:\ae500.ppn

## PROVISIONS OF THE ZONING RESOLUTION RELATING
## TO ADULT ESTABLISHMENTS

### PROHIBITED LOCATIONS

Adult establishments are <u>not</u> permitted in the following districts or locations:

- on the same zoning lot as another adult establishment.
- Residence districts
- C1, C2, C3, C4, C5, C6-1, C6-2, or C6-3 zoning districts.
- C6-4, C6-5, C6-6, C6-7, C6-8, C6-9, C7, or C8 zoning districts <u>within 500' of</u>:
  - a church
  - a school
  - a residence districts
  - a C1, C2, C3, C4, C5-1, C6-1, C6-2, or C6-3 zoning district,
  - a manufacturing district, other than M1-6M district, in which new residence, new joint living-work quarters for artists, or new loft dwellings are allowed, under the provisions of the zoning resolution, as-of-right or by special permit or authorization, or
  - another adult establishment.

EXCEPTION:    An adult establishment will not become non-conforming if a church or school locates within 500 feet of an <u>existing</u> adult establishment after April 10, 1995 (ZR 32-01 and 42-10).

- Manufacturing districts in which residences, joint living-work quarters for artists, or loft dwellings are, under the provisions of the Zoning Resolution, allowed as-of-right or by special permit or authorization.
- In all other manufacturing districts <u>within 500' of</u>:
  - a church
  - a school
  - a residence district,
  - a C1, C2, C3, C4, C5-1, C6-1, C6-2, or C6-3 zoning district,
  - a manufacturing district, other than M1-6M district, in which new residence, new joint living-work quarters for artists, or new loft dwellings are allowed, under the provisions of the Zoning Resolution, as-of-right by special permit or authorization, or

0498

## PROVISIONS OF THE ZONING RESOLUTION RELATING
## TO ADULT ESTABLISHMENTS

- another adult establishment

EXCEPTION:  An adult establishment will not become non-conforming if a church or school locates within 500 feet of an <u>existing</u> adult establishment after April 10, 1995 (ZR 32-01 and 42-10).

### SIZE LIMITATIONS

- Under no circumstances may an adult establishment exceed in total 10,000 square feet of floor area or cellar space not used for enclosed storage or mechanical equipment.

### SIGN LIMITATIONS

- Accessory business signs for adult establishments are permitted but are subject to the sign regulations otherwise applicable in C1 zoning districts except that the provisions of ZR §32-64 shall not apply.

- The maximum surface area of accessory business signs for adult establishments shall not exceed, in the aggregate, three times the street frontage of the zoning lot, but in no event more than 150 square feet per establishment, of which no more than 50 square feet may be illuminated, non-flashing signs.

- In manufacturing districts, accessory business signs for adult establishments are not permitted on the roof of any building and are not permitted to extend above curb level at height of greater than 25 feet.

### TERMINATION OF EXISTING ADULT ESTABLISHMENTS (ZR §52-77)

General rule:   In all districts, non-conforming adult establishments, including any business signs accessory thereto, shall <u>terminate</u> within one year from October 25, 1995, or from such later date that the adult establishment or sign becomes non-conforming.

Exceptions:   Any adult establishment which existed on October 25, 1995, and which conforms to provisions of the Zoning Resolution relating to adult establishments other than the provisions of all or any combination of paragraphs (c), (d), and (e) of ZR §32-01 or paragraphs (c), (d), and (e) of ZR §42-01 shall not be subject to ZR §52-77 (Amortization provision).

0499

The Board of Standards and Appeals may, pursuant to ZR §72-40 and ZR §52-734, extend the time period for amortization of an adult establishment or business sign accessory thereto under specified circumstances.

### NON-CONFORMING USES (ZR §52-38)

- A legal non-conforming use may not be changed to an adult establishment, except as provided in Section 32-01 or Section 42-01.

0500

Menu



Search

NYC CodesCode NotesCode DevelopmentReference

| Select ▼ |

- Buildings Bulletins
- Executive Orders
- Directives & Memoranda
- Policy and Procedure Notices
- Rules
- Local Laws
- OTCR
- NYS DEC Wetlands
- Presentations

# Operations Policy And Procedure Notices #04/98

| Date: | July 22, 1998 |
|-------|---------------|
| Subject: | **Adult Establishment -- "Substantial Portion"** |
| Effective: | Immediately |
| Purpose: | To provide guidance as to the meaning of the phrase "substantial portion" as used in the definition of "adult establishment" in Section 12-10 of the Zoning Resolution. |
| Reference: | Zoning Resolution Sections 12-10, 32-01, 32-69, 42-01, 42-55, 52-734, 52-77, 72-40 |
| Specifics: | Section 12-10 of the Zoning Resolution ("ZR") defines an adult establishment as an establishment, a "substantial portion" of which is occupied by an adult use. The phrase "substantial portion" is again used to define an adult book store as a book store with a substantial portion of its stock-in-trade in materials as defined in ZR §12-10 (a)(1) and (a)(2) ("adult materials"). In order that the |

JNR-000124

provisions relating to adult establishments be properly enforced, this OPPN sets forth guidelines to clarify the meaning of the phrase "substantial portion."

Adult Book Store

An establishment shall be deemed a book store if its principal use is selling books, magazines, periodicals or other printed matter or photographs, films, motion pictures, video cassettes, slides or other visual representations, regardless of floor area. If at least 40 percent of the book store's total stock accessible or available ("accessible") for sale or rent to customers is comprised of adult materials, then the book store has a "substantial portion" of its stock in adult materials, and is therefore an "adult book store."

An establishment also includes an adult book store if 40 percent of the establishment's floor area and cellar space accessible to customers contains stock in adult materials.

If 10,000 or more square feet of an establishment is occupied by adult materials, the establishment is deemed to be an "adult book store" regardless of the overall size of the establishment.

General interest stores, including general interest book and video stores, with a section of adult materials that is modest in scale as compared to the overall size or stock of the store, are not intended to be covered by the adult establishment definition in ZR §12-10.

Adult eating or drinking establishment, theater or other commercial establishment

The determination whether a "substantial portion" of an eating or drinking establishment, theater or other commercial establishment includes an adult use should include consideration of the amount of floor area and cellar space accessible to customers allocated to adult use for performance and viewing purposes as compared to total combined floor area and cellar space accessible to customers.

Thus, if an eating or drinking establishment, a theater or other commercial establishment, has at least 40 percent of the floor and cellar area that is accessible to customers, available for adult performance and viewing purposes, then a "substantial portion" of the establishment is devoted to an adult use and is an "adult eating or drinking establishment", an "adult theater" or an "other adult commercial establishment."

If 10,000 or more square feet of an eating or drinking establishment, a theater or other commercial establishment is occupied by an adult use, the establishment is deemed to be an "adult eating or drinking establishment", an "adult theater" or an "other adult commercial establishment" regardless of the overall size of the establishment.

Adult entertainment should be the principal form of entertainment at the establishment.

JNR-000126



Search
NYC CodesCode NotesCode DevelopmentReference

| Select ▼ |

- Buildings Bulletins
- Executive Orders
- Directives & Memoranda
- Policy and Procedure Notices
- Rules
- Local Laws
- OTCR
- NYS DEC Wetlands
- Presentations

# Operation Policy and Procedure Notices #06/98

| | |
|---|---|
| Date: | **August 13, 1998** |
| Subject: | **Adult Establishment -- "Substantial Portion"** |
| Effective: | Immediately |
| Reference: | Zoning Resolution Sections 12-10, 32-01, 32-69, 42-01, 42-55, 52-734, 52-77, 72-40 |
| Purpose: | To provide guidance as to the meaning of the phrase "substantial portion" as used in the definition of "adult establishment" in Section 12-10 of the Zoning Resolution. |
| Supercedes: | OPPN #4/98 |
| Superseded: | OPPN #1/00 |
| Specifics: | Section 12-10 of the Zoning Resolution ("ZR") defines an adult establishment |

as an establishment, a "substantial portion" of which is occupied by an adult book store, adult eating or drinking establishment, adult theater, or "other adult commercial establishment" ("adult use"). The phrase "substantial portion" is again used to define an adult book store as a book store with a substantial portion of its stock-in-trade in materials as defined in ZR §12-10 (a)(1) and (a) (2) ("adult materials"). In order that the provisions relating to adult establishments be properly enforced, this OPPN sets forth guidelines to clarify the meaning of the phrase "substantial portion."

I. Adult Book Store

An establishment shall be deemed a book store if its principal use is selling books, magazines, periodicals or other printed matter or photographs, films, motion pictures, video cassettes, slides or other visual representations, regardless of floor area. If at least 40 percent of the book store's total stock accessible or available ("accessible") for sale or rent to customers is comprised of adult materials, then the book store has a "substantial portion" of its stock in adult materials, and is therefore an "adult book store."

An establishment also includes an adult book store if 40 percent of the establishment's floor area and cellar space accessible to customers contains stock in adult materials.

If 10,000 or more square feet of an establishment is occupied by adult materials, the establishment is deemed to be an "adult book store" regardless of the overall size of the establishment.

General interest stores, including general interest book and video stores, with a section of adult materials that is modest in scale as compared to the overall size or stock of the store, are not intended to be covered by the adult establishment definition in ZR §12-10.

II. Adult Establishment

The determination as to whether a "substantial portion" of a commercial establishment with two or more uses, at least one of which is not a book store, an eating or drinking establishment, a theater, or an "other adult commercial establishment," includes an adult use should include consideration of (1) the amount of floor area and cellar space accessible to customers allocated to adult use and (2) such amount of floor area and cellar space as compared to total combined floor area and cellar space accessible to customers.

Thus, if a commercial establishment with two or more uses, at least one of which is not a book store, an eating or drinking establishment, a theater, or an "other adult commercial establishment," has at least 40 percent of the floor and cellar area that is accessible to customers available for adult use, then a "substantial portion" of the establishment is devoted to an adult use and the commercial establishment is deemed to be an adult establishment.

If 10,000 or more square feet of a commercial establishment with two or more uses, at least one of which is not a book store, an eating or drinking establishment, a theater, or an "other adult commercial establishment," is occupied by an adult use, the commercial establishment is deemed to be an "adult establishment" regardless of the overall size of the establishment.

Section II shall not apply to a commercial establishment that is entirely an eating or drinking establishment, a theater, an "other adult establishment," or any combination thereof.

JNR-000129



**Buildings**

Search
NYC CodesCode NotesCode DevelopmentReference

[ Select                         ▼ ]

- Buildings Bulletins
- Executive Orders
- Directives & Memoranda
- Policy and Procedure Notices
- Rules
- Local Laws
- OTCR
- NYS DEC Wetlands
- Presentations

# Operations Policy And Procedure Notices #05/02

| Date: | June 18, 2002 |
|---|---|
| Subject: | **Professional Certification of Applications and Plans** |
| Effective: | **Immediately** |
| Supersedes: | **Policy and Procedure Notice # 2/95 dated January 24, 1995, revised May 8, 1995** |
| Purpose: | To clarify the Department's implementation of the optional plan review procedures, which allow a Professional Engineer (PE) or Registered Architect (RA) to certify compliance with applicable laws and codes on applications filed by him/her as applicant, and which continue to enable a contractor to request a work permit after all required information is data entered into the Building Information System (BIS). |
| Policy: | Since 1995, the Department of Buildings has had and will continue to provide a mechanism for PE/RAs to certify compliance with applicable laws and codes on applications filed with the Department. Participation in these procedures calls for the display of appropriate standards of professional competence and |

integrity by the licensed professional. This Policy and Procedure Notice sets forth the procedures for preparing, submitting, approving and auditing these applications, as well as the procedures for suspension or exclusion of professionals from the professional certification or limited supervisory check procedures:

| Specifics: | **Restrictions:**<br><br>• For a job requiring Board of Standards and Appeals (BSA) approval, plans and applications must be filed through the standard plan review process, but the professional certification or limited supervisory check procedures may be utilized after the BSA has rendered its decision.<br>• For a job requiring Landmarks Preservation Commission, Loft Board, or City Planning Commission approval or certification, a PE/RA may only use the professional certification or limited supervisory check procedures after obtaining such approval or certification from the respective agency.<br>• For any application where a waiver must be sought from compliance with any provision of Local Law 58 of 1987, a PE/RA may use the professional certification or limited supervisory check procedures only after obtaining both an advisory opinion from the Mayor's Office for People with Disabilities, and a determination from the Borough Commissioner that a waiver is to be granted. If such a determination is made, then a PE/RA must certify that all provisions and conditions of the waiver have been satisfied. If the Borough Commissioner determines that a waiver will not be granted, the applicant must revise the application accordingly before the professional certification or limited supervisory check procedures can be utilized.<br>• For a filing concerning property of foreign governments, plans and applications must include a "Letter of No Objection" from the Office of Foreign Missions of the U.S. Department of State, consistent with Technical Policy and Procedure Notice 5/94.<br><br>**Applicant:**<br><br>The applicant must submit a complete set of plans and documents required for the work type(s) filed. This submission must be complete and in accordance with code, zoning, and applicable laws. At a minimum, the submission shall meet the requirements set forth in Administrative Code sections 27-156 and 27-157 for new buildings and sections 27-161 and 27-162 for alterations.<br><br>**The submission must include:**<br><br>1. Separate lists of items required for approval, permit, final signoff or Certificate of Occupancy as well as required controlled inspections. For each item on the list the applicant must make a notation of Yes (Y) or No (N) to indicate whether the item is required. Each list must be signed and sealed by the applicant. The application will be rejected if any information is missing, incomplete or not provided as required. |
| --- | --- |

    2. Two stamped envelopes, one addressed to the applicant and one addressed to the owner, which will be used to return the application if the package is incomplete.

    3. A certification by the applicant in Section 16 of the PW-1 stating as follows:

"I hereby state that I have exercised a professional standard of care in certifying that the filed application is complete and in accordance with applicable laws, including the rules of the Department of Buildings, as of this date. I am aware the Commissioner will rely upon the truth and accuracy of this statement. I have notified the owner or owner's authorized representative that this application has been professionally certified. If an audit or other exam discloses non-compliance, I agree to notify the owner or the owner's authorized representative of the remedial measures that must be taken to meet legal requirements. I further realize that any misrepresentation or falsification of facts made knowingly, recklessly or negligently by me, my agents or employees, or any knowing or reckless disregard on my part of any misrepresentation or falsification of facts made by others, will render me liable for legal and disciplinary action by the Department of Buildings and other appropriate authorities, including termination of participation in the professional certification or limited supervisory check procedures at the Department of Buildings."

If there is not enough space in Section 16 of the PW-I form for the entire certification, the applicant may make the certification on a separate AI-1 Form. The applicant must then state it is opting for professional certification in Section 16 of the PW-1, with a reference to the certification on the separate AI-1 Form.

If the applicant is using PC filing, a certification will be added to the application automatically by selecting the "apply" button on the appropriate screen during the PC filing program. The applicant must also indicate that it is opting for professional certification pursuant to this Policy and Procedure Notice (including the certification set forth above) in the "Considerations" section.

Applicants who file under the professional certification option cannot subsequently request plan examination review or approval. To obtain an examination and approval by the Department, the applicant must apply, in writing, to withdraw the application and then file a new application, with fees, for assignment to a plan examiner. Applicants may request a preliminary consideration about a code or zoning issue before filing their application using an AI-1 form addressed to the Borough Commissioner or his/her designee. Interpretations and decisions made during the preliminary consideration shall be given in writing and a copy of same will become part of the job application.

All work types filed under a job number must be professionally certified. In instances where multiple work types are filed simultaneously by multiple applicants, under one job number, only one list of items required for approval, permit, final signoff or Certificate of Occupancy, as well as required controlled inspections, shall be submitted.

The applicant will submit the completed package to the pre-filing section for data entry. The applicant, at that time, must alert the pre-filer that the application will be professionally certified as indicated on the PW-1.

The applicant will pay the filing fee at the cashier.

An approval status will be data entered into the computer unless the package is incomplete. An incomplete package may be re-submitted to the DEAR (Data Entry and Research) unit by the applicant when all required information has been compiled and will be given priority processing.

All required items needed for approval must be submitted with the initial submission. Amendments and corrections to professionally certified applications must be professionally certified. Subsequent filings must be reviewed and approved by pre-filing. Filings for additional work types must be filed as a new application and receive a separate job number. Expansions to the scope of the application or work types must be filed as a post-approval amendment (PAA). All PAAs must be reviewed and approved by the Borough Commissioner or his/her designee.

### Borough Office Procedures:
*Pre-Filing:*

The pre-filing unit will review the documents for completeness and verify that a PW-1 and any supplementary AI-1s containing the signed and sealed statements listed above are included. The pre-filer will stamp the application and plans "Professional Certification." If the application is not complete because of missing or insufficient data, the application will be returned to the applicant or filing representative and will not be processed.

In addition to entering required pre-filing data, the pre-filer will indicate "Y" next to the question "Professional Certification by Applicant of Job?" on the "Initial Pre-filing - Additional Considerations" screen to indicate that the application is being professionally certified. Fees will be calculated based on the work type(s) filed.

*Cashier:*

The Cashier will accept the fee. If the application requires data entry, the package will be forwarded to the DEAR unit. If the application is going to be filed using the PC Filing program, the package will be forwarded to the PC Filing Clerk.

*PC Filing Clerk:*

If the applicant intends to file the application using the PC Filing program, the PC Filing clerk will up-load the data from the PC Filing disk. Disks that cannot be processed because of missing or incorrect information will be returned to the applicant to be revised and resubmitted.

*DEAR:*

JNR-000133

The DEAR unit will review the documents, including the PC Filing full report, for clerical completeness prior to data entry. If the package does not contain all documents and information required for approval as stated on the required items list, a form letter shall be placed in the self-addressed stamped envelopes included in the package and mailed to the applicant and owner. The status of the application will be listed in the computer as "Suspend" or "Disapprove", depending on the status of the application. (The application must not be rejected if the only missing documentation is the self-addressed stamped envelopes. If other documents are also missing which cause the application to be rejected, the Department is otherwise under no obligation to notify the applicant by mail.)

All data entry and processing of rejection letters must be completed within 10 working days.

The DEAR unit will data enter the plan examination information and approval by using special user ID codes assigned for this purpose. The DEAR unit will then stamp the application and plans "Approved per OPPN 5/02".

*Audit Procedures:*

Within 45 days of acceptance by the Department, at least 20% of all professionally certified applications will be reviewed. A representative sample of application types will be randomly selected for review. All applications are subject to audit.

Applications selected for review will be assigned to an examiner from the Technical Compliance Unit located in the Borough Office. The review will focus on the following four areas: 1) accuracy of zoning calculations, 2) fire protection and occupant safety, 3) egress requirements, and 4) appropriateness of fees. A full review may also be conducted at any time based upon receipt of a complaint, evidence of non-compliance, or other determination made by the Department. All audits and results will be recorded in the BIS system and reported monthly to the Assistant Commissioner for Technical Affairs.

If objections are found during this review, they will be noted on an objection sheet and forwarded to the applicant and owner. If a permit has been issued, a 10-day notice of intent to revoke the permit will be included with the objections. If, within 10 days or other authorized time period, the Department receives no written response to the 10-day notice of intent to revoke, or if the Department receives a response that is insufficient in that it does not fully resolve the objections or propose acceptable corrective action to be immediately undertaken, then a final notice of revocation will be sent to the applicant. Applications receiving objections will be processed using the standard plan examination process until the application has been corrected and the application is approved, or until other final disposition of the application. Appointments to review objections and responses can be scheduled by the applicant or applicant's representative via the Department's Central Call Center.

At the discretion of the Borough Commissioner or upon the recommendation of the Assistant Commissioner for Technical Affairs, any application and/or permit may be suspended immediately pursuant to Section 27-197 of the New York City Administrative Code, provided that there is an imminent peril to life or property. The applicant and owner shall be notified of such action, with a copy of such notification forwarded to the Department's Office of Investigations and Discipline (IAD).

**<u>Suspension or Exclusion from the Professional Certification or Limited Supervisory Check Procedures:</u>**

In addition to taking action on particular permit applications, Borough Commissioners and the Assistant Commissioner for Technical Affairs shall forward to the Deputy Commissioner for Technical Affairs the names of, and supporting documentation with respect to, those PEs and RAs whose participation in the professional certification or limited supervisory check procedures evidences grounds for suspension or exclusion pursuant to 1 RCNY §21-02. The Deputy Commissioner for Technical Affairs shall review the evidence and make a recommendation to the Commissioner as to appropriate action. If this recommendation includes disciplinary action, including exclusion or suspension of the PE/RA from the professional certification or limited supervisory check procedures, a copy shall be forwarded immediately to IAD. Additionally, after a matter has been referred to IAD by the Deputy Commissioner, upon the consent of the PE/RA and at the discretion of the Department, certain matters may also be referred to a peer review group comprised of non-Departmental licensed professionals, acceptable to the Commissioner, for review and a non-binding recommendation to the Commissioner. Notwithstanding whether a matter has been referred to a peer review group, the Commissioner may suspend or exclude a PE/RA in accordance with 1 RCNY §21-02.

JNR-000135

Menu



Search
NYC CodesCode NotesCode DevelopmentReference

Select ▼

- Buildings Bulletins
- Executive Orders
- Directives & Memoranda
- Policy and Procedure Notices
- Rules
- Local Laws
- OTCR
- NYS DEC Wetlands
- Presentations

# Operations Policy And Procedure Notices #07/02

| Date: | October 16, 2002 |
|---|---|
| Subject: | **Adult Establishments -- Securing Priorities** |
| Effective: | **Immediately** |
| Reference: | Zoning Resolution provisions relating to adult establishments |
| Supersedes: | **OPPN 06/96** |
| Purpose: | To clarify procedures in order to ascertain whether a proposed adult establishment within 500 feet of or on the same zoning lot as another adult establishment is in violation of NYC Zoning Resolution ("ZR") §§32-01 and 42-01. |
| Specifics: | I. <u>APPLICANT</u> |

JNR-000136

A. Directive 14 and the Professional Certification of Application and Plans Process (OPPN #5/02) shall not be used for any filing related to adult establishments. No permit issued under a professionally certified application shall be a basis for an establishment to secure its priority to operate as an adult establishment.

B. ZR §§32-01 (c) and 42-01 (c) prohibit an adult establishment from locating within 500 feet of another adult establishment. ZR §§32-01 (d) and 42-01 (d) prohibit more than one adult establishment on a zoning lot.

For an adult establishment that began operating on or after August 8, 2001, a Department permit is required to secure its priority to operate as an adult establishment at a particular location. For an adult establishment that is identified by the Department as having been operating as a lawful adult establishment prior to August 8, 2001, a Department permit is not required to secure its priority. However, if an adult establishment operating prior to August 8, 2001 does not obtain a Department permit to secure priority, it might not be able to establish its priority to operate as an adult establishment.

Securing priority to operate as an adult establishment means that another adult establishment that subsequently proposes to locate or locates within 500 feet of it or on the same zoning lot will not be allowed.

C. For all filings relating to existing or proposed adult establishments, the applicant shall indicate in Section 16 (comments) of the PW1 application form that the filing is to create, alter, enlarge or extend an adult establishment or to erect a business sign accessory to an adult establishment or that the filing otherwise involves an adult establishment. Priority to operate as an adult establishment at a permitted location shall be as of the issuance date of the permit that authorizes the adult use.

To secure priority as an adult establishment when no work requiring a building permit is proposed, an applicant may file an Alteration (Alt.) III application with the Department and secure a "no work" permit.

D. A filing/application to secure priority as an adult establishment shall include the following:

JNR-000137

1. a separate area diagram detailing all existing uses and block and lot numbers within 500 feet of the center line of the door(s) of the principal entrance of the proposed adult establishment or of the center line of the ground floor of the door(s) giving the most direct street access to the proposed adult establishment, including a statement that there are no churches or schools within the 500 foot radius;

2. a survey detailing the zoning districts within 500 feet of the center line of the door(s) of the principal entrance of the proposed adult establishment or of the center line of the ground floor of the door(s) giving the most direct street access to the proposed adult establishment;

3. a statement that no other adult establishment exists within 500 feet of the center line of the door(s) of the principal entrance of the proposed adult establishment or of the center line of the ground floor of the door(s) giving the most direct street access to the proposed adult establishment.

## II. **PLAN EXAMINER**

An objection shall be raised if: (1) there exists a church, school, or another adult establishment whether existing, permitted, or approved, within 500 feet of the proposed adult establishment; (2) there is an adult establishment whether existing, permitted, or approved, on the same zoning lot as the proposed adult establishment; (3) the proposed adult establishment is in or within 500 feet of a prohibited zoning district; or (4) the proposed adult establishment fails to comply in any other way with zoning or other applicable provisions.

JNR-000138

Menu



Search

NYC CodesCode NotesCode DevelopmentReference

| Select ▼ |

- Buildings Bulletins
- Executive Orders
- Directives & Memoranda
- Policy and Procedure Notices
- Rules
- Local Laws
- OTCR
- NYS DEC Wetlands
- Presentations

# Operations Policy And Procedure Notices #01704

SUPERSEDED BY: BUILDINGS BULLETIN 2016-010, DATED April 8, 2016

| Date: | January 16, 2004 |
| --- | --- |
| Subject: | Professional Certification of Applications and Plans |
| Effective: | Immediately |
| Supersedes: | Operations Policy and Procedure Notice # 3/03 dated May 6, 2003. |
| Purpose: | To clarify the New York City Department of Buildings' implementation of the optional plan review procedures, which allow a Professional Engineer (PE) or Registered Architect (RA) to certify compliance with applicable laws and codes on applications filed by him/her as applicant. |
| Policy: | Since 1995, the Department of Buildings ("DOB") has had and will continue to provide a mechanism for PEs/RAs to certify compliance with all applicable laws and codes on applications filed with the Department ("professional certification"). Participation in these procedures calls for the display of |

JNR-000139

0521

| | appropriate standards of professional competence and integrity by the licensed professional. This Policy and Procedure Notice sets forth the procedures for preparing, submitting, approving and auditing these applications, as well as supplementary procedures for suspension or exclusion of professionals from professional certification. |
|---|---|
| **Procedure:** | **1. Applicant:**<br>A. The applicant must submit a complete set of plans and documents required for the work type(s) filed. This submission must be complete, coordinated and in accordance with code, zoning, and all applicable laws. At a minimum, the submission shall meet the requirements set forth in Administrative Code Sections 27-156 and 27-157 for new buildings and Sections 27-161 and 27-162 for alterations.<br><br>The submission must include:<br><br>1. Completed form PW-1, including the applicant's statement that the job will be professionally certified, and referencing the applicant's and owner's certifications on Form POC-1.<br><br>2. Completed new Form POC-1, appended to this Notice, as follows:<br><br>a. Certification by the applicant, signed and sealed, stating the following:<br><br>"I hereby state that I have exercised a professional standard of care in certifying that the filed application is complete and in accordance with applicable laws, including the rules of the Department of Buildings, as of this date. I am aware the Commissioner will rely upon the truth and accuracy of this statement. I have notified the owner that this application has been professionally certified. If an audit or other exam discloses non-compliance, I agree to notify the owner of the remedial measures that must be taken to meet legal requirements. I further realize that any misrepresentation or falsification of facts made knowingly or negligently by me, my agents or employees, or by others with my knowledge, will render me liable for legal and disciplinary action by the Department of Buildings and other appropriate authorities, including termination of participation in the professional certification procedures at the Department of Buildings."<br><br>b. Statement and signature by the owner, as follows:<br><br>"I have read and am fully aware of the applicant's above statement that this job will be professionally certified, and agree to bring into compliance any construction which is found not to comply with all applicable laws and regulations."<br><br>c. Fax number and email address for the applicant, the owner, and the filing representative.<br><br>3. Completed form PC-1 (latest revision), "Required Items Checklist," with separate lists of items required for approval, permit, final sign-off or Certificate |

JNR-000140

of Occupancy, as well as required controlled inspections.

a.The applicant shall add under "Items Required Prior to Approval" the following:

Borough Commissioner waiver of Local Law 58 of 1987.

b. The applicant shall add under "Items Required Prior to C/O or Sign-Off" the following:

Federal Emergency Management Agency ("FEMA") "Elevation Certificate and Instructions," latest revision.

For each item on the list, the applicant must make a notation of Yes ("Y") or No ("N") to indicate whether the item is required. Each list must be signed and sealed by the applicant. The application will be rejected if any information is missing, incomplete or not provided as required.

4. Two stamped envelopes each, addressed to the applicant, the owner and the filing representative, which will be used to return the application if the package is incomplete, and to mail objections if given in audit.

5.Written preliminary considerations: Applicants are strongly encouraged to request a preliminary consideration about a code or zoning issue before filing their professionally certified application using an AI-1 form addressed to either the Executive Director of the Technical Compliance Unit ("TCU"), the Borough Commissioner or his/her designee. Opinions made during the preliminary consideration shall be given in writing and will become part of the professionally certified job application.

6. Easements and declarations, if appropriate, must be submitted and recorded in accordance with LPPN #1/04 prior to the applicant's approval and approval in DEAR.

7. Zoning lot declaration exhibits if required in accordance with Memorandum of Acting Commissioner Irving E. Minkin, P.E., dated 5/18/78.

8. Approval documents from any of the following entities as appropriate, when they become available during the application process:

a. Required approvals from other agencies: For a job requiring approval by any of the following agencies, the professional must

1.file the application in accordance with this procedure;

2. receive "Suspended" status in the Data Entry and Research Unit ("DEAR");

3. use the assigned DoB job number to obtain the respective agency approval; and then

JNR-000141

4. proceed to approval in DEAR. Professionally certified applications cannot pass through DEAR without the required approvals included in the folder:

Board of Standards and Appeals ("BSA") (applications modifying existing BSA variance or special permit)
City Planning Commission ("CPC")
Landmarks Preservation Commission ("LPC")
Loft Board
Department of Environmental Protection ("DEP")
Housing, Preservation and Development ("HPD")
Certificate of No Harassment

b. BSA variance: For a job requiring a variance from BSA, in addition to the above process, the applicant must pay the filing fee to the cashier and then schedule an appointment with an Auditor and provide documentation, including drawing(s), clearly demonstrating every issue for which a BSA variance is required. The Auditor will issue preliminary objection(s) to the applicant based upon the submission, and the applicant must then obtain the formal denial from either the Borough Commissioner or designee and go before BSA. Upon issuance of the variance by BSA, the applicant shall return the folder to DEAR for data entry as above.

c. LPC approval for calendared landmarks: Applications for buildings that have been calendared for individual designation or that are included in districts calendared for designation by LPC may be filed using the professional certification process, but the professionally certified application can only be approved after 40 calendar days following completion of data entry in DEAR. However if the applicant provides a Certificate of No Effect issued by LPC, a copy of the certificate will be placed in the folder and the job can proceed through the filing process before the expiration of 40 calendar days.

d. Borough Commissioner approval of Local Law 58 waiver: For any application where a waiver is sought from compliance with any provision of Local Law 58 of 1987 ("LL 58/87"), a PE/RA must state the requirement on the PC-1 form and may complete the professional certification application in DEAR only after the Mayor's Office for People with Disabilities issues an advisory opinion and the Borough Commissioner issues a determination that a waiver will be granted in accordance with Administrative Code Section 27-292.6. Both the advisory opinion and the waiver shall be placed in the job folder. If such a determination is made, then a PE/RA must certify that all provisions and conditions of the waiver have been satisfied.

e. United States Department of State: For a filing concerning property of foreign governments, the application must include a "Letter of No Objection" from the Office of Foreign Missions of the U.S. Department of State, consistent with Technical Policy and Procedure Notice #5/94.

B. PC filing and professional certification:

JNR-000142

If the applicant is using disk filing ("PC filing"), a certification will be added to the application automatically by selecting the "apply" button on the appropriate screen during the PC filing program. The applicant must also submit a POC-1 form with the updated applicant's statement and the owner's statement as above, which will supersede this automatic statement. Finally, the applicant must indicate that s/he is opting for professional certification pursuant to this Policy and Procedure Notice in the "Considerations" section. All pages of the signed and sealed hard copies must be initialed and dated by the applicant.

C. For any professionally certified job, all work types filed under that job number must be professionally certified. In instances where multiple work types are filed simultaneously by multiple applicants, under one job number, only one list of items required for approval, permit, final sign-off or Certificate of Occupancy, as well as required controlled inspections, shall be submitted.

D. Process

1. The applicant will submit the completed package to the pre-filing section for data entry. The applicant, at that time, must alert the pre-filer that the application will be professionally certified as indicated on the PW-1.

2. The applicant will pay the filing fee at the cashier.

3. An approval status will be data-entered into the BIS system unless the package is incomplete. An incomplete package may be re-submitted to the DEAR unit by the applicant when all required information, including approvals of other agencies as noted above, has been compiled.

E. Related submissions

1. All required items needed for approval must be submitted with the initial submission. Amendments and corrections to professionally certified applications must be professionally certified. Subsequent filings must be reviewed and filed through the pre-filing unit.

2. Filings for additional work types to the original must be filed as a new application and receive a separate job number, and must reference the original application. In addition, a reference must be added to the original application on an AI-1 form referencing all subsequent applications for the project.

3. Expansion to the scope of work of a professionally certified job must be filed as a post-approval amendment ("PAA") and must be professionally certified.

4. A New Building ("NB") and/or Alteration Type I ("Alt. 1") professionally certified application on the same zoning lot as other NB or Alt. 1 applications must reference the other applications, whether they are filed earlier or later than the proposed professionally certified application. If the proposed application precedes the other NB or Alt. 1 application(s), such reference must be provided by AI-1 form.

JNR-000143

f. Applicants who file under the professional certification option may not subsequently request audit, plan examination review or approval. To obtain an examination and approval by the Department, the applicant must apply, in writing, to withdraw the professionally certified application and then file a new application, with full fees, for assignment to a plan examiner.

## 2, Borough Office Procedures:

a. Pre-Filing:

The pre-filing unit will review the documents for completeness and verify that a PW-1 and a POC-1 containing the certifications listed above are included. The pre-filer will stamp the application and plans "Professional Certification." If the application is not complete because of missing or insufficient data, the application will not be accepted.

In addition to entering required pre-filing data, the pre-filer will indicate "Y" next to the question "Professional Certification by Applicant of Job?" on the "Initial Pre-filing - Additional Considerations" screen to indicate that the application is being professionally certified. Fees will be calculated based on the work type(s) filed.

If the application requires approval by other agencies, except BSA, the pre-filer will give the folder to the applicant with a job number.

b. Cashier:

The cashier will accept the fee. If the application requires data entry, the package will be forwarded to the DEAR unit. If the application is being filed using the disk filing ("PC Filing") program, the package will be forwarded to the PC Filing clerk.
If BSA approval is required, the cashier will return the folder to the applicant.

c. PC Filing Clerk:

If the applicant intends to file the application using the PC Filing program, the PC Filing clerk will up-load the data from the PC Filing disk. Disks that cannot be processed because of missing or incorrect information will be returned to the applicant to be revised and resubmitted.

d. DEAR:

The DEAR unit will review the documents, including the PC Filing full report, for clerical completeness prior to data entry. If the package does not contain all documents and information required for approval as stated on the "Required Items Checklist," a form letter shall be placed in the self-addressed stamped envelopes included in the package and mailed to the applicant and owner. The status of the application will be listed in BIS as "Suspend" if items are missing or "Disapprove" if documents are incorrect.

## JNR-000144

The application must not be rejected if the only missing documentation is the self-addressed stamped envelopes. If other documents are also missing which cause the application to be rejected, the Department is otherwise under no obligation to notify the applicant by mail.

All data entry and processing of rejection letters must be completed within 10 business days.

The DEAR unit will data-enter the plan examination information and approval, and then stamp the application and plans "Approved by Applicant's Professional Certification. "

e. Permitting:

Once the application is approved by the applicant's professional certification, the permit section will receive from the permit applicant the appropriate documents and fees, and issue the permit.

## 3. Audit Procedures:

**a.** General

1. All professionally certified subdivision applications will be audited.

2. Approximately 20% of all other professionally certified applications will be audited within 10 business days of permit. A representative sample of application types will be randomly selected for review. Should a selected application be part of a cluster or development filing, the Auditor will audit the site plan and the lead folder(s) for the cluster or development.

3. All applications are subject to audit.

4. Appointment scheduling and communications between applicant and auditor shall occur primarily through email.

b. Post-approval amendments ("PAAs"):

1. Within 10 business days of post-permit PAAs on professionally certified applications, approximately 20% will be audited based upon random selection.

2. Additional or replacement drawings submitted with an AI-1 form may be reviewed by an Auditor or Plan Examiner for fees and/or scope of work prior to stamping, perforation and microfilming.

c. Audit focus

1. Applications for subdivision of improved property will be reviewed to ensure that any newly created improved tax lot will comply with zoning regulations, either as a potentially independent zoning lot or as part of a larger zoning lot pursuant to a zoning lot declaration.

2. Applications selected for audit will be assigned to an auditor from the Technical Compliance Unit ("TCU") located in the Borough Office. The review will focus on, but not necessarily be limited to, the following five areas: 1) zoning regulations and accuracy of calculations, 2) fire protection and occupant safety, 3) egress requirements, 4) Local Law 58 of 1987 regarding access for persons with disabilities, and 5) appropriateness of fees. The results of the audit will be entered in BIS, posted on the public screen and on BIS Web.

3. A full review of a professionally certified application may also be conducted at any time based upon receipt of a complaint, evidence of non-compliance, or other determination made by the Department.

d. Audit process:

1. Business Day 10 +/- following permit:

a. If the Auditor finds no objection to the application, s/he will enter an "Accepted" status in BIS and no further action will be taken.

b. If minor objections are raised during the audit which pertain to processing paperwork or fees, but there are no substantive issues of zoning, life safety and/or accessibility, they will be noted on an Objection Sheet and faxed or emailed to the applicant with a marked Audit Notice and appointment date. The Auditor will enter a status of "Conditional Acceptance" in BIS.

c. If objections are raised during the audit which pertain to substantive issues of zoning, life safety and/or accessibility, they will be noted on an Objection Sheet and faxed or emailed to the applicant with a marked Audit Notice, 10-Day Revocation Notice and appointment date, and may also be faxed or emailed to the owner and the filing representative. A stop-work order may also be issued if the Borough Commissioner deems it warranted. The Auditor will enter a status of "10-Day Revocation Notice" in BIS.

**Note:***Information relating to zoning, life safety and/or accessibility which is required by law to be included in the drawings and which is missing will be cause to issue a 10-Day Revocation Notice.*

2. The applicant will have 10 business days to make required corrections and meet with the Auditor.

3. Day 20 +/- following permit:

a. If at the end of 10 business days the applicant resolves all objections, then the Auditor will enter a status of "Accepted" in BIS and no further action will be taken by the Auditor.

b. If at the end of 10 business days the applicant meets with the Auditor but has not resolved all the objections, then the Auditor will enter, or may continue, a status of "10-Day Revocation Notice" in BIS, and will fax or email the Notice to the owner and the filing representative. The applicant may either schedule one more appointment with the Auditor to resolve all outstanding objections or

JNR-000146

appeal to the Executive Director of TCU or the Borough Commissioner for a reconsideration of specific remaining issue(s).

c. If the applicant fails to appear at the appointed meeting time or to reschedule the meeting within the 10-day period, or if the Department determines that the permit was issued in error, the Auditor will recommend to the Executive Director of TCU and to the Borough Commissioner that the Borough Commissioner revoke the permit. Upon review and concurrence, the Borough Commissioner will revoke the permit and order an inspection of the jobsite.

4. The applicant should amend the documents as required to resolve all objectionsor to prepare the Reconsideration AI-1 form and documents as appropriate.

5. Day 30 +/- following permit:

a. If the applicant requests reconsideration from the Executive Director of TCU or the Borough Commissioner and it is granted, then the Executive Director or Borough Commissioner will sign the AI-1 form and return the submitted documentation to the Auditor. The Auditor will verify that all objections have been resolved and, if so, fax or email an Audit Notice notifying the applicant, owner and filing representative of same, and enter a status of "Accepted" in BIS.

If not all objections have been resolved, then the status will remain as "10-Day Revocation Notice" and the Auditor will recommend revocation to the Executive Director of TCU and the Borough Commissioner. Upon review and concurrence, the Borough Commissioner will revoke the permit.

b. If the applicant requests reconsideration from the Executive Director of TCU or the Borough Commissioner and the Executive Director or Borough Commissioner conditions his/her acceptance on certain changes to which the applicant agrees, then s/he will note same on the AI-1 form, sign it and send the marked form and other documentation to the Auditor. The BIS status will remain "10-Day Revocation Notice".

b. If the applicant requests reconsideration from the Executive Director of TCU or the Borough Commissioner and the Executive Director or Borough Commissioner denies same, then the Borough Commissioner will revoke the permit and issue a stop-work order. The denied AI-1 form and all other documentation will be delivered to the Auditor who will enter a status of "Failed: Permit Revoked" in BIS. The Borough Commissioner will assign the application to a plan examiner for any further action requested by the applicant.

c. If the applicant does not request a reconsideration and meets with the Auditor with all objections resolved, then the Auditor will enter a status of "Accepted" in BIS. If all objections are not resolved, the Auditor will recommend revocation to

JNR-000147

the Executive Director of TCU and the Borough Commissioner. If either overrides the Auditor's objection(s), then the Auditor will enter an "Accepted" status in BIS. If the Borough Commissioner or designee concurs with the Auditor, then the Borough Commissioner will revoke the permit and issue a stop-work order. The Borough Commissioner will assign the application to a plan examiner.

6. Following a meeting with the Executive Director of TCU or the Borough Commissioner, if corrections or additions are required, the applicant will make the appropriate changes and arrange a final meeting with the Auditor.

7. Day 40 +/-:

a. If all objections are resolved and conditions of reconsideration are met, then the Auditor will enter a status of "Accepted" in BIS.

b. If all objections are not resolved as required, then the Auditor will recommend revocation to the Executive Director and the Borough Commissioner similarly to the process on Day 30 above. Upon review and concurrence, the Borough Commissioner will revoke the permit. The application will be assigned to a plan examiner.

8. Upon revocation of the permit, copies of the revocation letter and objections will be sent to the Deputy Commissioner for Technical Affairs and the Office of Investigation and Discipline.

9. Upon revocation of the permit, should the applicant wish to continue the job, s/he must apply to reinstate the permit within two years of the original permit, and pay the reinstatement fee of one hundred dollars. The application will be reviewed by a plan examiner for all applicable laws and regulations, including those which have come into effect since the original filing. Following approval by the plan examiner, the permit will be reinstated.

e. All audits and results will be recorded in the BIS system and reported monthly to the Deputy Commissioners for Technical Affairs and Operations.

f. At the discretion of the Borough Commissioner, any application and/or permit may be suspended immediately pursuant to Section 27-197 of the New York City Administrative Code, provided that there is an imminent peril to life or property. The applicant and owner shall be notified of such action, with a copy of such notification forwarded to the Department's Office of Investigations and Discipline (IAD).

## 4. Suspension or Exclusion from the Professional Certification Procedures:

In addition to taking action on particular permit applications, Borough Commissioners and/or the Executive Director of the Technical Compliance Unit shall forward to the Deputy Commissioner for Technical Affairs the names of, and supporting documentation with respect to, those PEs and RAs whose participation in the professional certification procedures evidences grounds for

suspension or exclusion pursuant to 1 RCNY §21-02. The Deputy Commissioner for Technical Affairs shall review the evidence and make a recommendation to the Commissioner as to appropriate action. The Commissioner may suspend or exclude a PE/RA in accordance with 1 RCNY §21-02. Additionally, if this recommendation includes disciplinary action, including but not limited to exclusion or suspension of the PE/RA from professional certification or criminal prosecution, copies shall be forwarded immediately to IAD and to the New York City Department of Investigation (DoI).

Final determination disciplining PEs and/or RAs under the terms of this section shall be forwarded to both DoI and the New York State Office of Professional Discipline.

**POC-1 Form**

JNR-000149



**Buildings**

NYC Buildings Department
280 Broadway, New York, NY 10007

Rick D. Chandler, P.E., Commissioner



## BUILDINGS BULLETIN 2016-010
### Operational

| | |
|---|---|
| **Supersedes:** | Operations Policy and Procedure Notice #1/04 |
| **Issuer:** | Thomas Fariello, RA<br>First Deputy Commissioner |
| **Issuance Date:** | April 8, 2016 |
| **Purpose:** | This bulletin revises the established operational procedures for the Professional Certification Program, which allows a Professional Engineer (PE) or Registered Architect (RA), as an applicant, to certify the job's compliance with the New York City Construction Codes, Zoning Resolution and all applicable laws and rules on related application(s). |

| **Related Code Section(s):** | AC 28-104.2.1 | AC 28-104.7 | 1 RCNY 21-02 | MC 106 | PC 106 |
|---|---|---|---|---|---|
| | AC 28-104.2.2 | AC 28-104.8 | BC 107 | FGC 106 | FC 105 |

| **Subject(s):** | Professional Certification Program |
|---|---|

## 1. Background

The Department of Buildings (Department) instituted a Professional Certification Program since 1995, under which construction and other submittal documents are accepted with no Department examination based on the professional certification of an applicant who is a Registered Design Professional (RDP), i.e. a New York State licensed Professional Engineer or Registered Architect (PEs/RAs). Participation in the program calls for the display of appropriate standards of professional competence and integrity by the licensed professional who must have both knowledge and experience with the New York City Construction Codes, the New York City Zoning Resolution, the Department's rules, and any other applicable laws and rules.

## 2. Professional Certification Program and Limitations

By participating in the program, the applicant acknowledges his or her obligation to comply with the construction documents and submission requirements set forth in sections AC 28-104.7 and 28-104.8; Building Code section 107; Mechanical Code section 106; Fuel Gas Code section 106; Plumbing Code section 106; and Fire Code section 105.

All professionally certified applications or submissions of construction documents for architectural, mechanical, structural, excavation and earthwork, and plumbing work must be complete, coordinated, and in accordance with code, zoning and all other applicable laws and rules. Refer to Plan Examination Guidelines for Minimum Requirements for Review of Design Drawings (available on DOB website: http://www1.nyc.gov/assets/buildings/pdf/plan_exam_user_guide.pdf).

build safe | live safe

JNR-000150

0533

The Department's acceptance of a submission under the professional certification program and in accordance with sections AC 28-104.2.1 and 28-104.2.2, shall have the same force and effect as the approval of construction documents after full examination by the Department. The Department will rely on the truth and accuracy of statements contained in the professionally certified application of the registered design professional, and any amendments submitted in connection therewith, as verification of compliance with the provisions of the Zoning Resolution, the New York City Construction Codes, and all other applicable laws and rules.

**A. Excluded Work**

The following work applications cannot be professionally certified:

i.   Subdivisions.

ii.  Full demolitions and applications containing demolition work that includes the use of mechanical equipment, other than handheld equipment, per BC section 3306.5.

iii. Applications for work on projects that require, or are related to projects that require approval, permit, or another type of determination from the Board of Standards and Appeals (BSA).

**B. Project Responsibility and Withdrawal**

The applicant, a RDP who is participating in the program, shall be responsible for the project's code compliant design until a letter of completion or certificate of occupancy is issued, except as provided below:

1. **Withdrawal:**  If an applicant withdraws responsibility from a professionally certified project, the Department must be notified immediately. All work shall stop and no permit renewal, letter of completion or certificate of occupancy shall be allowed until a successor RDP is designated as the applicant of record; or

2. **Revocation:**  When the Department revokes an applicant's professional certification privileges, the applicant may continue responsibility only for applications that were permitted prior to the revocation, and provided a PAA is not filed after the revocation. See section 5 of this Bulletin.

**C. Zoning Audit of New Building, Alteration Type-1 and Enlargements**

Professionally certified New Building, Alteration Type 1 and other enlargement applications are subject to a zoning audit by the Department, prior to acceptance, as outlined in Section 4 of this Bulletin.

**3.  Operational Guidelines**

**A.  Application Submission for Acceptance**

In addition to an application complying with all of the applicable requirements and guidelines in effect at the time of its submission, a professionally certified application of construction documents and other submittals must also include the following:

i.   Professional and Owner Certification: Certification from the RDP and statement and signature of the owner to submit a professionally certified application.

ii.  Required Items Checklist for Professional Certification.

iii. Approvals, permits and/or certifications from other governmental agencies submitted prior to acceptance of the professionally certified application.

iv.  If applicable, any written determinations, easements and declarations, and zoning lot exhibits.

**B.  Permits**

Once the professionally certified application is accepted and all applicable fees are paid, a permit will be issued.

build safe | live safe

JNR-000151

### C. Post Approval Amendments

Any Post Approval Amendments (PAAs) shall be professionally certified. Such PAA submissions shall include all changes and amendments to the construction documents of the previously accepted application. PAAs shall be restricted to the following:

a) Changes required in the previously accepted application's work due to unforeseen field conditions.

b) Deliberate modifications, of a limited nature, to the project's initial scope of work.

c) Changes needed to comply with audit comments, as outlined in Section 4.C of this Bulletin.

## 4.  Audit of Professionally Certified Applications

All professionally certified applications are subject to audit. An audit of a professionally certified application may be conducted at any time based on the following audit process.

### A. Audit Process

A selection of professionally certified applications, including Post Approval Amendments, will be audited according to the following types:

i.  **Zoning Audits:** Prior to acceptance, all professionally certified New Building, Alteration Type 1, enlargement alteration applications and zoning-related PAAs, are subject to a zoning audit.

ii.  **Program Audits:** A representative sample of professionally certified applications, including PAAs, will be selected for audit upon issuance of permit(s).

iii.  **Targeted Audits:** In addition to the above, the Department may perform a targeted audit of professionally certified applications based upon receipt of a complaint, evidence of non-compliance, or at the discretion of the Commissioner.

If the auditor finds no objection to the application, the audit of the selected application will be recorded as "Accepted" and no further action will be taken.

### B. Failed Audits

If an auditor fails the application or conditionally accepts it with minor objections, an objection sheet is sent to the applicant, owner and filing representative. For failed audits, the Department may send a 15-day "Notice - Intent to Revoke" and in addition, a stop-work order may also be issued at the discretion of the Commissioner.

### C. Resolving Objections

The applicant must resolve comments/objections with the auditor. The applicant may be required to file a PAA with the latest revision of the Additional Information (AI) form that clearly explains how the construction documents, forms, reports, certifications, etc., were added or modified to address all of the auditor's comments /objections.

### D. Failure to Resolve Objections / Revocation of Permit

If the comments/objections are not resolved to the satisfaction of the auditor following the scheduled meeting, the Commissioner shall revoke the permit(s), approval, and/or acceptance of the application and construction documents.  If permit(s) have been issued, a stop-work order shall be issued at the discretion of the Borough Commissioner.

If the applicant fails to respond to the auditor, neglects to schedule a meeting to address any comments/objections, or if the applicant cannot resolve the issues in a timely manner, the Department may determine that any permit and/or acceptance of the construction documents was in

JNR-000152

0535

error, and the Commissioner may issue a Notice of Revocation letter and a stop work order, revoking the permit, approval and/or acceptance of the application and construction documents.

**Reinstatement:**

After an application is revoked, if the owner hires a new applicant to continue the project, a revised design drawing is required. However, if the owner wishes to continue the project with the same applicant, a revised design drawing may be required. The applicant and owner must obtain approval by the Commissioner to reinstate such an application and pay the applicable reinstatement fee.

5. **Discipline / Exclusion from the Professional Certification Program**

The Department may, after a hearing at the Office of Administrative Trials & Hearings, suspend, exclude or otherwise condition the professional certification privileges of an RDP as outlined in section AC 28-104.2.1.3.2 and 1 RCNY §21-02. The Department will refer evidence of wrongdoing to the New York City Department of Investigation for criminal prosecution as warranted and to the New York State Office of Professional Discipline for their disciplinary action.

build safe | live safe

JNR-000153