UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
------------------------------------------------------------X
689 EATERY CORP., etc., *et ano.,*              :

                                 Plaintiffs,           :

      - against -                                                          :      Civil Action No.
                                                              02 CV 4431 (LJL)

THE CITY OF NEW YORK, et al.,                    :

                                 Defendants.         :
------------------------------------------------------------X
59 MURRAY ENTERPRISES INC., etc., *et al.,*   :

                                   Plaintiffs,           :

      - against -                                                          :      Civil Action No.
                                                              02 CV 4432 (LJL)

THE CITY OF NEW YORK, et al.,                    :

                                   Defendants.         :
------------------------------------------------------------X
CLUB AT 60TH STREET, INC., etc., *et al.,*   :

                                   Plaintiffs,           :

      - against -                                                          :      Civil Action No.
                                                              02 CV 8333 (LJL)

THE CITY OF NEW YORK,                              :

                                 Defendant.           :
------------------------------------------------------------X

### DECLARATION OF MICHAEL BERZAK IN SUPPORT OF<br>CLUB PLAINTIFFS' MOTION FOR PARTIAL SUMMARY JUDGMENT

MICHAEL BERZAK, hereby declares the following pursuant to 28 USC §1746:

      1.      I, Michael David Berzak, have personal knowledge of each of the facts stated herein and would so testify if called as a witness.

2. I have been a registered architect in New York State since August 1985. I am also registered with NCARB for national reciprocal licensing. I am a member of the Board of the New York Chapter of the Society of American Registered Architects. I am a principal of Berzak Associates Architects, an architectural firm in Manhattan.

3. I have been the applicant for numerous filings with the New York City Department of Buildings for the construction of new buildings, commercial developments, office and residential projects, numbering in the hundreds.

**Time Needed to Get Initial "No-Work" Permit**

4. I also have been the applicant for numerous filings at the New York City Department of Buildings for establishing and renovating both Adult Entertainment uses, as well as "60-40" non-adult uses, as defined by the Zoning Resolution as modified by Technical Policy and Procedure Notices and Operations Policy and Procedure Notices that became effective in 1998.

5. In 2014 my firm was hired to assist the new tenant of a property in Manhattan located at 20 W. 39th St. in getting all required building permits in order for them to establish a new 100% adult eating or drinking establishment at that site. The site had previously been operated as a non-adult cabaret licensed to have dancing so it could initially be changed to an adult use without any additional construction; it would only require the requisite "no-work" permit to establish its entitlement to operate as an adult use. The new adult business was to be called Sapphire 2.

6. Because of the provisions of 1 Rules of City of New York §9000-1 ("the Rule"), which establish the procedures for vesting adult uses against challenges by surrounding neighbors (be they "sensitive receptors" or other adult uses), it was necessary to make the first order of

business "planting the flag" in order to vest the site as a permissible one for an adult use. We did this by filing an application for a "no-work permit" pursuant to the provisions of §(b) (2) of the Rule. Specifically, on February 20, 2014, I filed a no-work permit application with the Department of Buildings ("DOB") (on what DOB refers to as an "Alt 1" application) to establish the vesting of Sapphire 2 as a permissible site for an adult use. Because this application was for an adult entertainment use, as part of that application I was required to submit what DOB variously refers to as an "area diagram" or "survey" showing all properties within 500 feet.

7.      On March 10, 2014, a DOB plan examiner issued a "Notice of Objections" which objected on the ground that our application hadn't established the necessary facts to operate as a so-called "60/40" use, *even though* we did not *apply* for Sapphire 2 to be a 60/40 use and it would not even *need* a no-work permit to operate as a 60/40 use. (An amended copy of that Notice of Objections is attached hereto as Exhibit A. It is identical to the original March 10th version except that it adds objection number 15 which was added on April 7, 2014.)

8.      After receiving the March 10th Notice of Objections, I advised DOB they had issued it in error because Sapphire 2 had not applied for a no-work permit to operate as a 60/40 use and that a 60/40 use would not even *need* a no-work permit since it is not considered an adult use.

9.      However, following DOB's having been made aware of its earlier mistake, DOB inspector Ronald Singer then informed me that he had then conducted an on-site inspection of the Sapphire 2 location and, on April 4, 2014, he sent an email to DOB examiners (attached hereto as Exhibit B), copied to Lisa Orrantia (one of DOB's general counsel), concluding (incorrectly) that six or seven of the properties on that survey were "sensitive receptors" which would disqualify a new adult use within 500 feet. On that same date, Ms. Orrantia sent a memo to DOB Plan

Examiner Edward Cella stating that General Counsel's office objected to Sapphire 2's application based on the asserted grounds that the site was too near a "house of worship" or "other adult establishments." (Attached hereto as Exhibit C.)

10. DOB then sent me an amended "Notice of Objections" on April 7, 2014, which added these two new asserted problems, which is the previously referenced document attached hereto as Exhibit A.)

11. Shortly thereafter I responded to the new objections and pointed out to both the DOB examiner and also Ms. Orrantia of the DOB's General Counsel's office why the asserted "house of worship" was not a disqualifying sensitive receptor and that no nearby adult establishment was in fact within 500 feet of the relevant measuring point on the Sapphire 2 site.

12. Regarding the so-called sensitive receptor cited by the DOB inspector described as a "house of worship" use at 12 West 40th Street, I pointed out to the examiner and Ms. Orrantia that there was no certificate of occupancy authorizing that site for use as a church or house of worship use.

13. On April 14, 2014, Ms. Orrantia sent a memo to the DOB Plan Examiner, eventually copied to me, stating that a follow up inspection by DOB shows that the objections to our client's no-work permit application were filed in error, and that the application should be approved. (Attached as Exhibit D). The reasons given were: (1) that a nearby adult use referred to by the DOB inspector was not correctly measured by DOB and was in fact more than 500 feet away; and (2) the certificate of occupancy for the site of the so-called church did not authorize its use as a church or house of worship and, thus, it did not disqualify the Sapphire 2 no-work permit application.

14. However, inexplicably, it was not until May 6, 2014, nearly a *month* after the letter from DOB counsel and 2 ½ months after we first filed our no-work permit application, that DOB finally issued the no-work permit. A current DOB record showing the initial date of issuance of the no-work permit is attached as Exhibit E. (This exhibit also shows that the no-work permit was renewed annually through 2016 pending completion of a contemplated major remodeling which eventually resulted in issuance of building permits and, later a new certificate of occupancy).

**Problems in *Keeping* The No-Work Permit**

15. Once the so-called flag had been planted, establishing the right of the site to be vested for an adult use, the business then regularly featured adult entertainment performers on a weekly basis to ensure that it would not lose its vesting rights. This is because under the provisions of the Rule, the vesting of an adult use after issuance of such a permit is lost unless there is proof that the business has commenced operating as an adult use within two months, although extensions of that time limit can be obtained for good cause.

16. However, on May 23, 2014, just 2 ½ weeks after we'd obtained the no-work permit for Sapphire 2, an anonymous "complaint" was filed, as shown on DOB's website, asserting that the so-called "church," which DOB had already rejected as a disqualifier, required rescinding Sapphire 2's no-work permit. I learned of this several months later. I reasonably believe, for reasons given hereafter, that this complaint was submitted by a competitor to Sapphire 2.

17. On August 4, 2014, likely in response to that "complaint," DOB examiner Francine Rothenberg wrote a post-issuance "Failed Special Audit" notice (attached hereto as Exhibit F). It asserted that Sapphire 2's no-work permit issued in error for two reasons: (1) that the business didn't have a "BSA permit" (*i.e.,* a Board of Standards and Appeals permit), and (2) that the survey

map we'd presented (and which DOB counsel and examiners had *both* approved following a very thorough investigation) should be reviewed with the examiner because it -- so the examiner believed -- revealed disqualifying uses near Sapphire 2.

18.     On September 10, 2014, we were served by DOB with a notice of intent to revoke the "no-work" permit which attached, and was based on, that August 4th Failed Special Audit document.  That was when we first became aware of the August 4th Failed Special Audit sheet.  A copy of that notice of intent to revoke and its attached Failed Special Audit notice is attached hereto as Exhibit G.

19.     During the course of the summer of 2014, Sapphire 2 went about attempting to find and hire a virtual "army" of various people necessary to consult and prepare (and thereafter to file) the requisite plans, drawings and applications needed in order to file building permit applications for the very extensive remodeling construction that would be required in order to operate the site in the manner in which it was eventually intended to operate.  We assisted it in that regard.

20.     However, after September 10, 2014, when the DOB served us with the 15-day notice of intent to revoke the no-work permit, out of prudence, because of the very large sums of money involved, all further efforts on the project immediately ceased pending our efforts at resolution of the revocation notice with DOB.

21.     As a matter of law, the revocation became official on September 25, 2014.  During the period of revocation, the business could not continue to lawfully operate.

22.     After receiving the notice of intent to revoke, I went on the DOB's Building Information Search website (https://a810-bisweb.nyc.gov/bisweb/bispi00.jsp) and discovered the "Complaint" (Complaint no. 1372224) that had been received by DOB from an unnamed source on May 23, 2014, making the assertion that Sapphire 2 was within 500 feet of a church and I

presume that is what led to the second objection in the Failed Special Audit sent to the Commissioner and, in turn, the September 10th revocation notice.

23. On further investigation, I determined that no BSA permit was in fact required (because adult establishments do not *require* BSA permits) and that the "survey" referenced in the Failed Special Audit of August 4, 2014, had already been demonstrated several months earlier (to the satisfaction of DOB's General Counsel, no less) to not disqualify this site for adult use.

24. Accordingly, upon receiving the 15-day notice to revoke, I immediately contacted DOB and presented my evidence that no BSA permit was required and that the survey did not disqualify the site.

25. After more delay, DOB ultimately agreed with me and, on October 15, 2014, finally rescinded its revocation of Sapphire 2's no-work permit. (My recollection is that DOB sent a Notice of Recission of Revocation but I can no longer find my copy of it. However, DOB's recission is evidenced by the "Date Resolved" date of 10/15/14 shown on DOB's updated version of the Failed Special Audit notice which is attached as Exhibit H). However, as noted above, the filing of that Revocation notice had suspended all lawful operation of the business and the adult use at the premises could not resume until we successfully refuted the claim. More importantly, because of the cloud it put on Sapphire 2's right to vest, it delayed continuing with the next phase of the project, acquiring all the required personnel and preparing all the requisite architectural plans necessary to commence the extensive remodeling project so the business could operate in the form it was intended to eventually take.

26. Based upon the events described below, it is our belief that the anonymous May 30th complaint described above was filed by those connected to a competing adult business.

**The After-Arriving Sensitive Use Problem**

27. Because we were now regularly monitoring the DOB's Building Information Search website, I noticed that on October 17, 2014, just two days after DOB rescinded its revocation of Sapphire's no-work permit, an application for a different type of "no-work" permit was filed to vest a "house of worship" use on the second and third floors of 12 West 40th Street in Manhattan, a location within 500 feet of Sapphire 2. This was the same location which DOB previously *rejected* as a valid church use which would disqualify Sapphire 2. (A copy of that "church's" no-work permit application is attached as Exhibit I.) Although ¶ 11 on p. 3 indicates that the purpose of the application is to "renovate and convert the *building* to a house of worship," Schedule A (on the last page of that application) clarifies that it is only the second and third floors that would be changed from a "storage and stock room" use to a "church and accessory uses" use. The ground floor and mezzanine levels would be used for "store and accessory uses" and "accessory offices for store" respectively. The application further states that it was filed by an architect, Joe Kliennman, who I knew worked for a competitor of our client. (The asserted "house of worship" use would be legal after the no-work permit issued since no construction was required). It therefore appeared to me that the sole reason for the application was to take advantage of the provisions of the Rule which allowed a church to be deemed "vested" in the apparent hope that it would thereby render Sapphire 2's use unlawful, even though Sapphire 2 had filed for its permit many months before. It is my belief that the application to allow an asserted "house of worship" use was not a serious effort to establish a location where worship services would occur because, although City ownership records showed that the building was *owned* by a church (The Greater New York Corporation of Seventh Day Adventists), I personally inspected the location shown on the application and observed that it was merely a three-story office building where the

first floor was just a bookstore, and City records showed that the top two floors were being used solely for storage/stock room purposes.  In short, since the no-work permit application was filed by the architect of our competitor, and only the upper two floors were being proposed for conversion to a "church" use, it appeared clear to me that there was no intent to ever actually open a house of worship there.  This belief was later confirmed (which I explain later herein.)

28. Because the "church" was allowed to have its architect self-certify its no-work permit application, my review of the DOB website showed that it was approved on October 20, 2014 (again, see attached Exhibit I), just three days after its application was filed, and was issued just three days thereafter (unlike ours which sat for nearly 2 ½ months before it was even *initially* issued – and which was later revoked many months later before finally being reinstated).

29. On November 21, 2014, DOB issued yet *another* notice of revocation, this time asserting that Sapphire had failed to commence operating as an adult use within two months of the date it received its no-work permit.  Although I can't find my copy of this notice, I have confirmed its date from subsequent emails which reference it; and my notes confirm the reason given for the notice.

30. Upon receiving that notice of revocation, I immediately contacted DOB to indicate I would present proof that the business in fact had been regularly presenting adult performances and was entitled to retain its vesting as an adult site.  Thereafter we obtained several documents including affidavits from entertainers, printed advertisements, etc., and I then submitted that information to DOB on February 12, 2015.

31. From the moment that notice of revocation issued, Sapphire 2 was legally required to cease operating as an adult use until the matter was resolved.  But, again, even more importantly, the notice of revocation put a cloud on the business' right to go forward and, until that cloud was

9

removed, we could not continue with the extremely expensive process of preparing all requisite architectural drawings, etc. necessary for filing the ultimate building permit application.

32. On May 15, 2015, *almost three months* after I provided DOB with all the evidence that the business had timely opened, DOB finally ruled on the matter and concluded that our client's use had in fact been regularly presenting adult entertainment and it rescinded its second notice of revocation. I have no explanation why it took three additional months for DOB to rule on something which seemingly could have been decided quickly and on such a straightforward basis.

33. Until DOB made that determination, our client could not lawfully operate as an adult use, nor could it prudently continue with the preparation and filing of the building permit applications it would actually need for the construction that would be necessary to fully open the business in its intended final form.

34. Because it takes a very long time to prepare all the requisite architectural plans for a major renovation project involving significant construction, including the hiring of structural and mechanical engineers, audio visual, security consultants, acoustical specialists, etc., it wasn't until December 31, 2015, that we were able to complete and file the final building permit applications which would allow the necessary construction for completion of the project.

35. Before it began processing our building permit application, the DOB, per its then standard procedure, first forwarded our building permit application, once again, to DOB General Counsel for review of zoning compliance, where it then sat for nearly a month.

36. Meanwhile, on or about January 26, 2016, the planning examiner assigned to our building permit application issued us yet *another* set of objections, this time to the approval of our

building permit application, including, *again*, the assertion that an adult use was not permissible at Sapphire 2's location. (Exhibit J).

37. I responded to that objection by personally providing to the plan examiner the answers to every objection he had raised.

38. Thereafter, on January 28, 2016, General Counsel issued a memo where it *again* reviewed the question of whether the asserted church use disqualified our application, and it re-confirmed that an adult entertainment use is legal at our client's location because, "as of the date of [General Counsel's] memorandum an adult eating and drinking establishment has established priority to operate at the subject premises." (A copy of General Counsel's memo is attached hereto as Exhibit K.)

39. The basis for DOB counsel's memo reflects that the issue of whether the asserted "church" had divested Sapphire 2 had come up yet again. This was the *second* time this issue came up *after* Sapphire 2 had obtained its no-work permit approving of the zoning of the location. Fortunately, because the "church's" permit was issued after ours was already in effect, General Counsel rejected the assertion that the new "church" defeated Sapphire 2's application. However, had the "church" been issued its no-work permit before we received ours, even though it sought that permit several months *after* we sought ours, under the Rule, it would have defeated Sapphire 2 since the Rule awards vesting priority to the first to *obtain* their permit rather than the first to *file* for the permit.

40. In any event, DOB General Counsel's memo of January 28, 2016, confirmed that Sapphire 2 had obtained priority prior to the issuance of a no-work permit to the "church" so that the church's latest claim of disqualification was as groundless as its earlier ones.

11

41. However, it was not until March 24, 2016, that DOB finally approved our building permit application. Only then could construction commence.

42. All told, had this business had the same type of construction issues but not been an adult business, my best estimate is that the time needed for getting approval of the requisite building permit applications would likely have taken approximately two weeks if done by professional certification (an option then only available for non-adult uses) or slightly over two months if done without professional certification. But, as an adult business, subject to the City's special vesting procedures and other procedural rules unique to adult businesses, as well as all the objections from competing uses and neighbors, the process took over 5 ½ months (*e.g.,* the initial 2 ½ months just to "plant the flag," and then an additional approximately three months -- from December 31, 2015 to March 24, 2016 -- for processing our completed full building permit application) solely because it was for an adult business.

43. Finally, after the "so-called" church got its "no-work" permit, I checked the DOB's website to see if it ever followed through to get that house of worship use approved on a new Certificate of Occupancy. Although they proceeded to get a Temporary Certificate of Occupancy in April of 2015, they did not renew it after June of 2016 and never proceeded to get a final Certificate of Occupancy for a house of worship. It seems clear that they abandoned the notion of creating that "house of worship" use after they were unsuccessful in stopping Sapphire 2 from opening.

//
//
//
//

44.     I attach hereto as Exhibit L an accurate chronological list summarizing all the relevant events which occurred in connection with Sapphire 2's attempts to open as an adult use at its site.

I declare under penalty of perjury that the foregoing is true and correct.

Executed this 6th day of September 2022, within the United States of America, at New York, New York.

_____
Michael Berzak

44. I attach hereto as Exhibit L an accurate chronological list summarizing all the relevant events which occurred in connection with Sapphire 2's attempts to open as an adult use at its site.

I declare under penalty of perjury that the foregoing is true and correct. Executed this 6th day of September 2022, within the United States of America, at New York, New York.

_____
Michael Berzak

# INDEX TO EXHIBITS

**EXHIBIT A:** DOB Objection sheet of March 10, 2014, as amended on April 7, 2014

**EXHIBIT B:** Ronald Singer email of April 4, 2014

**EXHIBIT C:** DOB General Counsel memo of April 4, 2014

**EXHIBIT D:** DOB General Counsel memo of April 14, 2014

**EXHIBIT E:** DOB No-Work Permit for Sapphire 2 issued on May 6, 2014

**EXHIBIT F:** DOB Failed Special Audit Notice, dated August 4, 2014)

**EXHIBIT G:** DOB Notice of Intent to Revoke No-Work Permit, dated September 10, 2014

**EXHIBIT H:** DOB Notice of Recission of Revocation of No-Work Permit, dated October 15, 2014

**EXHIBIT I:** DOB No-Work Permit Application for church use for property at 12 West 40th Street, showing dates of filing, approval and issuance

**EXHIBIT J:** DOB Objections of January 26, 2016, to Building Permit Application

**EXHIBIT K:** DOB General Counsel memo of January 28, 2016

**EXHIBIT L:** Sapphire 2 Chronology of Permit-Related Events